**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF TENNESSEE**

UNITED STATES OF AMERICA

v.

KILMAR ARMANDO ABREGO GARCIA,

*Defendant.*

No. 3:25-cr-115

Judge Waverly D. Crenshaw, Jr.

**MOTION AND MEMORANDUM OF LAW IN SUPPORT OF**
**ISSUANCE OF ORDER REQUIRING COMPLIANCE WITH**
**LOCAL CRIMINAL RULE 2.01**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................. ii

PRELIMINARY STATEMENT ........................................................................................ 1

BACKGROUND ............................................................................................................. 3

    I.   Mr. Abrego's Illegal Deportation to El Salvador ............................................. 3

    II.  The Government's Publicity Campaign Against Mr. Abrego ........................... 4

    III. Mr. Abrego's Return to the United States and Indictment ............................. 5

ARGUMENT .................................................................................................................. 7

    I.   Applicable Law ............................................................................................... 7

        A.  Courts Have an Affirmative Duty to Minimize the Effects of Prejudicial Pretrial
            Publicity ................................................................................................. 7

        B.  This Court Carries Out Its Duty Through Local Criminal Rule 2.01 ....................... 8

    II.  The Government's Inflammatory and Prejudicial Statements Contravene Local
        Criminal Rule 2.01 ....................................................................................... 11

    III. A Cautionary Order to Comply with Local Criminal Rule 2.01 Is Warranted Under
        the Circumstances ......................................................................................... 14

CONCLUSION ............................................................................................................... 15

# TABLE OF AUTHORITIES

**CASES**

*Abrego Garcia v. Noem*,
No. 25 Civ. 951, 2025 WL 1014261 (D. Md. Apr. 6, 2025) ................................. 3

*Att'y Grievance Comm'n of Md. v. Gansler*,
377 Md. 656 (2003) ........................................................................................ 8

*Bridges v. California*,
314 U.S. 252 (1941) ........................................................................................ 7

*CBS Inc. v. Young*,
522 F.2d 234 (6th Cir. 1975) ..................................................................... 8, 15

*Gannett Co. v. DePasquale*,
443 U.S. 368 (1979) ........................................................................................ 7

*Gentile v. State Bar of Nevada*,
501 U.S. 1030 (1991) ...................................................................................... 7

*Hollingsworth v. Perry*,
558 U.S. 183 (2010) ........................................................................................ 9

*Irvin v. Dowd*,
366 U.S. 717 (1961) ........................................................................................ 7

*Marshall v. United States*,
360 U.S. 310 (1959) ........................................................................................ 7

*Newby v. CoreCivic of Tenn., LLC*,
No. 22 Civ. 93 (M.D. Tenn.) ......................................................................... 14

*Noem v. Abrego Garcia*,
145 S. Ct. 1017 (2025) .................................................................................... 3

*Patterson v. Colorado*,
205 U.S. 454 (1907) ........................................................................................ 7

*Pennekamp v. Florida*,
328 U.S. 331 (1946) ...................................................................................... 11

*Sheppard v. Maxwell*,
384 U.S. 333 (1966) ......................................................................... 2, 7, 8, 13

*Thomas v. Maury Cnty. Bd. of Educ.*,
No. 18 Civ. 6 (M.D. Tenn.)............................................................................ 14

*United States v. Brinley*,
684 F.3d 629 (6th Cir. 2012) ................................................................... 8, 8

*United States v. Brown*,
218 F.3d 415 (5th Cir. 2000) ................................................................. 8, 11

*United States v. Combs*,
No. 24 Cr. 542 (S.D.N.Y.) .......................................................................... 15

*United States v. Darden*,
No. 17 Cr. 124 (M.D. Tenn.) ................................................................... 2, 14

*United States v. Koubriti*,
305 F. Supp. 2d 723 (E.D. Mich. 2003)...................................................... 8

*United States v. Manafort*,
No. 17 Cr. 201 (D.D.C. Nov. 8, 2017)....................................................... 15

*United States v. McVeigh*,
931 F. Supp. 756 (D. Colo. 1996).............................................................. 15

*United States v. Narciso*,
446 F. Supp. 252 (E.D. Mich. 1977).......................................................... 8

*United States v. Trump*,
88 F.4th 990 (D.C. Cir. 2023).................................................................... 8

## STATUTES AND RULES

28 U.S.C. § 530B ............................................................................................ 10

D.C. R. Pro. Conduct 3.6 ............................................................................... 11

Fla. R. Pro. Conduct 4-3.6 ............................................................................. 11

M.D. Tenn. L. Civ. R 83.04 ............................................................................ 10

M.D. Tenn. L. Crim. R. 2.01 .................................................................... *passim*

N.Y. R. Pro. Conduct 3.6 ............................................................................... 11

