IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>KILMAR ARMANDO ABREGO GARCIA,<br><br>*Defendant.* | No. 3:25-cr-115<br><br>Judge Waverly D. Crenshaw, Jr. |

**MOTION AND MEMORANDUM OF LAW IN SUPPORT OF ISSUANCE OF ORDER REQUIRING DEPARTMENT OF JUSTICE AND DEPARTMENT OF HOMELAND SECURITY OFFICIALS TO REFRAIN FROM MAKING PREJUDICIAL EXTRAJUDICIAL STATEMENTS**

Since Kilmar Armando Abrego Garcia was released from pretrial custody last Friday, officials from the Department of Justice and the Department of Homeland Security—and even the White House—have attacked Mr. Abrego in the media in numerous highly prejudicial, inflammatory, and false statements. To safeguard his right to a fair trial, Mr. Abrego respectfully renews his earlier requests that the Court order that all DOJ and DHS officials involved in this case, and all officials in their supervisory chain, including Attorney General Pamela Bondi and Secretary of Homeland Security Kristi Noem, refrain from making extrajudicial comments that pose a substantial likelihood of materially prejudicing this proceeding. (*See, e.g.*, L. Crim. R. 2.01(a)(2)(B)).[1] At a minimum, Mr. Abrego requests that the Court order the government to describe promptly the steps it has taken to comply with its prior order requiring that "all counsel" comply with Local Criminal Rules 2.01(a)(1) and (a)(4) and Tennessee Rule of Professional Conduct 3.8(f) (*see* Dkt. 101), which requires prosecutors to "discourage investigators, law enforcement personnel, and other persons assisting or associated with the prosecutor in a criminal matter" from making prejudicial public statements.

## BACKGROUND

As Mr. Abrego has described in previous submissions, ever since he sued the government to enjoin his unlawful removal to El Salvador, numerous government officials have vilified him in

---

[1] Local Criminal Rule 2.01(a)(2)(B) lists categories of statements that are "more likely than not to have a material prejudicial effect on a proceeding," which include comments about "[t]he prior criminal record (including arrests, indictments, or other charges of crime), or the character or reputation of the accused"; "[t]he character, credibility, reputation, or criminal record of a party or the identity, testimony, or credibility of prospective witnesses"; "[t]he identity or nature of physical evidence expected to be presented"; "[t]he fact that an accused has been charged with a crime, unless there is included therein a statement that the charge is merely an accusation and that the accused is presumed innocent unless and until proven guilty"; "[a]ny opinion as to the accused's guilt or innocence, or as to the evidence in the case"; and "[i]nformation that the lawyer knows or reasonably should know is likely to be inadmissible as evidence in a trial or that would, if disclosed, create a substantial risk of prejudicing an impartial trial." (L. Crim. R. 2.01(a)(2)(B)).

the media—and these baseless public attacks have continued even after he was indicted in this District. (*See* Dkt. 69, Dkt. 94). This past Friday, Mr. Abrego's release from pretrial detention reignited the efforts of officials across the Executive Branch—and particularly at DHS—to besmirch both Mr. Abrego and the courts in a campaign to try this case in the court of public opinion.

Within minutes of Mr. Abrego's release from pretrial detention, Secretary Noem issued a statement criticizing "[a]ctivist liberal judges" for "attempt[ing] to obstruct our law enforcement every step of the way in removing the worst of the worst criminal illegal aliens from our country."[2] Secretary Noem excoriated Judge Xinis for being the "publicity hungry Maryland judge" who allowed Mr. Abrego, a "MS-13 gang member, human trafficker, serial domestic abuser, and child predator," to walk free.[3] She also called Mr. Abrego a "monster" and committed to "fighting till this Salvadoran man faces justice and is OUT of our country."[4] White House Deputy Press Secretary Abigail Jackson put out a similar statement that same day.[5] Secretary Noem's statement was separately published in a DHS press release, alongside purported "evidence" of her claims.[6] That "evidence" included, among other things, the government's skewed narrative of the 2022

