# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff, | ) ) | |
| v. | ) ) ) | No. 3:25-cr-00115 |
| KILMAR ARMANDO ABREGO GARCIA, | ) ) ) | |
| Defendant. | ) ) ) | |

## MEMORANDUM OPINION

> By way of context, a federal prosecutor is the representative not of an ordinary party to a controversy, but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all. The obligation to govern impartially concerns, above all, the state's exercise of coercive power—meaning its power to deprive its subjects of life, liberty, or property . . . As a representative of the state, a prosecutor's exercise of coercive power must be impartial . . . [in] that prosecutorial power may not be exercised vindictively—meaning that the prosecutor may not punish a defendant for exercising a protected statutory or constitutional right.

United States v. Zakhari, 85 F.4th 367, 384–85 (6th Cir. 2023) (Kethledge, J., concurring) (citations and quotations omitted). This context frames review of Defendant Kilmar Armando Abrego Garcia's ("Abrego") motion to dismiss his indictment for vindictive and selective prosecution. (Doc. Nos. 104–05). The Government opposes the motion (Doc. No. 121), and Abrego has replied (Doc. No. 127). Abrego's motion is not ripe for decision because he seeks discovery and an evidentiary hearing because there is some evidence of vindictiveness here. For the reasons that follow, the Court holds that the totality of events creates a sufficient evidentiary basis to conclude that there is a "realistic likelihood of vindictiveness" that entitles Abrego to discovery and requires an evidentiary hearing before the Court decides his motion. United States v. Andrews, 633 F.2d 449, 457 (6th Cir. 1980) (en banc), cert. denied, 450 U.S. 927 (1981).

# I.     LEGAL STANDARD

The Sixth Circuit provides a clear road map to district courts on how to approach motions to dismiss based upon alleged vindictive prosecution.  Most recently in United States v. Zakhari, the Sixth Circuit reversed the district court's denial of a motion to dismiss for alleged vindictive prosecution because the district court failed to allow discovery and an evidentiary hearing despite the defendant establishing a realistic likelihood of vindictiveness.  85 F.4th 367 (6th Cir. 2023). The Zakhari panel explained that "[t]he Fifth Amendment forbids the government from punishing Defendants for exercising their constitutional and statutory rights.  Consequently, Defendants may challenge the government's charging decisions for actual or presumptive vindictiveness."  Id. at 379.   The former theory, actual vindictiveness, allows a defendant to obtain dismissal of an indictment through presenting "'objective evidence that a prosecutor acted in order to punish the defendant for standing on his legal rights[.]'"  United States v. LaDeau, 734 F.3d 561, 566 (6th Cir. 2013) (quoting United States v. Dupree, 323 F.3d 480, 489 (6th Cir. 2003)).  The latter theory, however:

> [R]ecognizes a rebuttable presumption of vindictiveness if the Defendant shows a 'realistic likelihood' that a charge was vindictive.  This standard is objective and considers 'whether a reasonable person would think there existed a realistic likelihood of vindictiveness,' not the 'defendant's subjective impressions.'
>
> To assess this likelihood, a court 'must weigh two factors: (1) the prosecutor's stake in preventing assertion of the protected right and (2) the reasonableness of the prosecutor's actions.

Zakhari, 85 F.4th at 379 (citations omitted).  If the defendant presents evidence of a reasonable likelihood of vindictiveness, then the district court must allow discovery and an evidentiary hearing on that issue.  United States v. Adams, 870 F.2d 1140, 1146 (6th Cir. 1989) (defendant entitled to discovery when there is some evidence of vindictiveness).  The evidentiary hearing

allows the government to present its explanations that are tested in an adversarial setting. Andrews, 633 F.2d at 457.

## II.    BACKGROUND

The Court identifies three time periods that provide context for Abrego's request for discovery and an evidentiary hearing on his motion. Those three time periods are November 2022, March 2025, and April 2025.

