IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | NO. 3:25-cr-00115 |
| ) | |
| ) | JUDGE CRENSHAW |
| ) | |
| KILMAR ARMANDO ABREGO GARCIA ) | |

**GOVERNMENT'S RESPONSE TO THE DEFENDANT'S MOTION TO SUPPRESS**

COMES NOW the United States of America, by and through Robert E. McGuire, Acting United States Attorney, and submits the following Response to the Defendant's Motion to Suppress (DE # 151) pursuant to this Court's Order (DE # 167).

Even though the Tennessee Highway Patrol (THP) trooper stopping the Defendant's vehicle was incorrect about the posted speed limit—describing it as being 65 miles per hour instead of 70 miles per hour—the trooper was consistent and clear that he had observed the Defendant's vehicle traveling at 75 miles per hour which was still over the posted speed limit. Federal law allows the trooper to make a reasonable mistake of law without impacting his assessment that reasonable suspicion existed for a traffic stop. The trooper's observation that the defendant was speeding is corroborated by other evidence on the Body Worn Camera (BWC) that this Court has already received in evidence. The United States submit that the Defendant's Motion should be denied.

**FACTUAL BACKGROUND**

This Court has already received into evidence the BWC footage from Trooper Joshua Brawner (DE # 84, Exhibit List from July 16, 2025 hearing) taken on November 30, 2022 at mile marker 289.5 on Interstate I-40. At the very start of the recording, the footage shows Trooper

1

Brawner driving his THP patrol vehicle in the left hand (passing) lane of Interstate I-40 at (according to the time stamp on the video) 19:56:06 on November 30, 2022. At 19:56:11, Trooper Brawner's vehicle passed a red truck which was in the right-hand lane. At 19:56:24, Trooper Brawner's vehicle passed a tractor trailer which was also in the right-hand lane. Between the time Trooper Brawner passed the red truck and the time he passed the tractor trailer, no vehicle can be seen moving from the left-hand lane (where Trooper Brawner was driving) to the right-hand lane. At 19:56:31, the Defendant's vehicle passed from the left-hand lane to the right-hand lane (with its turn signal flashing). At 19:56:35, Trooper Brawner activated his blue lights and moved from the left-hand lane to the right-hand lane behind the Defendant's vehicle. The Defendant's brake light—at the top of the rear window—immediately illuminated indicating both that the Defendant applied the brake at that moment (19:56:36) and had not applied it earlier (given the brake light was previously unilluminated). The Defendant's vehicle then slowed to a stop and Trooper Brawner's vehicle slowed and stopped immediately behind it.

Additionally, at 19:56:05 (again, at the commencement of the BWC footage), the RPM meter of Trooper Brawner's vehicle can be seen in the BWC footage. The top edge of his speedometer can be seen to the right of the RPM meter and, because of the position of Trooper Brawner's body as he drove, the footage captures some footage of the speedometer. At 19:56:36, the top edge of Trooper Brawner's speedometer can be briefly seen indicating that his speedometer reads 75 miles per hour (and appears to be falling) at the same time the defendant's brake light is illuminated. This would indicate that the defendant was traveling at least at 75 miles per hour at the time that Trooper Brawner turned on his blue lights, the defendant began to brake, and both cars moved to the right-hand side of the road and out of traffic.

2

At 19:57:40, Trooper Brawner told the defendant "we was running 75 down through here" indicating that he had paced the defendant's vehicle at 75 miles per hour. The defendant responded that he believed he was doing "70". The trooper then (erroneously) told the defendant that the speed limit was 65 miles per hour. However, the trooper steadfastly and consistently described the defendant's vehicle as traveling 75 miles per hour prior to the stop. At 19:58:45, at little over two minutes from the moment that the trooper activated his blue lights to commence the traffic stop, the defendant admitted that his Maryland license was not valid. During the traffic stop, the defendant also told numerous, demonstrable, lies to the trooper, including: (1) that he was on his way back from St. Louis; (2) that he had been in St. Louis the past two weeks doing a construction job; (3) that the nine other people in the vehicle with him were fellow construction workers; (and (4) that he would be back in Nashville next week for another construction job.

## LEGAL ARGUMENT

To initiate a traffic stop on a vehicle, a law enforcement officer must have reasonable suspicion that a traffic violation has been or is being committed. Tennessee Code Annotated § 55-8-152 prohibits speeding on Tennessee roadways. An officer who observed an individual driving faster than the posted speed limit, therefore, has reasonable suspicion to conduct an investigatory traffic stop. *United States v. Taylor*, 121 F.4th 590, 594-595 (6th Cir. 2024); *United States v. Hill*, 195 F.3d 258, 265 (6th Cir. 1999).

