IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 3:25-CR-00115 |
| | ) |
| KILMAR ARMANDO ABREGO GARCIA, | ) |
| | ) |
| Defendant. | ) |

## UNITED STATES' MOTION TO QUASH SUBPOENAS AND INCORPORATED MEMORANDUM OF LAW

Comes now the Plaintiff, the United States of America, by and through Robert E. McGuire, Acting United States Attorney, et al., and makes the following Motion to Quash Subpoenas And Incorporated Memorandum of Law pursuant to Rule 17(c) of the Federal Rules of Criminal Procedure. On October 20, 2025, defense counsel provided the Government with subpoenas for, among others, Deputy Attorney General Todd Blanche, Associate Deputy Attorney General Aakash Singh, and Counselor to the Deputy Attorney General James McHenry (the "subpoenaed parties") in connection with a November 4, 2025, hearing on the defendant's Motion to Dismiss the Indictment (DE # 104, 167).[1] The United States also hereby incorporates by reference the arguments made in the Government's Response to the Defendant's Motion to Compel Discovery (DE # 178) as a part of the incorporated memorandum of law in this Motion. For the reasons stated below and in the referenced, previously filed brief, the Court should quash these subpoenas.

---

[1] The defense also provided subpoenas for Homeland Security Investigations Agents John VanWie and Rana Saoud and Acting U.S. Attorney Robert McGuire. The government intends to have each of those witnesses testify at the hearing on November 4, 2025.

1

The Court is already familiar with the factual background in this case, the defendant's Motion to Dismiss the Indictment, and the evidentiary hearing on that Motion that the Court has set for November 4-5, 2025.[2] The Supreme Court in *United States v. Nixon* set forth a three-part test that the "moving party" (i.e., the party seeking to enforce the subpoena) must meet: the information sought must be relevant, admissible, and specifically identified. 418 U.S. 683, 700 (1974). Conclusory allegations of relevance are insufficient to meet the moving party's burden, *United States v. Eden*, 659 F.2d 1376, 1381 (9th Cir. 1981), and the "specificity and relevance elements require more than the title of a document and conjecture as to its contents," *United States v. Thompson*, No. CR19-159RSL, 2022 WL 834025, at *2 (W.D. Wash. Mar. 21, 2022) (quotation marks and citation omitted). Moreover, the subpoena cannot be "intended as a general 'fishing expedition.'" *Nixon*, 418 U.S. at 699; *see also Thompson*, 2022 WL 834025, at *2 ("[A] Rule 17(c) subpoena cannot be issued upon a mere hope that the desired documents would produce favorable evidence.").

The defendant has not established, and cannot establish, the relevance of the potential testimony of the subpoenaed parties other than with speculation. The Court is already in receipt of an affidavit and a supplemental affidavit from the actual decisionmaker, the Acting U.S. Attorney, who has stated under oath that he received no direction from the Deputy Attorney General or the Office of the Deputy Attorney General (ODAG) on whether to indict the present case. (DE # 121-1, 178-1.) The Acting U.S. Attorney will testify at the evidentiary hearing on November 4, 2025,

---

[2] The Government anticipates providing evidence on the Defendant's Motion to Dismiss the Indictment (DE # 104) on November 4, 2025 and evidence on the Defendant's Motion to Suppress Evidence from the Traffic Stop (DE # 151) on November 5, 2025. The government does not expect the Motion to Suppress hearing to be lengthy, meaning that if the hearing on the defendant's Motion to Dismiss is not concluded on November 4th, it could be resumed on the morning of November 5th with the Motion to Suppress being heard the afternoon of November 5th. Should the hearing on the Motion to Dismiss conclude on November 4th, the Government would be ready to handle the Motion to Suppress on the morning of November 5th.

and say the same, on the record, under oath, and subject to cross-examination. And the Defendant has no evidence that any such directives were made. So, his subpoenas to the ODAG officials are by definition based on nothing more than speculation—indeed, they are based on the inscrutable theory that senior officials somehow induced Mr. McGuire "*unknowingly* to criminally charge" the Defendant. DE # 180 at 2 (parenthesis omitted). And as we have explained, even if other officials' motives were relevant here, there would still be no basis for further discovery (and thus for these subpoenas) because this prosecution is plainly justified by legitimate prosecutorial concerns and the Defendant has not identified similarly situated persons who were not prosecuted. DE # 178 at 18-20. At the time that the investigative and prosecutorial decisions were made here, there was a possibility and increasing likelihood that Defendant *would* return to the United States as a result of civil litigation, giving the government strong, non-vindictive reasons for investigating and prosecuting Defendant in order to ensure that he would not pose a threat to the public in the event of his return to this country.