Tenn. Sup. Ct. R. 8.......................................................................................... 10

iii

## PRELIMINARY STATEMENT

From the moment Kilmar Armando Abrego Garcia challenged his illegal rendition to El Salvador in March 2025, the government has repeatedly maligned him in public statements. Instead of complying with the Supreme Court's order that it "facilitate" Mr. Abrego's return to the United States, the government launched a public disparagement campaign against him to justify his unlawful detention in El Salvador's notorious Terrorism Confinement Center ("CECOT"), one of the most violent, inhumane prisons in the world. As Mr. Abrego's plight captured national attention, officials occupying the highest positions of the United States government baselessly labeled him a "gangbanger," "monster," "illegal predator," "illegal alien terrorist," "wife beater," "barbarian," and "human trafficker." The Vice President, a Yale Law School graduate, went so far as to flatly lie about Mr. Abrego, calling him a "convicted MS-13 gang member," notwithstanding that Mr. Abrego in fact has never been convicted of any crime at all.

When the Department of Homeland Security ("DHS") and the Department of Justice ("DOJ") finally retrieved Mr. Abrego from El Salvador, only to indict him on human smuggling charges in this District, the government did not stop attacking him. Instead, on the day of Mr. Abrego's initial appearance, he was assailed in no fewer than twenty separate public statements from across the Executive Branch. In announcing the charges against Mr. Abrego, Attorney General Bondi held a news conference at which she detailed irrelevant, baseless allegations that Mr. Abrego "solicited nude photographs and videos of a minor" and "played a role in the murder of a rival gang member's mother."[1]

---

[1] *See Attorney General Bondi News Conference*, C-SPAN (June 6, 2025) [hereinafter *Bondi News Conference*], https://www.c-span.org/program/news-conference/attorney-general-bondi-news-conference/660932.

1

And the government appears intent on continuing to try its case against Mr. Abrego in the court of public opinion. By the government's own account, it has thus far succeeded in influencing public discourse: Mr. Abrego has gained "new-found prominence," ECF 14 at 11, and, according to the White House, "a majority [of] Americans polled know who Abrego Garcia is and think he is an MS-13 gang member who shouldn't have been defended."[2]

Mr. Abrego is entitled to a fair trial "by an impartial jury free from outside influences." *Sheppard v. Maxwell*, 384 U.S. 333, 362 (1966). But he is nearly certain to be denied that right if the government, left to its own devices, stays its current course. Like all parties who appear before this Court, the government is required to abide by Local Criminal Rule 2.01. That Rule prohibits making "an extrajudicial statement . . . that . . . will be disseminated by public communication, and will have a substantial likelihood of materially prejudicing an adjudicative proceeding in the matter." M.D. Tenn. L. Crim. R. 2.01(a)(1). The Rule applies equally to lawyers and "the government agencies or offices . . . and employees of such . . . government agencies or offices, with which the lawyer is associated." *Id.* 2.01(a)(4). Thus far, the government has completely disregarded and repeatedly violated this Rule.

In accordance with the Court's duty to "protect [its] processes from prejudicial outside interferences," *Sheppard*, 384 U.S. at 363, Mr. Abrego respectfully requests that this Court enter an order requiring the parties to follow Local Criminal Rule 2.01 and to ensure that all associated agencies and employees "govern themselves" in accordance with that Rule. *See United States v. Darden*, No. 17 Cr. 124 (M.D. Tenn. Apr. 29, 2019), ECF 1356.

---

[2] Abigail Jackson (@ATJackson), X (June 16, 2025, 2:25 PM), https://x.com/ATJackson47/status/1934678808948273594.

# BACKGROUND

## I.    Mr. Abrego's Illegal Deportation to El Salvador

Mr. Abrego came to the United States from El Salvador as a teenager to escape gang violence. *See Abrego Garcia v. Noem*, No. 25 Civ. 951, 2025 WL 1014261, at *2 (D. Md. Apr. 6, 2025). In 2019, after the government commenced removal proceedings, an immigration judge granted Mr. Abrego withholding of removal, finding a clear probability of future persecution if Mr. Abrego were deported to El Salvador. *Id.* In March 2025, as part of the Administration's push for mass deportations, President Trump invoked the Alien Enemies Act and began deporting individuals to El Salvador, where they were detained at CECOT, "a notorious supermax prison known for widespread human rights violations." *See id.* at *3. Although Mr. Abrego was subject to withholding of removal, he was arrested by Immigration and Customs Enforcement ("ICE") officers and, on March 15, removed to El Salvador. *See id.*

Mr. Abrego sued to challenge his removal. In defending that suit, the government admitted in a sworn declaration that it had made an "administrative error" in deporting Mr. Abrego. *See Abrego Garcia v. Noem*, No. 25 Civ. 951 (D. Md. Mar. 31, 2025), ECF 11, at 3, 19; *id.*, ECF 11-3 ¶ 15.[3] Mr. Abrego won favorable preliminary rulings in district court and from the Fourth Circuit, and on April 10, 2025, the Supreme Court agreed with those courts that Mr. Abrego had been "improperly sent to El Salvador," and ordered the government to "facilitate" Mr. Abrego's "release from custody in El Salvador." *Noem v. Abrego Garcia*, 145 S. Ct. 1017, 1018 (2025).