---

[2] Cameron Arcand, *Noem Torches 'Activist Liberal Judges' After Abrego Garcia's Release from Jail: 'New Low'*, Fox News (Aug. 22, 2025), https://www.foxnews.com/politics/noem-torches-activist-liberal-judges-after-abrego-garcias-release-from-jail-new-low.
[3] *Id.*
[4] *Id.*
[5] *See* Abigail Jackson (@ATJackson), X (Aug. 22, 2025 at 5:02 p.m.), https://x.com/ATJackson47/status/1958998279967895879 ("Abrego Garcia is a criminal illegal alien, wife-beater, and an MS-13 gang member facing serious charges of human smuggling. He will face justice for his crimes. It's an insult to his victims that this left-wing magistrate intervened to put him back on the streets. Garcia will be subject to ankle monitoring to ensure the safety of the American public until further action can be taken.").
[6] Press Release, Dep't of Homeland Sec., Secretary Noem Condemns the Release of Kilmar Abrego Garcia, a MS-13 Gang Member, Human Trafficker, Wife Beater, and Child Predator (Aug. 22, 2025), https://www.dhs.gov/news/2025/08/22/secretary-noem-condemns-release-kilmar-abrego-garcia-ms-13-gang-member-human.

3

traffic stop in Tennessee and evidence that allegedly "validated Abrego Garcia as a member of the [MS-13] Gang"[7]—an allegation that Judge Holmes refused to credit, and that this Court recently described as "border[ing] on fanciful."[8] (Dkt. 95 at 32; Dkt. 43 at 39-40).

Senior government officials continued their assault on Mr. Abrego not long after his arrival in Maryland, branding him a criminal and promising that he would be removed swiftly from the United States. White House "border czar" Tom Homan stated that Mr. Abrego is "not going to walk the streets of this nation" and called him a "criminal alien…a member of MS-13…a wife-beater…a human trafficker…[and] a bad person [who is] not going to be here."[9] An unnamed "[s]enior Trump administration official," apparently referencing the government's stated intention to deport Mr. Abrego to Uganda, could not have made the government's campaign for retribution against Mr. Abrego more clear: "We are not going to stop coming after him….If this criminal wanted amnesty, he should have prayed for Kamala to win. She didn't. President Trump did….He isn't getting away."[10]

On Monday morning, Mr. Abrego reported as directed to ICE's Baltimore field office for an interview and was promptly detained. Afterwards, the government's prejudicial public attacks continued. Secretary Noem issued a statement announcing Mr. Abrego's ICE arrest and vowed:

---

[7] *Id.*

[8] The government's repeated (and unsubstantiated) allegations regarding Mr. Abrego's MS-13 affiliation are particularly troubling, given the Sixth Circuit's admonition—made in the context of assessing the admissibility of evidence under Rule 404(b)—that "[t]rial courts must treat evidence of gang affiliation with care" due to its highly prejudicial nature. *United States v. Tolbert*, 8 F. App'x 372, 378 (6th Cir. 2001).

[9] *America Will Be the 'Safest Nation' By the Time President Trump's Presidency Ends, Says Tom Homan*, Fox News (Aug. 24, 2025), https://www.foxnews.com/video/6377332527112.

[10] Naomi Lachance et al., *'He Isn't Getting Away': Trump Admin Plans to Send Kilmar Abrego Garcia to Uganda*, Rolling Stone (Aug. 23, 2025), https://www.rollingstone.com/politics/politics-features/trump-kilmar-abrego-garcia-uganda-el-salvador-release-1235414423/.

"President Trump is not going to allow this illegal alien, who is an MS-13 gang member, human trafficker, serial domestic abuser, and child predator, to terrorize American citizens any longer."[11]

That same morning, at a press conference at the White House, Attorney General Bondi and President Trump made the following remarks about Mr. Abrego:

> DONALD TRUMP: [Democrats] think he's gonna be good for votes and I think he's very bad for votes. These people are deranged. He's not good for votes. He beat the hell out of his wife. His wife is afraid to even talk about him. She's been mauled by this animal and uh you know through a system of liberal courts you know he's doing things but no we have that under control….
>
> PAM BONDI: No, no we've got him under control he will no longer terrorize our country. He's currently charged with human smuggling including children. The guy needs to be in prison he doesn't need to be on the streets like all these liberals want him to be.…We are going to keep America safe from all of these foreign terrorist organizations, including Abrego Garcia.[12]