### 1.   November 2022

For many years, Abrego lived with his family in Maryland without lawful status, after fleeing El Salvador due to extortion and death threats by gangs. He eventually was "granted withholding of removal to El Salvador pursuant to 8 U.S.C. § 1231(b)(3)(A)." Abrego Garcia v. Noem, 777 F. Supp. 3d 501, 507–08 (D. Md. 2025) (citations and quotations omitted). Abrego was released from Immigration and Customs Enforcement ("ICE") detention on supervised release and received legal authorization to work in the United States. (See Doc. No. 95 at 29). Following his release, he lived for many years in Maryland, without any criminal charges.

On November 30, 2022, Abrego was pulled over for speeding by Tennessee Highway Patrol ("THP") officers in Putnam County, Tennessee. After the November 30, 2022 traffic stop, THP elected not to issue Abrego a traffic ticket and sent him on his way. (Doc. No. 53-1, Government's Ex. 1 (body camera footage of November 30, 2022 traffic stop)). THP made a referral to a Homeland Security Investigations ("HSI") agent around December 1, 2022 about the November 30, 2022 traffic stop. (Doc. No. 121-1 ¶ 8). Apparently finding no basis for criminal charges, HSI closed the investigation more than two years later, on March 12, 2025. (Doc. No. 121-1 ¶ 9). Between the referral to HSI on December 1, 2022, and the investigation being closed on March 12, 2025, the record is silent on the course of any criminal investigation of Abrego. (See id.).

3

2. March 2025

Then, "[o]n March 15, 2025, the United States removed [Abrego] from the United States to El Salvador," due to an admitted "administrative error" by the United States. Noem v. Abrego Garcia, 604 U.S. ----, 145 S. Ct. 1017, 1018 (2025). Nine days after his removal from the United States, a lawsuit was filed on Abrego's behalf in the United States District Court of Maryland. Abrego sued Department of Homeland Security ("DHS") Secretary Kristi Noem, Attorney General Pamela Bondi, Secretary of State Marco Rubio, and other DHS officials ("Executive Official Defendants") challenging his removal to El Salvador and seeking an injunction requiring his return to Maryland. Abrego Garcia, 777 F. Supp. 3d at 510. The District Court did just that, ordering the Executive Official Defendants to "facilitate" his return to the United States. Abrego Garcia v. Noem, 2025 WL 1024654, at *1 (D. Md. Apr. 4, 2025); as amended, 2025 WL 1085601 (D. Md. Apr. 10, 2025).

The Executive Official Defendants appealed the District Court's injunction to both the United States Court of Appeals for the Fourth Circuit and the Supreme Court of the United States. See Abrego Garcia v. Noem, 2025 WL 1021113, at *1 (4th Cir. Apr. 7, 2025); Abrego Garcia, 145 S. Ct. at 1018. In two unanimous opinions, the Fourth Circuit and the Supreme Court agreed with the District Court that the Executive Official Defendants must "facilitate" Abrego's return. See id. This result was expected, as the Supreme Court noted, given the United States' "acknowledge[ment] that Abrego Garcia was subject to a withholding order forbidding his removal to El Salvador, and that the removal to El Salvador was therefore illegal." Abrego Garcia, 145 S. Ct. at 1018. Notwithstanding that concession, during and immediately subsequent to the appeals, the Executive Official Defendants made numerous public statements about Abrego. Secretary Noem called Abrego a "gang member," a "violent criminal" and a "terrorist." See, e.g.,

Mark Swanson, <u>Kristi Noem to Newsmax: Man Deported in Error 'Very Dangerous,'</u> Newsmax (Apr. 4, 2025), https://www.newsmax.com/newsmax-tv/kristi-noem-deported-kilmar-abregogarcia/2025/04/04/ id/1205764/; <u>The Economic Times, 'I'm Not Here for This': Kristi Noem Fumes at House Hearing over Kilmar Abrego Garcia's Deportation</u>, YouTube (May 14, 2025), https://www.youtube.com/watch?v=vAyUpm9VqlU.  Attorney General Bondi said Abrego was a "known gang member."  <u>Bondi Asked Why Abrego Garcia Must Stay in Foreign Prison If Admin Admitted Deportation Was Mistake</u>, Forbes Breaking News (Apr. 8, 2025), https://www.youtube.com/watch?v=MXh4lmUAKZA.   Other statements by the Executive Official Defendants were of the same nature.