The Government bears the burden of proving, by preponderance of evidence, the existence of reasonable suspicion to believe that there was an ongoing criminal offense. *United States v. Torres-Ramos*, 536 F.3d 542, 552 (6th Cir. 2008) (citation omitted). This justification requires "a particularized and objective basis for suspecting the particular person stopped of criminal activity." *Navarette v. California*, 572 U.S. 393, 396–97, 134 S.Ct. 1683, 188 L.Ed.2d 680 (2014) (citing

3

Case 3:25-cr-00115    Document 175    Filed 10/22/25    Page 3 of 10 PageID #: 1769

*United States v. Cortez*, 449 U.S. 411, 417–18, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981)). The traffic stop then "must be supported by specific and articulable facts that would 'warrant a man of reasonable caution in the belief that the action taken was appropriate.'" *United States v. Blair*, 524 F.3d 740, (6th Cir. 2008) *quoting Terry v. Ohio*, 392 U.S. 1, 21–22, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)). "In other words, '[t]he officer must be able to articulate more than an inchoate and unparticularized suspicion or hunch of criminal activity.' " Id. (*quoting Illinois v. Wardlow*, 528 U.S. 119, 124 (2000)) (internal quotation marks omitted). "Additionally, the stop must be justified at its inception[.]" Id. (citing Terry, 392 U.S. at 19–20, 88 S.Ct. 1868). In determining whether an officer had reasonable suspicion to justify a traffic stop, a court considers the totality of the circumstances. *Navarette*, 572 U.S. at 397, 134 S.Ct. 1683.

Importantly, Trooper Brawner immediately told the defendant that he (the trooper) had observed the defendant's vehicle driving at 75 miles per hour. Even though the trooper incorrectly stated the posted speed limit in that area as being 65 miles per hour, his assessment that the defendant was traveling at 75 miles an hour was still over the posted speed limit (of 70 miles per hour). If Trooper Brawner had told the defendant that he was traveling 70 miles an hour and incorrectly (if honestly) believed that the posted speed limit was 65 miles an hour, the defendant's current argument would have some appeal. However, even in that scenario, a reasonable mistake of law would not prevent the Government from offering the BWC at trial.

The Fourth Amendment requires government officials to act reasonably, not perfectly, and gives those officials "fair leeway for enforcing the law," *Brinegar v. United States,* 338 U.S. 160, 176, 69 S.Ct. 1302, 93 L.Ed. 1879. Searches and seizures based on mistakes of fact may be reasonable. See, *e.g., Illinois v. Rodriguez,* 497 U.S. 177, 183–186, 110 S.Ct. 2793, 111 L.Ed.2d

4

148. The limiting factor is that "the mistakes must be those of reasonable men." *Brinegar, supra,* at 176, 69 S.Ct. 1302.

In *Heien v. North Carolina*, the Supreme Court encountered a situation where a police officer stopped a vehicle which had one (of two) working brake lights because the officer erroneously believed that driving with one working brake light was a violation of North Carolina law. *Heien*, 574 U.S. 54, 58-59, 135 S.Ct. 530, 190 L.Ed.2d 475 (2014). Writing for the Court, Chief Justice Roberts noted:

> But reasonable men make mistakes of law, too, and such mistakes are no less compatible with the concept of reasonable suspicion. Reasonable suspicion arises from the combination of an officer's understanding of the facts and his understanding of the relevant law. The officer may be reasonably mistaken on either ground. Whether the facts turn out to be not what was thought, or the law turns out to be not what was thought, the result is the same: The facts are outside the scope of the law. There is no reason, under the text of the Fourth Amendment or our precedents, why this same result should be acceptable when reached by way of a reasonable mistake of fact, but not when reached by way of a similarly reasonable mistake of law.

*Id at* 61.

The defendant makes the argument that Trooper Brawner's misapprehension regarding the posted speed limit was not a 'reasonable' mistake of law because the trooper should have known the speed limit in that particular area of I-40. However, this was the same argument that Heien's counsel advanced in the Supreme Court and which the Court rejected:

> Finally, Heien and *amici* point to the well-known maxim, "Ignorance of the law is no excuse," and contend that it is fundamentally unfair to let police officers get away with mistakes of law when the citizenry is accorded no such leeway. Though this argument has a certain rhetorical appeal, it misconceives the implication of the maxim. The true symmetry is this: Just as an individual generally cannot escape criminal liability based on a mistaken understanding of the law, so too the government cannot impose criminal liability based on a mistaken understanding of the law. If the law required two working brake lights, Heien could not escape a ticket by claiming he reasonably thought he needed only one; if the law required only one, Sergeant Darisse could not issue a valid ticket by claiming he reasonably thought drivers needed two. But just because mistakes of law

5

cannot justify either the imposition or the avoidance of criminal liability, it does not follow that they cannot justify an investigatory stop.