The Defendant nevertheless seeks to compel testimony from senior DOJ leadership whose conversations about official decision-making are protected by executive privilege and therefore presumptively shielded from disclosure. Executive privilege "safeguards the public interest in candid, confidential deliberations within the Executive Branch; it is 'fundamental to the operation of Government.'" *Trump v. Mazars USA, LLP*, 591 U.S. 848, 864 (2020) (quoting *Nixon*, 418 U.S. at 708). "[H]uman experience teaches that those who expect public dissemination of their remarks may well temper candor with a concern for appearances and for their own interests to the detriment of the decision-making process." *Nixon*, 418 U.S. at 705. The lack of relevance of these privileged discussions is striking. The Acting U.S. Attorney has already stated under oath that he had no pre-indictment communication with the Deputy Attorney General, he had no pre-

3

indictment communication with the Counselor for the Deputy Attorney General, and only limited pre-indictment communication with the Associate Deputy Attorney General. Whatever communications at least two of the subpoenaed parties had with each other or others, Mr. McGuire was not a party to them. Therefore, the relevance of their testimony to the instant motion is wholly insufficient to justify the extraordinary intrusion into privileged communications and decision making.

Despite the having the Acting U.S. Attorney testifying as a witness subject to their cross-examination, the Defendant seeks to uncover "predecisional" and "deliberative" discussions revealing the decision-making process behind the decisions to investigate human smuggling activity and whether to prosecute him based on that investigation—and thus to substantiate his theory that those decisions were driven by a retaliatory motive. *U.S. Fish & Wildlife Serv. v. Sierra Club, Inc.*, 592 U.S. 261, 268 (2021) (citation omitted). Compelling senior agency leaders to testify about their thought processes is exactly the kind of risk and harm to agency decision-making that the deliberative process privilege is intended to prevent. If senior DOJ leaders are compelled to testify in high-profile criminal matters simply because a defendant makes an unsupported allegation of vindictiveness, prosecutors and other Executive Branch personnel would be chilled from having frank discussions regarding the complex and sensitive decisions that they are duty-bound to make about prosecutorial and related law-enforcement matters, to the detriment of public safety and the sound administration of justice.

The Court's order granting discovery here did not address the privilege or confidentiality concerns raised by Defendant's attempts to subpoena senior DOJ officials, and the Defendant, to date, has offered nothing to show a sufficient need to compel their testimony, especially in light of the fact that the actual decisionmaker will testify at the evidentiary hearing. To the extent the Court

4

Case 3:25-cr-00115  Document 181  Filed 10/27/25  Page 4 of 7 PageID #: 1830

addressed the extent of discovery, it described the proper scope as "narrow," which does not embrace compelling senior DOJ officials, who have manifold pressing duties far from this District, to testify about privileged matters when the Acting U.S. Attorney has described no pre-charging contact with two of the subpoenaed parties and limited communications with the other. That is particularly true where the government is already willing to take the exceptional step of submitting the Acting U.S. Attorney and two investigators to cross-examination about the inception of this prosecution, *see* n.1, *supra*. *See* DE # 178 at 12-13 (discussing trial courts' obligation to narrow discovery against the Executive Branch under *Cheney v. U.S. District Court*, 542 U.S. 367 (2004)).