---

[3] The lawyer who signed the government's brief referencing this confession of "administrative error" was fired from the Department of Justice, he argues, because he had candidly acknowledged the government's tragic error. *See* Letter from Dana L. Gold, Gov't Accountability Project, et al. to Michael E. Horowitz, Inspector Gen., U.S. Dep't of Just., et al. 1-2, 23-24 (June 24, 2025), https://www.judiciary.senate.gov/imo/media/doc/06-24-2025_-_Protected_Whistleblower_Disclosure_of_Erez_Reuveni_Redacted.pdf.

## II.    The Government's Publicity Campaign Against Mr. Abrego

Rather than facilitate Mr. Abrego's release from custody, the government began a public campaign to justify Mr. Abrego's deportation. Within a week of Mr. Abrego's commencing a lawsuit challenging his removal to and confinement at CECOT, Executive Branch officials began making inflammatory statements about Mr. Abrego's character, reputation, and supposed criminal history. Officials within DOJ and DHS—the case agency investigating Mr. Abrego as part of Joint Task Force Vulcan, *see* ECF 60 at 2-3—joined in these efforts, publicly asserting that Mr. Abrego is a member of MS-13 involved in human trafficking.[4]

Notably, these prejudicial comments did not cease after the investigation in this case began in late April[5]—if anything, they intensified. On April 30, DHS Assistant Secretary for Public Affairs Tricia McLaughlin released a statement calling Mr. Abrego "a violent illegal alien who abuses women and children" and a "confirmed member of MS-13."[6] That same day, another DHS press release "set[ting] the record straight" on Mr. Abrego asserted that he was "far from innocent," claimed that two courts had ruled that he was "a member of MS-13," and discussed details of the

---

[4] *See, e.g.*, *Kristi Noem to Newsmax: Man Deported in Error 'Very Dangerous'*, Newsmax (Apr. 4, 2025), https://www.newsmax.com/newsmax-tv/kristi-noem-deported-kilmar-abrego-garcia/2025/04/04/id/1205764/ (Noem: "[H]e was a gang member, violent criminal, definitely a member of one of these terrorist organizations and did not belong in this country and needed to face consequences."); Forbes Breaking News, *Bondi Asked Why Abrego Garcia Must Stay in Foreign Prison If Admin Admitted Deportation Was Mistake*, YouTube (Apr. 8, 2025), https://www.youtube.com/watch?v=MXh4lmUAKZA (Bondi: "[H]e is a known gang member."); *Homan to Newsmax: Abrego Garcia Has Himself to Blame*, Newsmax (Apr. 11, 2025), https://www.newsmax.com/newsmax-tv/homan-abrego-garcia/2025/04/11/id/1206624/ (Homan: "He's a MS-13 gang member, according to our intelligence and . . . the intelligence of El Salvador.").

[5] At the June 13 hearing before Judge Holmes, the government's witness testified that he was assigned to the investigation into Mr. Abrego on April 28, suggesting that the investigation had begun by at least that date, if not earlier. *See* ECF 61 at 12:19.

[6] Press Release, Dep't of Homeland Sec., DHS Reveals Second Domestic Abuse Filing Filed by Kilmar Abrego Garcia's Wife (Apr. 30, 2025), https://www.dhs.gov/news/2025/04/30/dhs-reveals-second-domestic-abuse-filing-filed-kilmar-abrego-garcias-wife.

4

2022 traffic stop now underpinning the government's case.[7] "Border Czar" Tom Homan went on Fox News the next day to call Mr. Abrego a "gang member-terrorist-public safety threat-wife beater."[8] And just a week before the grand jury returned the indictment in this case, DHS Secretary Kristi Noem proclaimed Mr. Abrego to be "a known terrorist, member of MS-13, a wife beater, and a human trafficker."[9]

## III.    Mr. Abrego's Return to the United States and Indictment

The government secured an indictment on May 21, 2025. *See* ECF 3. Upon presenting the indictment to the government of El Salvador, Mr. Abrego was returned to U.S. custody. He arrived in the United States on June 6, when prosecutors unsealed the indictment. *See* ECF 43 at 3 & n.2.