Meanwhile, the government continued its barrage against Mr. Abrego on social media. Since Friday, DHS has posted a litany of inflammatory statements on its official X account. In a series of posts, DHS once again publicly described purported "evidence" against Mr. Abrego.[13] Several hours later, DHS posted yet another statement, saying that it was "thrilled that this MS-13 gang member, human trafficker, wife beater, and child predator is being processed for removal to

---

[11] Press Release, Dep't of Homeland Sec., Secretary Noem Announces ICE Arrest of Kilmar Abrego Garcia, an MS-13 Gang Member, Human Trafficker, Wife Beater, Child Predator and Criminal Illegal Alien (Aug. 25, 2025), https://www.dhs.gov/news/2025/08/25/secretary-noem-announces-ice-arrest-kilmar-abrego-garcia-ms-13-gang-member-human.

[12] Rapid Response 47 (@RapidResponse47), X (Aug. 25, 2025 at 11:43 a.m.), https://x.com/RapidResponse47/status/1960005089034432835.

[13] Homeland Security (@DHSgov), X (Aug. 25, 2025 at 9:19 a.m.), https://x.com/DHSgov/status/1959968804881998262 ("Sanctuary politicians and the FAKE news won't tell you the truth about Kilmar Abrego Garcia—a MS-13 gang member, human trafficker, wife beater, child predator and criminal illegal alien. We will.").

5

Uganda!"[14] And a few hours after *that*, DHS proclaimed that the President and Secretary Noem "are not going to allow this illegal alien—who is an MS-13 gang member, human trafficker, serial domestic abuser, and child predator—to terrorize American citizens any longer."[15] Then, DHS posted a video of an ICE agent taking Mr. Abrego into custody after he was arrested at the Baltimore field office:[16]



---

[14] Homeland Security (@DHSgov), X (Aug. 25, 2025 at 12:58 p.m.), https://x.com/DHSgov/status/1960023878048063625.
[15] Homeland Security (@DHSgov), X (Aug. 25, 2025 at 4:19 p.m.), https://x.com/DHSgov/status/1960074630317666363.
[16] Homeland Security (@DHSgov), X (Aug. 25, 2025 at 8:04 p.m.), https://x.com/DHSgov/status/1960131090431033508.

And the pièce de resistance: DHS also reposted the following graphic from the White House's official account:[17]



Later in the evening, DHS officials appeared on national television to repeat their claims about Mr. Abrego. On one evening program, Secretary Noem spoke at length about Mr. Abrego and said: "He is a terrorist. He is a wife-beater. He is someone who has trafficked individuals and even solicited minors for nude pictures and for pornography. He's a horrible individual who needs to be held accountable for his crimes."[18] Secretary Noem appeared on another program that evening and made similar statements about Mr. Abrego.[19] DHS's Deputy Assistant Secretary for Media Relations Lauren Bis also appeared on television, stating that "President Trump and Secretary Noem have taken strong action. They've arrested this individual and made sure this

---

[17] White House (@WhiteHouse), X (Aug. 25, 2025, at 10:14 a.m.), https://x.com/WhiteHouse/status/1959982799420535063.

[18] Newsmax, *Kristi Noem Exposes Reality of Kilmar Abrego Garcia Case Amid Legal Battles* (YouTube Aug. 25, 2025), https://www.youtube.com/watch?v=13ZBoRujI1Y.

[19] Secretary Kristi Noem (@Sec_Noem), X (Aug. 25, 2025, at 9:48 p.m.), https://x.com/Sec_Noem/status/1960157409940295786.

7

known public safety threat—a gang member, a human trafficker, someone who has solicited child pornography, a wife-beater—that he is arrested, and he is no longer a threat to the American people."[20]

Government officials have continued to disparage Mr. Abrego up until the date of filing. Last night, Homan went on Fox News to call Mr. Abrego "a gang member [and] designated terrorist," and gave Sean Hannity his "word" that Mr. Abrego "will be deported from this country."[21] And this morning Homan returned to Fox, so that he could tell its national television audience that Mr. Abrego was "a gang member, terrorist, wife beater, pedophile, human trafficker, [and] alien smuggler"; Mr. Homan also explained that the government had their "teeth in this thing and will not let it go."[22]