   3. <u>April 2025</u>

   Mere days after the Supreme Court affirmed the District Court's injunction, HSI reopened its investigation into Abrego's November 30, 2022 traffic stop.  (Doc. No. 129-1; <u>see</u> Doc. No. 61 at 12:19–25, 13:7–15:18).  The investigation progressed with HSI agents interviewing cooperating witnesses and gathering information.  Then, on the evening of April 27, 2025, Special Agent Rana Saoud ("SA Saoud"), the Special Agent in Charge ("SAC") of HSI investigations in the Middle District of Tennessee, referred Abrego's November 30, 2022 traffic stop to Acting U.S. Attorney Rob McGuire for possible human smuggling charges against Abrego.  (Doc. No. 121-1 ¶ 4; <u>see</u> <u>id.</u> ¶ 9).  Less than a month later, on May 21, 2025, the Middle District of Tennessee grand jury returned a two-count indictment against Abrego arising primarily from the November 30, 2022 traffic stop.  (Doc. No. 3).  An arrest warrant issued, prompting the United States to return Abrego from El Salvador.  (Doc. No. 5).  Abrego was arrested on June 6, 2025, and brought to this District. (Doc. No. 9).

Notably, on the day of and shortly after Abrego's arrest, several Executive Official Defendants and their subordinates made public statements about Abrego and celebrated the criminal charges against him. For instance, Secretary Noem posted on her X account on the day of Abrego's arrest that he is "a known MS-13 gang member, human trafficker, and serial domestic abuser." Secretary Kristi Noem (@Sec_Noem), X (June 6, 2025 at 4:39 PM), https://x.com/Sec_Noem/ status/1931088689842782559. That same day, Attorney General Bondi announced during a press conference that Abrego would be found guilty, sentenced, and "returned to his home country of El Salvador." Attorney General Bondi News Conference, C-SPAN (June 6, 2025), https://www.cspan.org/program/news-conference/attorney-general-bondi-newsconference/660932. Most tellingly, Attorney General Bondi's direct report, Deputy Attorney General Todd Blanche, linked Abrego's criminal charges to Abrego's civil lawsuit in Maryland. Strikingly, during a television interview Deputy Attorney General Blanche revealed that the government started "investigating" Abrego after "a judge in Maryland . . . questioned" the government's decision, found that it "had no right to deport him," and "accus[ed] [the government] of doing something wrong." Kilmar Abrego Garcia was indicted on 'very serious' charges, US deputy attorney general says, Fox News (June 6, 2025), https://www.foxnews.com/video/6373969491112.

## III. ANALYSIS

There is no dispute that Abrego exercised his constitutional and statutory rights when he challenged the government's decision to remove him to El Salvador. Graham v. Nat'l Collegiate Athletic Ass'n, 804 F.2d 953, 958–59 (6th Cir. 1986); see Abrego Garcia, 2025 WL 1135112, at *1. The issue before the Court is whether Abrego has presented objective direct evidence of actual vindictiveness, or objective indirect evidence of vindictiveness that creates a presumption of vindictiveness. The Court will address both.

6

1. Actual Vindictiveness

Abrego first argues that the prosecution against him is actually vindictive, a standard that he admits is "'exceedingly difficult to make.'" Bragan v. Poindexter, 249 F.3d 476, 481 (6th Cir. 2001) (quoting United States v. Meyer, 810 F.2d 1242, 1245 (D.C. Cir. 1987)); (see Doc. No. 105 at 15). Just because actual vindictiveness is a high bar, however, does not mean that it is never satisfied. See Adams, 870 F.2d at 1145; Blackledge v. Perry, 417 U.S. 21, 27–28 (1974).