*Id at*, 67.

As noted, and unlike the facts in *Heien*, the trooper's assessment that the defendant was driving 75 miles per hour *was* in violation of the law.[1] In this case, the trooper's misapprehension of the posted speed limit in that particular stretch of I-40 is reasonable. The speed limit on I-40 drops to 65 miles per hour at mile marker 292, approximately two miles from the location of the traffic stop. (*See Exhibit 1*.) For a vehicle traveling at 65 to 70 miles per hour this would mean that the speed limit turned to 65 miles per hour approximately two minutes' drive time from where the defendant's vehicle was stopped. Had the trooper stopped the defendant two more minutes down the road, he would have correctly described the speed limit as 65 miles per hour; that fact underscores the reasonableness of his error about the posted speed limit. Here, though, while Trooper Brawner was incorrect about the posted speed limit, the speed he assessed the defendant to be traveling was in excess of the posted speed limit.

Trooper Brawner's observation about the defendant's speed is corroborated by objective evidence visible on his BWC footage. For example, the fact that the defendant was traveling in the left-hand (passing) lane of travel on I-40 is consistent with an individual traveling in excess of the posted speed limit. The Court can confidently assess that the defendant was traveling in the left-hand lane based on the BWC footage. Specifically, Trooper Brawner can be seen traveling in the left-hand lane and is driving for multiple minutes and passing cars (none of which were the defendant's in the right hand lane). Moreover, the defendant's vehicle can be seen merging from

---

[1] Here, a truly analogous situation under *Heien* would be if the trooper paced the defendant's car as doing 70 miles per hour but believed the speed limit was 65 miles per hour and pulled him over on an erroneous suspicion of speeding when the defendant was obeying the law; this would be just like the North Carolina officer who pulled Heien over erroneously believing that Heien's single working brake light was a violation of the law. However, here, even if the officer had been exactly right about the law, he *still* would have reasonable suspicion to conduct a traffic stop of the defendant's vehicle because the defendant was speeding in any event.

6

the left-hand lane to the right hand lane in the moments immediately before Trooper Brauner activates his blue lights indicating that he had been traveling in the left hand lane and—when considered with the passage of the red truck and the tractor trailer in the right hand lane—had been traveling in that lane for at least several minutes. While this is not to say that *all* motorists traveling in the left-hand lane can be automatically assumed to be speeding, it is far more consistent that a vehicle would be speeding in the left-hand lane (the passing lane) than the right-hand lane. If the defendant had been traveling in the right-hand lane when Trooper Brawner assessed him as speeding, the United States notes that such a circumstance would augur to the defendant's benefit; but this is not the case here as the defendant was in the passing lane which is consistent with speeding.

Trooper Brawner also had to pass two other vehicles in the right-hand lane to catch up to the defendant's vehicle, a fact that can also be seen on the BWC. This fact also corroborates Trooper Brawner's observations. Passing vehicles on the interstate (as Trooper Brawner did and the defendant almost certainly did, given the circumstantial evidence of such) is consistent with traveling faster than the posted speed limit. Again, this is a circumstance that the Court can consider and, though the Government is not arguing that passing cars on the interstate is somehow dispositive of the issue (motorists can, of course, pass other vehicles while not exceeding the posted speed limit), it is a circumstance that tends to corroborate Trooper Brawner's expected testimony that the defendant was driving at 75 miles per hour and over the posted speed limit. Again, the converse can be true: a motorist who was *not* passing other vehicles on the roadway (presuming other vehicles were nearby) would be corroborative that the motorist was *not* speeding. But here, since the BWC evidence illustrates that the defendant was passing the red truck and the

7

tractor trailer on the interstate, that circumstance tends to make it more likely than not that he was driving faster than the posted speed limit.