The Sixth Circuit has anchored Rule 17 to a defendant's trial right and noted that the import of the rule, which can apply to pre-trial hearings, is designed to streamline the jury trial, holding:

> Rule 17(c) … implements a criminal defendant's constitutional right "to have compulsory process for obtaining witnesses in his favor" by providing a means to subpoena witnesses and documents for a trial or a hearing. U.S. Const. amend. VI; *see also* 2 Charles Alan Wright et al., Federal Practice and Procedure § 272 (4th ed.) ("Rule 17 is not limited to subpoenas for the trial" and a subpoena may be issued for a preliminary examination, a grand jury prosecu, a deposition, a determination of a factual issue raised by a pre-trial motion, or a post-trial motion). Rule 17(c)'s "chief innovation" is to "expedite the trial by providing a time and place before trial for the inspection of the subpoenaed materials." *Bowman Dairy Co. v. United States,* 341 U.S. 214, 220 (1951). … To protect a party on the receiving end of the subpoena, Rule 17(c) enables the court to "quash or modify the subpoena if compliance would be unreasonable or oppressive." *Id.* 17(c)(2).

*United States v. Llanez-Garcia*, 735 F.3d 483, 493–94 (6th Cir. 2013).

Here, in large part for the same reasons the Government has opposed the defendant's Motion to Compel (DE # 178), the Government now moves to quash the subpoenas issued to the subpoenaed parties because to allow them to stand would be "unreasonable and oppressive" under *Nixon* and implicate the privileges previously described in the Government's earlier filings.

Given the privilege arguments that the Government has already made in connection with the Response to the Motion to Compel (DE # 178), the defendant cannot establish that any of the

testimony of the subpoenaed parties will be admissible. The Government would cite, as applicable here, its previous response regarding the "five well-recognized, and sometimes overlapping, components of executive privilege: national security and foreign affairs, law enforcement, deliberative process, attorney client communications and attorney work product, and presidential communications." *Congressional Oversight of the White House*, 45 Op. O.L.C. __, at *30 (Jan. 8, 2021) (Congressional Oversight); see, e.g., *Fish & Wildlife Serv.*, 592 U.S. at 267 (deliberative process privilege "is a form of executive privilege"). *Id* at PageID # 1801-1804. Several would be embraced by the potential testimony of any of the subpoenaed parties.

Finally, what testimony the defendant hopes to present from the subpoenaed parties fails not only the specific identification requirement of *Nixon*—it is unknown altogether. The Defendant clearly hopes that one of the subpoenaed parties will have information relevant to the Court's inquiry but—particularly in light of the Acting U.S. Attorney's previous statements under oath—he has no concrete basis to believe that any of the subpoenaed parties actually will offer such testimony. These subpoenas are, part and parcel, the classic "fishing expedition" that is profoundly disfavored by federal law as a use of 17(c) subpoenas. The fact that the subpoenaed parties are a top executive department official, and his aides makes the problem even more plain, as federal courts have held that "top executive department officials should not, absent extraordinary circumstances, be called to testify regarding their reasons for taking official actions." *Time Recorder Co. v. Sec'y of Labor,* 766 F.2d 575, 586 (D.C. Cir. 1985), *see also United States v. Morgan*, 313 U.S. 409, 422 (1941); *In re United States*, 985 F.2d 510, 512-13 (11th Cir. 1993) (per curiam); *In re Department of Education*, 25 F.4th 692, 699-705 (9th Cir. 2022); *In re USA*, 624 F.3d 1368, 1372-77 (11th Cir. 2010). They should certainly not be compelled to testify in connection with a claim of vindictive prosecution that is extraordinarily weak.

## CONCLUSION

The United States has already produced significant discovery materials in this matter. Additionally, the Acting United States Attorney—the sole decision maker in bringing this prosecution—will testify at the evidentiary hearing. For all of the reasons stated above, allowing the subpoenas to the subpoenaed parties to stand would be unreasonable, oppressive, and contrary to established federal law.

Therefore, the United States respectfully submits that the Court should quash the subpoenas issued to the Deputy Attorney General, Associate Deputy Attorney General Aakash Singh, and Counselor to the Deputy Attorney General James McHenry for the November 4, 2025 evidentiary hearing.

Respectfully submitted,

*/s/ Robert E. McGuire*
Robert E. McGuire
Acting United States Attorney
719 Church Street, Suite 3300
Nashville, TN 37203

*/s/ Jacob Warren*
Jacob Warren
Co-Director, Task Force Vulcan

*/s/ Christopher Eason*
Christopher Eason
Co-Director, Task Force Vulcan

*/s/ Jeremy Franker*
Jeremy Franker
Deputy Director, Task Force Vulcan

*/s/ Jason Harley*
Jason Harley
Task Force Vulcan