Once Mr. Abrego was back on U.S. soil, the DOJ and DHS redoubled their efforts to publicly discredit him. On the day of his first appearance in this District—as part of a larger coordinated effort within the Executive Branch[10]—DOJ and DHS officials executed a media blitz to attack Mr. Abrego.[11] At every turn, the government has continued to broadcast its claims about Mr. Abrego's purported criminality and bad character. The government's public statements sweep far beyond the charges in the indictment—or the government's improperly expressed opinions

---

[7] Press Release, Dep't of Homeland Sec., 100 Days of Fighting Fake News (Apr. 30, 2025), https://www.dhs.gov/news/2025/04/30/100-days-fighting-fake-news.

[8] *Tom Homan Responds to New Allegations Against Deported MS-13 Suspect: 'A Public Safety Threat'*, Fox News (May 1, 2025), https://www.foxnews.com/video/6372177667112.

[9] The Economic Times, *'I'm Not Here for This': Kristi Noem Fumes at House Hearing over Kilmar Abrego Garcia's Deportation*, YouTube (May 14, 2025) [hereinafter *Noem House Hearing*], https://www.youtube.com/watch?v=vAyUpm9VqlU.

[10] There were no fewer than twenty press conferences, TV appearances, and social media posts involving members of the Executive Branch. *See infra* note 11; *see also, e.g.*, Stephen Miller (@StephenM), X (June 6, 2025, 5:26 PM), https://x.com/StephenM/status/1931100469515993431; Abigail Jackson (@ATJackson47), X (June 6, 2025, 4:45 PM), https://x.com/ATJackson47/status/1931090178468118843; Karoline Leavitt (@PressSec), X (June 6, 2025, 4:20 PM), https://x.com/PressSec/status/1931083870130040952.

[11] *Bondi News Conference*, *supra* note 1; Ingraham Angle, *Kilmar Abrego Garcia Was Indicted on 'Very Serious' Charges, US Deputy Attorney General Says*, Fox News (June 6, 2025), https://www.foxnews.com/video/6373969491112.

5

about their merit. For instance, in announcing the charges, Attorney General Bondi held a news conference at which she detailed irrelevant, false and wildly prejudicial allegations that Mr. Abrego "solicited nude photographs and videos of a minor" and "played a role in the murder of a rival gang member's mother."[12] That same day, Secretary Noem called Mr. Abrego "a known MS-13 gang member, human trafficker, and serial domestic abuser."[13]

Thus far, the government's unabated public disparagement of Mr. Abrego has far outpaced its ability to muster actual evidence, notwithstanding its extraordinary efforts to conjure up such evidence. On the day Magistrate Judge Holmes recognized, in denying the government's motion for pretrial detention, that "the government failed to meet its burden of showing a properly supported basis for detention on grounds that Abrego poses an irremediable danger to the community," ECF 43 at 51, the government told a different story to the public. Assistant Secretary McLaughlin announced: "Kilmar Abrego Garcia is a dangerous criminal illegal alien. We have said it for months and it remains true to this day: he will never go free on American soil."[14] And just last Friday, Assistant Secretary McLaughlin said of Mr. Abrego: "He's not some innocent, Maryland man as the media has tried to force-feed Americans for the last three months. He's a member of MS-13. He is a human trafficker. He's a known wife-beater and this is a man who should not be on U.S. soil for long and won't be."[15]

---

[12] *Bondi News Conference*, *supra* note 1; *see also* Ingraham Angle, *supra* note 11 (Deputy Attorney General Todd Blanche: "He is a criminal who should be deported. . . . It's so heartbreaking that there are young children coming into this country and then being shipped off, or driven off by, as alleged, by people like this man. And then we don't know what happens to them. And you're right, there's sex trafficking, there's horrible things that happen to these people.").

[13] Secretary Kristi Noem (@Sec_Noem), X (June 6, 2025, at 4:39 PM), https://x.com/Sec_Noem/status/1931088689842782559.

[14] Tricia McLaughlin (@TriciaOhio), X (June 22, 2025, 7:31 PM), https://x.com/TriciaOhio/status/1936929967423754665.

[15] Newsmax, *Abrego Garcia Won't Be on U.S. Soil Much Longer: Tricia McLaughlin*, YouTube (June 27, 2025), https://www.youtube.com/watch?v=tqOiNZ8jD58.