## ARGUMENT

The substance of these statements, like the countless other statements highlighted in prior briefs before this Court, clearly violates Local Criminal Rule 2.01 and prejudices Mr. Abrego's right to a fair trial. (*See* Dkt. 69, Dkt. 94, Dkt. 98). For months, numerous representatives of the same federal government that is responsible for prosecuting this case have publicly disparaged Mr. Abrego's character and reputation; distorted the events and evidence underpinning his case to the public; misrepresented his criminal record; disseminated false, irrelevant, and inflammatory claims; and expressed the opinion that he is guilty of the crimes charged and far worse, despite Mr. Abrego's entitlement, like all accused of a crime in this country, to be "presumed innocent

---

[20] Homeland Security (@DHSgov), X (Aug. 25, 2025, at 8:24 p.m.), https://x.com/DHSgov/status/1960136305494683699.
[21] *Trump 'Border Czar': We Have a Lot to Fix*, Fox News (Aug. 27, 2025), https://www.foxnews.com/video/6377544982112.
[22] *Tom Homan Rips Judge's 'Radical' Alligator Alcatraz Ruling*, Fox News (Aug. 28, 2025), https://www.foxnews.com/video/6377571414112.

8

unless and until proven guilty beyond a reasonable doubt by a jury." (*See* Dkt. 101; *see also* L. Crim. R. 2.01(a)(2)(B)).

This Court's orders to date have been careful and measured. On July 3, 2025, the Court issued an order stating that "[a]ll counsel are expected to comply with the Local Rules of this Court." (Dkt. 73). After Secretary Noem continued to make inflammatory statements about Mr. Abrego, the defense asked the Court to clarify that the requirements of Local Criminal Rule 2.01 apply to DHS, and to order the government to notify all officials at DHS involved in the investigation of Mr. Abrego, and all officials in their supervisory chain, of the requirement to comply with that Rule. (*See* Dkt. 94). Although the Court expressed that it was "not clear" whether Local Criminal Rule 2.01 covers DHS, the Court nevertheless issued an order on July 31 explaining that "compliance with Local Criminal Rules 2.01(a)(1) and (a)(4) is not discretionary for all attorneys and their firms or agencies" and that "all counsel" in this case are subject to Tennessee Rule of Professional Conduct 3.8(f). (Dkt. 101). The Court further ordered the parties to ensure that "[a]ll counsel and those working with counsel shall ensure that any proper public communications include that the Indictment only contains allegations." (*Id.*). The defense has sought information about the government's efforts to comply with those orders and to rein in DHS, to no avail.[23]

---

[23] Defense counsel has sought such confirmation on two occasions. *See* Ex. A (email from Jenna Dabbs dated July 3, 2025); Ex. B (email from Jenna Dabbs dated July 9, 2025). Defense counsel has also sought retraction of inflammatory comments made by DHS Secretary Kristi Noem at HSI Headquarters in Nashville on July 18, two days after the revocation hearing in this case, calling Mr. Abrego "a horrible human being and a monster" who "should never be released free," and that he was "working in conjunction with" members of MS-13 and helped "facilitate the murder of a mother of one of the rival gangs." Ex. C (email from Jenna Dabbs dated July 21, 2025); *see also Secretary Noem to Host Press Conference Exposing "Worst of the Worst" Criminal Illegal Aliens in Tennessee*, DHS (July 18, 2025), https://www.dhs.gov/news/2025/07/17/secretary-noem-host-press-conference-exposing-worst-worst-criminal-illegal-aliens. The government has refused to

Regrettably, the previous efforts of both the Court and the defense have not worked. They have not stemmed the tide of inflammatory extrajudicial statements from government officials.

Further intervention from the Court is necessary to protect Mr. Abrego's right to a fair trial and the integrity of these proceedings. The government's ongoing barrage of prejudicial statements severely threaten—and perhaps have already irrevocably impaired—the ability to try this case at all—in any venue. If the government is allowed to continue in this way, it will taint any conceivable jury pool by exposing the entire country to irrelevant, prejudicial, and false claims about Mr. Abrego. The government's vitriolic statements also risk impeding the defense's ability to present its case through witnesses, who may well fear that they could be the next target of the government's public attacks should they take the stand. *See United States v. Trump*, 88 F.4th 990, 1012-14 (D.C. Cir. 2023) (affirming district court's authority to prevent the defendant from speaking about witnesses because such statements "pose a significant and imminent threat to individuals' willingness to participate fully and candidly in the process, to the content of their testimony and evidence, and to the trial's essential truth-finding function"); *see also Estes v. Texas*, 381 U.S. 532, 547 (1965) (publicity of proceedings "might render witnesses reluctant to appear and thereby impede the trial as well as the discovery of the truth").