Actual vindictiveness may be apparent based on the Executive Official Defendants' and their subordinates' statements about Abrego from the time he filed his Maryland lawsuit through his arrest in this District. While many of the statements made by the Executive Official Defendants about Abrego raise cause for concern, one stands out amongst the rest. Deputy Attorney General Blache—the DOJ official responsible for overseeing the criminal division and Acting U.S. Attorney McGuire—told the public on television on the *day* of Abrego's arrest that the government started "investigating" Abrego after "a judge in Maryland . . . questioned" the government's decision to deport Abrego, found that it "had no right to deport him," and "accus[ed] [the government] of doing something wrong." Kilmar Abrego Garcia was indicted on 'very serious' charges, US deputy attorney general says, Fox News (June 6, 2025), https://www.foxnews.com/video/6373969491112. He further stated that Abrego was not returned "for any other reason than to face justice." Id. To remove any doubt, Deputy Attorney General Blanche said that the criminal case was brought to return Abrego to the United States, "not [because of] a Judge," but instead, because of "an arrest warrant issued by a grand jury in the Middle District of Tennessee." Id. This could be direct evidence of vindictiveness.

Deputy Attorney General Blanche's remarkable statements could directly establish that the motivations for Abrego's criminal charges stem from his exercise of his constitutional and

statutory rights to bring suit against the Executive Official Defendants, rather than a genuine desire to prosecute him for alleged criminal misconduct.[1] Andrews, 633 F.2d at 453 (suggesting that "actual confession by the prosecutor" is the clearest case of prosecutorial vindictiveness); see also United States v. Velsicol Chemical Corp., 498 F. Supp. 1255, 1266 (D.D.C. 1980) (finding actual vindictiveness and dismissing indictments where the U.S. Attorney "clearly expressed his intent and motivation" for bring charges, which constituted "an explicit threat" to the defendants).  While these remarks may come close to establishing actual vindictiveness, they fall short on the record before the Court because they require an inference tying them to actual decisionmakers.  Yet, the Court need not resolve Abrego's arguments on actual vindictiveness at this juncture, given that his showing of a realistic likelihood of vindictiveness entitles him to discovery and a hearing.  After discovery and an evidentiary hearing, the Court can revisit this issue if necessary.

      2.  Presumptive Vindictiveness

     Presumptive vindictiveness uses indirect evidence to determine "whether a reasonable person would think there existed a realistic likelihood of vindictiveness." Zakhari, 85 F.4th at 379. The Court weighs two factors: "(1) the prosecutor's 'stake' in preventing assertion of the protected right and (2) the reasonableness of the prosecutor's actions." Id. (quoting United States v. Poole, 407 F.3d 767, 776 (6th Cir. 2005)).  Based upon the record before the Court, both factors are present here.  The Government had a significant stake in retaliating against Abrego's success in

---

[1] It may be that Deputy Attorney General Blanche's opinion distressed former Chief of the Criminal Division of the U.S. Attorney's Office in the Middle District of Tennessee, Ben Schrader. It is alleged that Mr. Schrader resigned on May 21, 2025—the day Abrego was indicted—because of what some have suggested were his "concerns that th[is] case was being pursed for political reasons."  Katherine Faulders et al., Kilmar Abrego Garcia Brought Back to US, Appears in Court on Charges of Smuggling Migrants, ABC News (June 6, 2025), https://abcnews.go.com/US/mistakenly-deported-kilmar-abrego-garcia-back-us-face/story?id=121333122.

the Maryland lawsuit and deterring any future efforts in that lawsuit. The potential unreasonableness of the prosecution is reflected in the timing of the Government's conduct in March and April 2025. This is sufficient to conclude that Abrego has made a *prima facie* showing of "some evidence" that there is a realistic likelihood that the prosecution against him may be vindictive and Abrego is therefore entitled to discovery and a hearing.

A. Prosecutor/Government's Stake

When evaluating the prosecutorial/government stake in preventing or punishing Abrego's right to bring a lawsuit against Secretary Noem, Attorney General Bondi and others, the Court is mindful that "the mere filing of a lawsuit against any agency of the federal government does not give anyone a license to break the law and insist that any ensuing prosecution be quashed as retaliatory." Adams, 870 F.2d at 1145. Instead, the "likelihood that a defendant's exercise of his rights will spur a vindictive prosecutorial response is indexed to the burden that the defendant's conduct has placed on prosecution." LaDeau, 734 F.3d at 569. These principles, as the Sixth Circuit has cautioned repeatedly, require an analysis of vindictiveness that "'will necessarily turn on its own facts.'" Id. at 566 (quoting Andrews, 633 F.2d at 453–54).