As noted earlier, and though it is admittedly difficult to see, it appears that Trooper Brawner's speedometer is registering at 75 miles per hour when he activates his blue lights and commences the traffic stop. The defendant's brake light activates at that moment indicating that he was driving faster (or at the same speed) as the trooper at the time the blue lights came on. This too would corroborate Trooper Brawner's assessment that the defendant's vehicle was traveling higher than the posted speed limit. In short, there are multiple, independent, and incontrovertible elements of the BWC footage that corroborate the trooper's assessment that the defendant was speeding. This kind of evidence tracks the relevant case law in the Sixth Circuit for a finding that the trooper had reasonable suspicion to believe that the defendant was speeding.

The United States expects that Trooper Brawner will testify at the evidentiary hearing in this case that he paced the defendant's vehicle and did not use a radar or similar equipment to measure the defendant's speed. The United States also expects that Trooper Brawner will describe his training and experience related to judging the speed of vehicles which will support his assessment that the defendant was traveling down I-40 at 75 miles per hour. The Government expects that Trooper Brawner had never met the defendant before, had no reason or motivation to manufacture a traffic violation against him, nor any other aim then to fairly enforce the state's traffic laws while on his patrol. By contrast, defendant's protestation on the BWC that he was driving "70" rings hollow when he immediately lied to the trooper about where he had been coming from ("St. Louis, Missouri") and how long he had been there.

Finally, the Court does not consider each of these pieces of evidence in isolation. Instead, the Court applies a "totality of the circumstances" approach. *United States v. McCallister,* 39 F.4th

8

368, 375 (6th Cir. 2022). Here, the United States submits that all the available independent circumstances indicate that the defendant was speeding: his lane of travel, the passage of other vehicles on the interstate, the available BWC footage. This level of corroboration of the trooper's expected testimony, which will be offered with no discernable motive to lie about the defendant's speed that—based on his observations, training, and experience—the defendant was driving in excess of the posted speed limit are the kind of specific, articulable, and objective facts that establish reasonable suspicion by a preponderance of evidence.

The defendant denied that he was driving over 70 miles per hour but that highlights an important point about the reasonable suspicion standard. "Reasonable suspicion, remember, does not require proof that the suspect committed a crime." *United States v. McCallister,* 39 F.4th 368, 375 (6th Cir. 2022) *citing Embody v. Ward,* 695 F.3d 577, 581 (6th Cir. 2012). Indeed, the trooper could have been wrong about how fast the defendant was traveling and whether it was in excess of the posted speed limit. But the inquiry is not whether the trooper was *correct* about the defendant's speeding but whether his assessment that he was speeding was *reasonable* under all the circumstances. As the Supreme Court has noted: "[a] determination that reasonable suspicion exists, however, need not rule out the possibility of innocent conduct." *United States v. Arvizu*, 534 U.S. 266, 277, 122 S. Ct. 744, 753, 151 L. Ed. 2d 740 (2002). In short, the Government need not prove that the defendant was, in fact, speeding, but only that it was reasonable that the trooper suspected him of speeding thereby justifying the traffic stop.

This holding—found in both the Sixth Circuit and the U.S. Supreme Court—undercuts the defendant's main argument for suppression: that the trooper incorrectly believed the speed limit was lower than it was. But here, the trooper's assessment that the defendant was above the posted speed limit, at 75 miles per hour, gives credence to the idea that the trooper's determination that

the defendant was speeding was reasonable. And, as the Supreme Court noted in *Arvizu*, the trooper could be factually wrong (as he was about the posted speed limit) and the stop still be constitutional so long as his suspicion was reasonable. To perform a constitutionally valid traffic stop, the trooper need not have proof beyond all doubt that the defendant was, in fact and actuality, speeding; he needs only a reasonable suspicion that the defendant was speeding, based on the given facts. *Heien* only strengthens the Court's analysis in that the trooper's honest mistake about the posted speed limit in that particular area (as opposed to two miles up the road) is not fatal at all to an assessment of reasonable suspicion justifying a traffic stop.

## CONCLUSION

Based on the BWC footage, there are objective facts that tend to establish that the defendant was driving over the speed limit on November 30, 2022. The troopers expected testimony at the upcoming evidentiary hearing also supports that finding. Under a totality of the circumstances, and not facts standing in isolation, there is a preponderance of evidence to show that the trooper's assessment that the defendant was speeding was a reasonable one and provided reasonable suspicion to conduct a traffic stop of the defendant's vehicle. Therefore, based on the foregoing and after the evidentiary hearing, the defendant's Motion should be denied.

Respectfully Submitted,

 */s/ Robert E. McGuire*
ROBERT E. McGUIRE
Acting United States Attorney
719 Church Street, Suite 3300
Nashville, TN  37203