<u>**ARGUMENT**</u>

I.    **Applicable Law**

    A.    **Courts Have an Affirmative Duty to Minimize the Effects of Prejudicial Pretrial Publicity**

It is a fundamental principle of our constitutional system that "the conclusions to be reached in a case will be induced only by evidence and argument in open court, and not by any outside influence, whether of private talk or public print." *Patterson v. Colorado*, 205 U.S. 454, 462 (1907) (Holmes, J.). Accordingly, the Supreme Court has "long recognized that adverse publicity can endanger the ability of a defendant to receive a fair trial." *Gannett Co. v. DePasquale*, 443 U.S. 368, 378 (1979); *see also Sheppard*, 384 U.S. at 362 ("Due process requires that the accused receive a trial by an impartial jury free from outside influences."); *Bridges v. California*, 314 U.S. 252, 271 (1941) ("Legal trials are not like elections, to be won through the use of the meeting-hall, the radio, and the newspaper."). Intense pretrial publicity poses a substantial risk of tainting the jury venire, jeopardizing the defendant's right to a trial by an impartial jury. *See Gentile v. State Bar of Nevada*, 501 U.S. 1030, 1075 (1991). Pretrial publicity also risks disseminating to the public inadmissible evidence, the subsequent exclusion of which at trial "is rendered meaningless." *Sheppard*, 384 U.S. at 360; *see also Marshall v. United States*, 360 U.S. 310, 312-13 (1959); *Irvin v. Dowd*, 366 U.S. 717, 728 (1961). More generally, the "carnival atmosphere" that may be created by pretrial publicity undermines the integrity of judicial proceedings. *Sheppard*, 384 U.S. at 358. Indeed, "[f]ew, if any, interests under the Constitution are more fundamental than the right to a fair trial by 'impartial' jurors, and an outcome affected by extrajudicial statements would violate that fundamental right." *Gentile*, 501 U.S. at 1075.

Trial courts therefore have "an affirmative constitutional duty to minimize the effects of prejudicial pretrial publicity." *Gannett*, 443 U.S. at 378. Courts bear a "heavy responsibility" to

"adopt reasonable measures to avoid injury to the parties by reason of prejudicial or inflammatory publicity." *CBS Inc. v. Young*, 522 F.2d 234, 241 (6th Cir. 1975); *see United States v. Trump*, 88 F.4th 990, 1004 (D.C. Cir. 2023); *United States v. Brown*, 218 F.3d 415, 424 (5th Cir. 2000). As part of that duty, courts must take "remedial measures that will prevent the prejudice at its inception," which includes "rule[s] or regulation[s]" to prevent the "divulgence of inaccurate information, rumors, and accusations" about a defendant. *Sheppard*, 384 U.S. at 361, 363.

Courts recognize the particular importance of preventing the government from engaging in prejudicial extrajudicial statements. *See id.* at 361. Statements by the government pose a heightened risk of influencing the public because of their authoritative weight. *See United States v. Koubriti*, 305 F. Supp. 2d 723, 760 (E.D. Mich. 2003); *United States v. Narciso*, 446 F. Supp. 252, 320 (E.D. Mich. 1977); *Att'y Grievance Comm'n of Md. v. Gansler*, 377 Md. 656, 676 (2003). Moreover, as the nation's "chief prosecutor," the Attorney General has an "equally vital and unyielding obligation" to safeguard a defendant's constitutional right to a fair trial. *Koubriti*, 305 F. Supp. 2d at 726 (formally admonishing the Attorney General for issuing potentially prejudicial statements after the court prohibited such statements in terrorism-related case brought in the wake of the September 11, 2001 attacks).

The Court's responsibility to take steps to protect its proceedings from outside influence encompasses not just lawyers appearing before it, but also the parties. In the case of the government, that includes the investigating agency and its officers, which are integral members of the prosecution team. *See Sheppard*, 384 U.S. at 359, 361; *see also Trump*, 88 F.4th at 1005 (recognizing authority to regulate speech of "trial participants"); *Brown*, 218 F.3d at 428.

## B.   This Court Carries Out Its Duty Through Local Criminal Rule 2.01

To safeguard the right to a fair trial and the integrity of judicial proceedings, this Court has adopted Local Criminal Rule 2.01. Local rules "have the 'force of law,'" *United States v. Brinley*,

8

684 F.3d 629, 634 (6th Cir. 2012) (quoting *Hollingsworth v. Perry*, 558 U.S. 183, 191 (2010)), and all parties appearing before this Court must comply with them.

Local Criminal Rule 2.01(a)(1) precludes a lawyer who "is participating or has participated in the investigation or litigation of a matter either directly or indirectly" from "mak[ing] an extrajudicial statement (other than a quotation from or reference to public records) that the lawyer knows or reasonably should know will be disseminated by public communication, and will have a substantial likelihood of materially prejudicing an adjudicative proceeding in the matter, including especially that will interfere with a fair trial." M.D. Tenn. L. Crim. R. 2.01(a)(1). The Rule applies to "the law firm and government agencies or offices, and the partners and employees of such firms, government agencies or offices, with which the lawyer is associated." *Id.* 2.01(a)(4).

This District has identified several types of extrajudicial statements that are "more likely than not to have a material prejudicial effect on a proceeding, even if included in the public record." *Id.* 2.01(a)(2). When an investigation is pending, extrajudicial statements concerning the "character, credibility, reputation, or criminal record of a suspect" that are not necessary to inform the public of the investigation or seek the public's aid in an investigation are likely to be materially prejudicial. *Id.* 2.01(a)(2)(A). Once a defendant has been charged and through the conclusion of the trial, extrajudicial comments more likely to materially prejudice a proceeding include those concerning:

(i)  The prior criminal record (including arrests, indictments, or other charges of crime), or the character or reputation of the accused . . . ;

(ii) . . .