This Court's local rules and its prior orders are clear-eyed about the potential consequences of one party's trying its case in the public instead of the courts. And even if, as the Court has suggested, the Local Rule's scope is ambiguous, there is nothing ambiguous or questionable about the Court's authority to put a stop to this. Courts have not only the authority, but an affirmative duty, to take reasonable steps to address improper extrajudicial statements in order to "minimize

---

answer any of this correspondence, and the extent to which the government has done anything at all to address these comments remains unknown.

the effects of prejudicial pretrial publicity" and protect the impartiality of the jury pool. *Gannett Co. v. DePasquale*, 443 U.S. 368, 378 (1979); *see Sheppard v. Maxwell*, 384 U.S. 333, 361, 363 (1966); *CBS Inc. v. Young*, 522 F.2d 234, 241 (6th Cir. 1975). The Court's authority to supervise this case and to protect the rights of the accused extends further than the Local Rules suggest. The Court has inherent supervisory authority in this area. *Cf. Sheppard*, 384 U.S. at 357 (court erred by "holding that it lacked power to control the publicity about the trial"). Courts have long recognized that:

> In a criminal case the trial judge has a duty and obligation to attempt to protect the right of the defendants to a fair trial, free of adverse publicity. Where the case is a notorious one, that burden on the court is heavy. The most practical and recommended procedure to insure against dissemination of prejudicial information is the entry of an order directing that attorneys, court personnel, enforcement officers and witnesses refrain from releasing any information which might interfere with the right of the defendant to a fair trial.

*Farr v. Pitchess*, 522 F.2d 464, 468 (9th Cir. 1975).

The Court would be acting well within this authority by ordering the law enforcement agency responsible for the case—here, DHS—to cease making prejudicial extrajudicial statements to ensure that the defendant receives a fair trial. In *Sheppard*, the Supreme Court recognized that due process "requires that the accused receive a trial by an impartial jury free from outside influences," and that "[n]either prosecutors, counsel for the defense, the accused, witnesses, court staff *nor enforcement officers*…should be permitted to frustrate its function." 384 U.S. at 363 (emphasis added); *see also id.* at 359 ("[T]he court should have made some effort to control the release of leads, information, and gossip to the press by police officers…."); *accord Farr*, 522 F.2d at 468 (approving of orders applying to "enforcement officers").

District courts across the country issue pretrial publicity orders that apply to law enforcement agencies responsible for criminal cases. *United States v. Combs*, No. 24 Cr. 542

11

(S.D.N.Y. Oct. 25, 2024), Dkt. 50 at 2 (directing "all local and federal law enforcement agents assigned to this case or the related investigation" to comply with local rule regulating extrajudicial statements); *United States v. Bankman-Fried*, No. 22 Cr. 673 (S.D.N.Y. July 26, 2023), Dkt. 180 at 1 (issuing order prohibiting "government agents and police officers" from making extrajudicial statements); *United States v. Vasquez-Garced*, No. 22 Cr. 342 (D.P.R. Aug. 12, 2022), Dkt. 27 at 1-2 (ordering "Federal Law Enforcement officers and their staff, employees, agents, and any other person in their offices with access to case-related information or facts" not to "give or authorize any extrajudicial statement or interview…[that] could interfere with a fair trial or prejudice any defendant"); *United States v. Guzman*, No. 12 Cr. 10264 (D. Mass. Oct. 1, 2015), Dkt. 429 (order prohibiting attorneys "and any agents, including but not limited to law enforcement personnel (whether retired or active), from making or releasing any extrajudicial statements to the media..."); *United States v. Chavez-Joya*, No. 3 Cr. 221 (S.D. Tex. May 18, 2004), Dkt. 295 (extrajudicial statements order applying to "the United States Attorney, his representatives and agents, including representatives and agents of any Federal, State and local law enforcement agency involved in the investigation of this case"); *United States v. Gray*, 189 F. Supp. 2d 279, 281-82 (D. Md. 2002) (issuing order regarding extrajudicial statements applicable to "law enforcement personnel" among others); *United States v. Davis*, 902 F. Supp. 98, 100-01 (E.D. La. 1995) (denying motion to vacate order prohibiting "the Federal Bureau of Investigation [and] its representatives and agents," among others, from making extrajudicial statements to public media). Likewise, the Court can permissibly order the United States Attorney General—the official ultimately responsible for the prosecution of this case—to stop making prejudicial extrajudicial statements. *See United States v. Koubriti*, 305 F. Supp. 2d 723, 725-26 (E.D. Mich. 2003) (formally and publicly admonishing Attorney General for making extrajudicial statements in violation of court order prohibiting public