As an initial matter, Abrego's actions have clearly burdened the Executive Official Defendants. Abrego's successful Maryland lawsuit challenging the Executive Branch's unilateral decision to remove him to El Salvador resulted in the Judicial Branch reversing Abrego's removal. See Abrego Garcia, 145 S. Ct. at 1018; Abrego Garcia, 2025 WL 1021113, at *1, Abrego Garcia, 2025 WL 1024654, at *1. The Executive Branch invested time, resources, and international coordination with El Salvador to remove Abrego from the United States. All of this occurred notwithstanding an order forbidding his removal to El Salvador. Abrego's successful challenge, and the federal injunction he obtained, meant that the Executive's time, resources, and

9

international coordination with El Salvador was a waste. The Executive Branch now must start anew if it seeks to remove Abrego again. This has created a significant burden on and embarrassment to the Executive Branch, that must now expend additional time, resources, and international goodwill to remove Abrego to El Salvador or elsewhere. Even more telling is the injunction to facilitate his return to Maryland created both national and international burdens on the Government, and more specifically, on the Executive Official Defendants.

After the process of appealing the District Court's order to facilitate Abrego's return, the Executive Official Defendants were left with no option but to comply. They somewhat struggled to do so. See, e.g., Abrego Garcia v. Noem, 348 F.R.D. 589, 593–94 (D. Md. 2025) (ordering expedited discovery on "what steps, if any, Defendants have taken to facilitate Abrego Garcia's immediate return").

The Executive Official Defendants and their subordinates' public statements about Abrego further demonstrates the burden he imposed upon them. Indeed, Deputy Attorney General Blanche directly ties HSI's investigation to Abrego's Maryland suit. As discussed above, Deputy Attorney Blanche directly linked the Maryland lawsuit to the investigation of criminal behavior by Abrego. Kilmar Abrego Garcia was indicted on 'very serious' charges, US deputy attorney general says, Fox News (June 6, 2025), https://www.foxnews.com/video/6373969491112. At minimum, this suggests the Executive Official Defendants' frustration with Abrego, and that his case was not a run-of-the-mill prosecution.

In opposition to Abrego's request for discovery and an evidentiary hearing, the Government argues the motives of the Executive Official Defendants is irrelevant because they are not the day-to-day prosecutors in this case. The Sixth Circuit's decision in United States v. Adams is sufficient to reject that argument. In Adams, two married defendants "were indicted on

charges of making false federal income tax returns," only after one defendant filed a discrimination action against her employer, the Equal Employment Opportunities Commission ("EEOC"). Adams, 870 F.2d at 1141–44. The defendants moved to dismiss the indictment, asserting that their prosecution stemmed from retaliation for suing the EEOC. Id. at 1141. In support of their motion, the defendants relied upon two affidavits. Id. One affidavit was from the former director of the EEOC office where one of the defendants worked. Id. at 1141, 1146. The former director stated that he believed "the EEOC instigated and pushed the investigation and prosecution of [the suing defendant] as revenge against her because she filed the discrimination complaint and subsequent lawsuit[.]" Id. at 1141 (quotations omitted). The second affidavit was from a former Internal Revenue Service employee who opined that the criminal charges were unusual in light of defendant correcting their financial misstatements. Id. at 1144. The district court in Adams denied the motion to dismiss for vindictiveness and refused to allow any discovery or an evidentiary hearing. Id. at 1144–45.