(iii) . . .

(iv) The character, credibility, reputation, or criminal record of a party or the identity, testimony, or credibility of prospective witnesses . . . ;

(v) The identity or nature of physical evidence expected to be presented;

9

<blockquote>
(vi)    The fact that an accused has been charged with a crime, unless there is included therein a statement that the charge is merely an accusation and that the accused is presumed innocent unless and until proven guilty;

(vii)    Any opinion as to the accused's guilt or innocence, or as to the evidence in the case; or

(viii)    Information that the lawyer knows or reasonably should know is likely to be inadmissible as evidence in a trial or that would, if disclosed, create a substantial risk of prejudicing an impartial trial.
</blockquote>

*Id.* 2.01(a)(2)(B). On these matters, the burden is on the speaker to "show that the comment did not pose a threat" of materially prejudicing a proceeding. *Id.* 2.01(a)(2).[16]

The Rules of Professional Conduct governing attorneys practicing in this District similarly require that a lawyer not "make an extrajudicial statement that the lawyer knows or reasonably should know will be disseminated by means of public communication and will have a substantial likelihood of materially prejudicing an adjudicative proceeding." Tenn. Sup. Ct. R. 8, RPC 3.6; M.D. Tenn. L. Civ. R. 83.04; *see also* 28 U.S.C. § 530B(a) (federal prosecutors practicing in a state are subject to that state's laws and rules governing attorneys). Tennessee's Rules of Professional Conduct impose an additional obligation on prosecutors to "refrain from making extrajudicial comments that have a substantial likelihood of heightening public condemnation of the accused," other than statements that are "necessary to inform the public of the nature and extent of the prosecutor's action and that serve a legitimate law enforcement purpose." Tenn. Sup. Ct. R. 8, RPC 3.8(f). Prosecutors must also "discourage investigators, law enforcement personnel, and

---

[16] The Rule explains that the parties are permitted, in the "proper discharge of their official or professional obligations," to (i) "announc[e] the fact and circumstances of arrest," "the identity of the investigating and arresting officer or agency, and the length of the investigation"; (ii) describe "the evidence seized" at the time of seizure (other than a "confession, admission, or statement"); (iii) "disclos[e] the nature, substance, or text of the charge including a brief description of the offense charged"; (iv) "quot[e] or refer[] without comment to public records of the Court in the case"; (v) "request[] assistance in obtaining evidence"; and (vi) "announc[e] (without further comment) that the accused denies the charges, maintains their innocence and looks forward to their day in court." M.D. Tenn. L. Crim. R. 2.01(a)(2).

other persons assisting or associated with the prosecutor in a criminal matter from making an extrajudicial statement that the prosecutor would be prohibited from making under RPC 3.6 or this Rule." *Id.*[17]

## II. The Government's Inflammatory and Prejudicial Statements Contravene Local Criminal Rule 2.01

For months, the government has made extensive and inflammatory extrajudicial comments about Mr. Abrego that are likely to prejudice his right to a fair trial. These comments continued unabated—if anything they ramped up—since his indictment in this District, making clear the government's intent to engage in a "trial by newspaper." *See Brown*, 218 F.3d at 418 (quoting *Pennekamp v. Florida*, 328 U.S. 331, 359, 366 (1946) (Frankfurter, J., concurring)). The government's statements plainly violate Local Criminal Rule 2.01 in several ways.

*First*, the government has relentlessly attacked Mr. Abrego's character and reputation in dozens of public statements. *See* M.D. Tenn. L. Crim. R. 2.01(a)(2)(B)(i). Many of the government's statements have been highly prejudicial and serve no justifiable law enforcement purpose—and reflect nothing more than the lengths the government will go to in its efforts to paint Mr. Abrego as a dangerous criminal to deflect from its mistake. For example, in announcing the charges against Mr. Abrego, Attorney General Bondi called him "a smuggler of humans, and children, and women,"[18] while Deputy Attorney General Blanche labeled him a "criminal who

---

[17] Likewise, the District of Columbia, where many of the Executive Branch officials making statements are located, provides that a lawyer "shall not make an extrajudicial statement that the lawyer knows or reasonably should know will be disseminated by means of mass public communication and will create a serious and imminent threat of material prejudice to the proceeding." D.C. R. Pro. Conduct R. 3.6. Prosecutors are to refrain from making "extrajudicial comments which serve to heighten condemnation of the accused." *Id.* 3.8(f). The same prohibitions exist in the states where the Attorney General and other officials are members of the bar. *See* Fla. R. Pro. Conduct 4-3.6; N.Y. R. Pro. Conduct 3.6.