12

disclosure of information "that had a reasonable likelihood of interfering with a fair trial or otherwise prejudicing the proceedings"); *United States v. Babich*, No. 16 Cr. 10343 (D. Mass. Dec. 17, 2018), Dkt. 615 at 3 (ordering "all prosecutors (including representatives of the U.S. Attorney's Office and the Department of Justice not appearing in this case)" not to make extrajudicial statements). Such an order is necessary here.

At the very least, though, the Court should enforce the ethical obligations of the prosecutors appearing in this case. All of the attorneys for the government are required by Tennessee Rule of Professional Conduct 3.8(f) to "discourage investigators, law enforcement personnel, and other persons assisting or associated with the prosecutor in a criminal matter from making an extrajudicial statement that the prosecutor would be prohibited from making" under the Tennessee rules, which includes "comments that have a substantial likelihood of heightening public condemnation of the accused."[24] Tenn. Sup. Ct. R. 8, RPC 3.8(f). The Court reminded the prosecution of those obligations in its most recent order on this subject. (Dkt. 101). There is no indication whatsoever that any of the government lawyers have complied with that obligation— and the continuing onslaught of vitriolic and prejudicial public statements from all corners of the federal government strongly suggests that they have not. As a result, if the Court is unwilling to issue an appropriate order prohibiting extrajudicial statements from all of DOJ and DHS, it should, at the very least, direct the government to describe promptly the steps it has taken to comply with the Court's prior orders and the Tennessee Rules of Professional Conduct.

---

[24] The application of this Rule to United States Attorney Robert E. McGuire, as a member of the Tennessee Bar practicing in this district, is clear. But the Rule applies with equal force to every other government attorney handling this case: Jacob Warren, Christopher Eason, Jeremy Franker, and Jason Harley. *See* 28 U.S.C. § 530B.

# CONCLUSION

For the foregoing reasons, Mr. Abrego respectfully requests that the Court enter an order requiring that all DHS and DOJ officials that are involved in this case, and all officials in their supervisory chain, including Attorney General Bondi and Secretary Noem, refrain from making extrajudicial comments that pose a substantial likelihood of materially prejudicing this proceeding. At a minimum, Mr. Abrego requests that the Court order the government to describe promptly the steps it has taken to comply with its prior order requiring that "all counsel" comply with Local Criminal Rules 2.01(a)(1) and (a)(4) and Tennessee Rule of Professional Conduct 3.8(f).

Dated: August 28, 2025
      New York, New York

Respectfully submitted,

/s/ Sean Hecker
Sean Hecker*
Jenna M. Dabbs*
David Patton*
HECKER FINK LLP
350 Fifth Avenue, 63rd Floor
New York, NY 10118
Telephone: (212) 763-0883
Fax: (212) 564-0883
shecker@heckerfink.com
jdabbs@heckerfink.com
dpatton@heckerfink.com

* admitted *pro hac vice*

Rascoe Dean (No. 034209)
SHERRARD ROE VOIGT & HARBISON PLLC
1600 West End Avenue, Suite 1750
Nashville, Tennessee 37203
Telephone: (615) 742-4200
Fax: (615) 742-4539
rdean@srvhlaw.com

*Counsel for Defendant Kilmar Armando Abrego Garcia*

**CERTIFICATE OF SERVICE**

      I hereby certify that on August 28, 2025, I electronically filed the foregoing document with the clerk of the court by using the CM/ECF system, which will send a notice of Electronic Filing to the following: Acting United States Attorney, Robert E. McGuire, 719 Church Street, Suite 3300, Nashville, Tennessee 37203; Assistant United States Attorney, Jason Harley, 210 Park Avenue, Suite 400, Oklahoma City, Oklahoma 73102.

      /s/ Sean Hecker