The Sixth Circuit reversed. In a unanimous opinion, the Sixth Circuit concluded that the defendant's discrimination lawsuit against the EEOC and supporting affidavits constituted some evidence of vindictiveness. The panel reasoned that "the EEOC [may have been] able to prevail upon the Department of Justice to institute a prosecution that would not have been undertaken but for [the defendant's] exercise of her statutory right to sue[.]" Id. at 1146. Because the Sixth Circuit found the defendants made a *prima facie* showing of "a realistic likelihood of vindictiveness," it concluded that the district court erred in not "'conduct[ing] an evidentiary hearing where the government's explanations can be formally presented and tested.'" Id. at 1146 (quoting Andrews, 633 F.2d at 457). The Adams panel ordered the district court to open discovery on whether "the EEOC, acting on an improper motive, induced the Department of Justice to institute a prosecution

that would not otherwise have been undertaken." Id. The same may be true here if discovery shows HSI induced the DOJ to indict Abrego.

The Government's reliance on cases where defendants challenged only the vindictiveness of the day-to-day prosecutors does not create a dispositive universal rule. It bears repeating yet again: "a court faced with vindictiveness allegations must assess the fact situation before it to see if the [vindictiveness] standard is met . . . [e]ach situation will necessarily turn on its own facts." LaDeau, 734 F.3d at 567 (quoting Andrews, 633 F.2d at 453–54). The lesson from Adams is that the vindictive prosecution analysis is not so limited as to Acting U.S. Attorney McGuire, nor is it limited only to the DOJ. See id. Indeed, this is consistent with other Sixth Circuit cases. Andrews, 633 F.2d at 453–54; LaDeau, 734 F.3d at 567; c.f. United States v. Leonard, 1990 WL 108959, at *2 (6th Cir. July 31, 1990) (applying Adams to a case involving the Drug Enforcement Agency and the Treasury Department). This claim of vindictive prosecution implicates the Executive Official Defendants, their respective subordinates, and the totality of actions and statements surrounding Abrego.

At bottom, in considering the prosecutor's stake in deterring Abrego's exercise of his rights, this Court must consider the situation at hand, including the forum that Abrego exercised his rights in, those he exercised his rights against, and the facts in that proceeding. See LaDeau, 734 F.3d at 567. That is what the Court does here. Even assuming the individual motive of Acting U.S. Attorney McGuire was pure, others' motives, like fruit from a poisonous tree, may taint this prosecution. (See Doc. No. 121-1 ¶ 9). The Court finds Abrego has sufficiently presented some evidence that the Government had a stake in retaliating against him for exercising his rights in the Maryland suit and deterring him from continuing to exercise those rights.

12

## B. Reasonableness of the Prosecutor's/Government's Actions

As the Sixth Circuit explained in United States v. Zakhari, the prosecutor's/government's stake "is only part of the equation and must be considered alongside reasonableness[.]"  85 F.4th at 383.  The timing of events is one factor that may suggest a prosecutor's conduct is unreasonable. See id. at 381 (the government's unreasonableness reflected when it had no new circumstances or knowledge warranting adding an additional count to defendant's indictment *seven* months after the original indictment and shortly after defendant's motion to suppress that "presented a grave threat to the prosecution's case"); accord United States v. Jenkins, 504 F.3d 694, 700 (9th Cir. 2007); United States v. Wood, 36 F.3d 945, 947 (10th Cir. 1994).  Likewise, timing is important here.

The timing of Abrego's indictment suggests a realistic likelihood that senior DOJ and DHS officials may have induced Acting U.S. Attorney McGuire (albeit unknowingly) to criminally charge Abrego in retaliation for his Maryland lawsuit.  The indictment stems from a HSI investigation into the November 30, 2022 traffic stop that resulted in no traffic tickets, let alone charges against Abrego.  HSI put that matter to bed on March 12, 2025.  Just three days later, on March 15, 2025, the Executive Branch made the unilateral decision to remove Abrego to El Salvador.  Abrego filed suit on March 24, 2025.  Less than two weeks later, he obtained a federal injunction to facilitate his return to the United States and undo what had been done.  The Executive Official Defendants' appeals were not successful.  The Fourth Circuit and Supreme Court sided with Abrego on April 7, and April 10, respectively.