[18] *Bondi News Conference*, *supra* note 1.

11

should be deported."[19] That same day, DHS officials called Mr. Abrego a "known MS-13 gang member, human trafficker, and serial domestic abuser."[20] When Mr. Abrego was ordered released on bail, a DHS official, flouting Magistrate Judge Holmes' findings of fact, castigated him as a "dangerous criminal illegal alien."[21]

*Second*, the government has expressed opinions about Mr. Abrego's guilt and the evidence in this case in ways that go far beyond the limited disclosures permitted by Local Criminal Rule 2.01. *See* M.D. Tenn. L. Crim. R. 2.01(a)(2)(B)(v), (vii). Since the indictment was returned on May 21, DHS and DOJ officials have made countless statements asserting Mr. Abrego's guilt without regard to the judicial process or the presumption of innocence, calling him a "confirmed MS-13 gang member,"[22] and asserting that he is "a smuggler of humans, and children, and women,"[23] and promising that "he will never go free on American soil."[24]

*Third*, the government's statements have been contaminated with irrelevant and false claims that the DOJ "knows or reasonably should know are likely to be inadmissible as evidence in a trial or that would, if disclosed, create a substantial risk of prejudicing an impartial trial." M.D. Tenn. L. Crim. R. 2.01(a)(2)(B)(viii). Numerous public comments reference highly prejudicial allegations about Mr. Abrego that are irrelevant to the offenses charged in the indictment and

---

[19] Ingraham Angle, *supra* note 11.
[20] Noem, *supra* note 13; *see* Tricia McLaughlin (@TriciaOhio), X (June 6, 2025, 4:28 P.M.), https://x.com/TriciaOhio/status/1931085864521679280 ("[A]n MS-13 gang member, human trafficker and domestic abuse: Justice awaits this Salvadoran man."); Fox News, *Acting ICE Director Blasts Los Angeles Mayor over ICE Raid Resistance*, Fox News (June 7, 2025) [hereinafter *Acting ICE Director*], https://www.foxnews.com/video/6373996743112 (Acting ICE Director Todd Lyons: "Secretary Noem has said from the beginning that this man is a criminal, he's an MS-13 gang member . . . .").
[21] McLaughlin, *supra* note 14.
[22] Homeland Security (@DHSgov), X (May 27, 2025 at 1:29 PM), https://x.com/DHSgov/status/1927416834661220488.
[23] *Bondi News Conference*, *supra* note 1.
[24] McLaughlin, *supra* note 14.

12

almost certainly inadmissible at trial. For instance, at a press conference announcing these charges, Attorney General Bondi recounted allegations from unreliable alleged coconspirators that Mr. Abrego "abused undocumented alien females," "trafficked firearms and narcotics," "solicited nude photographs and videos of a minor," and "played a role in the murder of a rival gang member's mother."[25] The government's public statements also repeatedly include irrelevant and highly prejudicial claims that Mr. Abrego is a "wife beater"[26] and "domestic abuser."[27] And nearly all of the government's public statements reference Mr. Abrego's purported affiliation with MS-13.[28] These assertions are not only irrelevant and inflammatory, but also based entirely on inadmissible hearsay, as this Court and the magistrate judge have already recognized. *See* ECF 55 at 11 (noting that the government "did little to confirm, and at times may have undermined" its assertion of Mr. Abrego's "alleged MS-13 association"); ECF 43 at 39 ("The government's evidence that Abrego is a member of MS-13 consists of general statements, all double hearsay, from two cooperating witnesses . . . . Those statements are, however, directly inconsistent with statements by the first cooperator.").

*Fourth*, since the indictment was unsealed, the government has made nearly three dozen statements about the fact that it has charged Mr. Abrego with a crime, without reference to the presumption of innocence. *See* M.D. Tenn. L. Crim. R. 2.01(a)(2)(B)(vi). Instead, in numerous public statements, the government has presumed Mr. Abrego guilty. *See id.* 2.01(a)(2)(B)(vii); *see Sheppard*, 384 U.S. at 361. The government has repeatedly deemed Mr. Abrego a "criminal"[29]

---

[25] *Bondi News Conference*, *supra* note 1.
[26] *Noem House Hearing*, *supra* note 9.
[27] Noem, *supra* note 13.
[28] *See, e.g.*, *id.*; Newsmax, *supra* note 15; *Acting ICE Director*, *supra* note 20.
[29] *E.g.*, McLaughlin, *supra* note 14; Ingraham Angle, *supra* note 11; *Acting ICE Director*, *supra* note 20.