Simultaneously, only days after the Supreme Court's decision, HSI—under the direction of Secretary Noem—reopened its investigation into Abrego.  (Doc. No. 129-1; see Doc. No. 61 at

13

12:19–25, 13:7–15:18).  Ten days after that, HSI SA Saoud connected with Acting U.S. Attorney McGuire.  (Doc. No. 121-1 ¶ 4).  On May 21, 2025, Abrego was indicted.  (Doc. No. 3).

This timeline suggests that Abrego's prosecution may stem from retaliation by the DOJ and DHS due to Abrego's successful challenge of his unlawful deportation in Maryland.  Only 58 days passed from the time Abrego filed suit in Maryland to when he was indicted in this District. Or consider the close timing between developments in Abrego's civil suit and HSI reopening its investigation into him, which may be even more alarming: HSI reopened that investigation, after closing it the month prior, only 24 days after Abrego filed his civil suit, 13 days after he obtained relief in the District Court, and a mere *seven* days after he prevailed against the Executive Official Defendants on appeal at the Supreme Court.  All of this stands in stark contrast to the 832 days the HSI investigation into Abrego remained pending, without referral to the U.S. Attorney's Office in the Middle District of Tennessee for prosecution, prior to Abrego's lawsuit against the Executive Official Defendants commenced.  (See Doc. No. 121-1 ¶¶ 8–9).

Abrego has also presented evidence that the years-long delay in bringing Abrego's human smuggling charges based on a traffic stop is atypical in this Circuit.  The data presented shows that when compared to *all* of the criminal cases in the Sixth Circuit involving a traffic stop from August 19, 2010 to August 19, 2025, *only* Abrego's charges were filed significantly—903 days—after the date of the traffic stop.  (See Doc. No. 105-1).  This supports his contention that there may be an improper motive for his prosecution.  See Adams, 870 F.2d at 1146 (evidence of differential treatment supports a showing of prosecutorial vindictiveness).

That the Attorney General and various DHS officials, among others, are currently defending themselves in Abrego's successful civil suit provides a plausible rationale for HSI reopening its investigation into Abrego.  This must be considered with Deputy Attorney General

14

Blanche's possible admission connecting the two.  See Abrego Garcia, 777 F. Supp. 3d at 51; (see also Doc. No. 121-1 ¶ 4).  Abrego has demonstrated that the reasonableness of his criminal prosecution may likely be vindictiveness.

## IV.   CONCLUSION

In sum, Abrego has carried his burden of demonstrating some evidence that the prosecution against him may be vindictive.  The Government "bears the burden of rebutting the presumption with 'objective, on-the-record explanations' such as 'governmental discovery of previously unknown evidence' or 'previous legal impossibility.'"  United States v. Howell, 17 F.4th 673, 687 (6th Cir. 2021) (quoting LaDeau, 734 F.3d at 566).  Without further discovery, the Court cannot move forward.

After the parties conduct discovery, "[i]t may well be that no fire will be discovered under all the smoke[.]"  Adams, 870 F.2d at 1146.  Indeed, the Government could produce evidence showing legitimate reasons for its prosecution of Abrego that are unrelated to his case in the District of Maryland.  See United States v. Adams, 1994 WL 589509, at *1–2 (6th Cir. Oct. 25, 1994) (affirming lower court's conclusion that the defendant's charging decision "was untainted by a desire for retaliation" after discovery and a hearing were conducted).  For now, the Court will grant Abrego's request for discovery and an evidentiary hearing.  The parties must meet and confer on the proper narrow scope of discovery, consistent with this Memorandum Opinion.  As the parties to work together to define the parameters of discovery, the Court believes ¶ 17 of Abrego's July 13, 2025 letter to the Government (Doc. No. 131-1 at 5–6) is a good place to start.[2]

---

[2] The Court questions the scope of Abrego's request at ¶ 17(e) for "[m]aterial concerning negotiations and the decision to return Mr. Abrego to the United States . . . including, but not limited to, communications among DOJ, DHS, the State Department, the White House, and/or the government of El Salvador[,]" and encourages the parties to narrow or eliminate that request during their discussions.  (Doc. No. 131-1 at 6).

15

An appropriate order will enter.

_____
WAVERLY D. CRENSHAW, JR.
UNITED STATES DISTRICT JUDGE