13

(when he in fact has no convictions). It has pronounced its belief that he will be convicted and that "[u]pon completion of his sentence, . . . he will be returned to his home country of El Salvador."[30]

### III. A Cautionary Order to Comply with Local Criminal Rule 2.01 Is Warranted Under the Circumstances

In sum, the government has repeatedly violated Local Criminal Rule 2.01. A cautionary order, directing the parties to comply with Local Criminal Rule 2.01, is therefore required to protect the impartiality of the jury pool and the integrity of these proceedings.[31]

The requested order would not be novel. The Court, and others in this District, have previously entered orders cautioning the parties to "follow not only the letter, but also the spirit of Local Criminal Rule 2.01" in light of the risk that "press releases, press conferences, or comments by counsel, their associates or those to whom they report" pose to the "right to a fair trial before an unbiased jury." *Darden*, ECF 1356 at 2; *see also Thomas v. Maury Cnty. Bd. of Educ.*, No. 18 Civ. 6 (M.D. Tenn. Sept. 18, 2018), ECF 28 at 1 (Trauger, J.) (cautioning "all parties and lawyers in this case . . . about making public statements that are substantially likely to interfere with the right of all parties to a fair trial" in accordance with civil analogue to Local Criminal Rule 2.01, "[b]ecause the facts comprising the allegations in this case have been widely publicized and are likely to continue to be widely publicized"); *Newby v. CoreCivic of Tenn., LLC*, No. 22 Civ. 93 (M.D. Tenn. July 15, 2022), ECF 53 at 7 (ordering plaintiffs' attorney to "refrain from extrajudicial statements regarding this matter and to delete those over which he has control," except those permitted by civil analogue to Local Criminal Rule 2.01). This order should not be limited to DOJ but should encompass DHS, which has played an integral role in this investigation, is a member

---

[30] *Bondi News Conference*, *supra* note 1.
[31] The defense's limited public statements have complied with Local Criminal Rule 2.01, which authorizes statements necessary to protect Mr. Abrego against substantial undue prejudice engendered by the government's statements. *See id.* 2.01(a)(3).

of the prosecution team, and is responsible for making some of the prejudicial statements in relation to this case. Indeed, orders similar to that requested here are commonplace in high-profile criminal cases across the country. *See, e.g.*, *United States v. Combs*, No. 24 Cr. 542 (S.D.N.Y. Oct. 25, 2024), ECF 50 at 2 (directing "the Government, and all local and federal law enforcement agents assigned to this case or the related investigation, assisting with this case or the related investigation, or who have assisted with this case or the related investigation," to comply with analogous local rule); *United States v. Manafort*, No. 17 Cr. 201 (D.D.C. Nov. 8, 2017), ECF 38 at 3 (ordering the parties to refrain from making further public statements to the media or in public settings that are "substantially likely to have a materially prejudicial effect on this case" in compliance with the analogous local rule); *United States v. McVeigh*, 931 F. Supp. 756, 760 (D. Colo. 1996) (ordering parties to comply with the "essence" of a local rule prohibiting dissemination of extrajudicial statements).

The government claims to have returned Mr. Abrego to the United States not to remedy its mistake in unlawfully removing him to a notorious Salvadoran prison but to "face justice."[32] Yet the government has created a public narrative about Mr. Abrego that poses a "serious and imminent threat to the administration of [that] justice." *CBS*, 522 F.2d at 239. Mr. Abrego has been a focus of national attention since the government illegally removed him to El Salvador. But like all defendants, he has the right to a fair trial free from outside influence. To preserve that right, the Court should direct the parties to comply with their obligations under Local Criminal Rule 2.01.

## <u>CONCLUSION</u>

For the foregoing reasons, Mr. Abrego respectfully requests that the Court issue an order directing the parties to comply with Local Criminal Rule 2.01.

---

[32] Ingraham Angle, *supra* note 11.

Dated: July 2, 2025
      New York, New York

Respectfully submitted,

 /s/ Sean Hecker     
Sean Hecker*
Jenna M. Dabbs*
David Patton*
HECKER FINK LLP
350 Fifth Avenue, 63rd Floor
New York, NY 10118
Telephone: (212) 763-0883
Fax: (212) 564-0883
shecker@heckerfink.com
jdabbs@heckerfink.com
dpatton@heckerfink.com

* admitted *pro hac vice*

Rascoe Dean (No. 034209)
SHERRARD ROE VOIGT & HARBISON PLLC
1600 West End Avenue, Suite 1750
Nashville, Tennessee 37203
Telephone: (615) 742-4200
Fax: (615) 742-4539
rdean@srvhlaw.com

*Counsel for Defendant Kilmar Armando Abrego Garcia*

16

**CERTIFICATE OF SERVICE**

I hereby certify that on July 2, 2025, I electronically filed the foregoing document with the clerk of the court by using the CM/ECF system, which will send a notice of Electronic Filing to the following: Acting United States Attorney, Robert E. McGuire, 719 Church Street, Suite 3300, Nashville, Tennessee 37203.

/s/ Sean Hecker