UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 3:25-cr-00115 |
| | ) |
| KILMAR ARMANDO ABREGO GARCIA, | ) |
| | ) |
| Defendant. | ) |

# MEMORANDUM OPINION

After Abrego made a *prima facie* showing of vindictiveness, (Doc. No. 138), the Court ordered discovery. (Doc. No. 138 at 15) (citing United States v. Adams, 870 F.2d 1140, 1146 (6th Cir. 1989)). The Government resists discovery because: (1) discovery is not authorized by Fed. R. Crim. P. 16(a)(2); (2) only the motivations of the investigatory team and the local prosecutors are relevant to the charging decision; (3) various privileges apply that justify denying Abrego's discovery requests; and (4) to the extent the Court believes discovery is required, it should conduct an *in camera* review. (Doc. No. 178). Abrego moves to compel discovery, (Doc. No. 159); the Government has responded, (Doc. No. 178); and Abrego has replied, (Doc. No. 180). Abrego's motion will be granted to the extent that the Government will be required to produce responsive documents for *in camera* review.

## I.   Fed. R. Crim. P. 16

The Government's threshold argument is that Rule 16(a)(2) precludes the type of discovery Abrego seeks. That rule generally precludes "the discovery or inspection of reports, memoranda, or other internal government documents made by an attorney for the government or other government agent in connection with investigating or prosecuting the case." Fed. R. Civ. P. 16(a)(2). In the ordinary case, the Government would be right that its internal documents revealing

the motivations for or thinking behind a prosecution would be presumptively non-discoverable. See United States v. Sanders, 106 F.4th 455, 473 (6th Cir.), cert. denied, 145 S. Ct. 603 (2024); United States v. Davidson, 2009 WL 1874065, at *1 (E.D. Tenn. June 29, 2009), aff'd, 452 F. App'x 659 (6th Cir. 2011). This is not an ordinary case. Abrego has established a reasonable likelihood that his prosecution was motivated, at least in part, in retaliation for him exercising his constitutional rights in his Maryland immigration case. (Doc. No. 138). As Judge Paul Borman explained in United States v. Fieger, Rule 16(a)(2) does not apply to discovery on vindictiveness because that rule only "deals with trial discovery and trial preparation of a defense" to the substantive charges. 2008 WL 205244 at *12. By contrast, discovery as to vindictiveness relates to a "pretrial constitutional due process" claim. Id. Therefore, Abrego's requests for discovery relating to vindictiveness are not "cabined by Rule 16." Id.

## II. Scope of Discovery.

The Government's second argument is an attempt to relitigate the Court's decision that the motivations of other government officials above the local U.S. Attorney are relevant to the question of vindictiveness. (Doc. No. 178 at 13–14). From the Government's perspective, discovery is unnecessary because the Court simply got in wrong in its October 3, 2025 Memorandum Opinion and Order (Doc. Nos. 138 and 140). This repackaged argument—which did not come in the form of a motion for reconsideration—provides nothing new and does not constitute a basis to limit discovery. The same is true for Robert McGuire's supplemental affidavit, which does not answer the questions: how did Abrego's case arrive on his desk and why did it show up on April 27, 2025, when the case had previously been closed by DHS on April 1, 2025? (Doc. Nos. 121-1, 178-1). Cases do not magically appear on the desks of prosecutors. The motivations of the people who place the file on the prosecutor's desk are highly relevant when considering a motion to dismiss

2

Case 3:25-cr-00115    Document 185    Filed 10/27/25    Page 2 of 7 PageID #: 1850

for vindictive prosecution. See Adams, 870 F.2d at 1146 ("[I]f the EEOC was able to prevail upon the Department of Justice to institute a prosecution that would not have been undertaken but for Ms. Adams' exercise of her statutory right to sue, it does not seem to us that EEOC's motivation is irrelevant.").

The questions that provide focus to Abrego's vindictiveness motion are: (1) which individuals directed the government's change in position from "deport but not prosecute" to "prosecute and deport," and (2) what factual circumstances motivated that change in position. The Government's unwillingness to provide discovery that answers those two questions is particularly puzzling given that it now bears the burden of rebutting Abrego's *prima facie* showing of vindictiveness. See United States v. Zakhari, 85 F.4th 367, 379 (6th Cir. 2023). The Government's attempt to dismiss Abrego's *prima facie* showing of vindictiveness as "far too weak to justify the sweeping and intrusive discovery he now demands," represents a clear misreading and misunderstanding of the Court's Memorandum Opinion (Doc. No. 138). (Doc. No. 178 at 8); (see also Doc. No. 180 at 1).

Because the Court has already rejected the Government's argument that only the motives of the line prosecutors and local investigators are relevant, (Doc. No. 138 at 11–12) (quoting Adams, 870 F.2d at 1146), the Government will be required to provide discovery that is responsive to the questions outlined above, among other things.

### III. Executive Privileges

The Government's third argument—that communications and documents revealing the motivation behind the Government's about-face on prosecuting Abrego are privileged—is slightly more complicated but ultimately no more persuasive or legally sound. Privileges protect important societal interests. For example, the deliberative process privilege protects "open and frank

3

discussion among those who make [decisions] within the Government." Dep't of Interior v. Klamath Water Users Protective Ass'n, 532 U.S. 1, 9 (2001) ("The deliberative process privilege rests on the obvious realization that officials will not communicate candidly among themselves if each remark is a potential item of discovery and front-page news, and its object is to enhance "the quality of agency decisions."). Likewise, the attorney-client privilege promotes "full and frank communications between attorneys and their clients." Ross v. City of Memphis, 423 F.3d 596, 602 (6th Cir. 2005); see also In re Grand Jury Investigation, 399 F.3d 527, 534 (2d Cir. 2005). Finally, the attorney-work-product privilege protects the government's interest in allowing government attorneys to prepare their cases with an open mind, intellectual curiosity, and even doubt. See Maxwell v. Fla., 479 U.S. 972, n.2 (1986) (Marshall, J., dissenting) (discussing historic rationale for work product privilege); see also In re Grand Jury Subpoenas, 454 F.3d 511, 520 (6th Cir. 2006) ("attorneys should be free to conduct research and prepare litigation strategies without fear that these preparations will be subject to review by outside parties."); S. Env't L. Ctr. v. Tennessee Valley Auth., 2025 WL 2405611, at *11 (E.D. Tenn. Aug. 19, 2025). That privilege therefore shields from discovery "the files and the mental impressions of an attorney ... reflected, of course, in interviews, statements, memoranda, correspondence, briefs ... and countless other tangible and intangible ways." S. Env't L. Ctr., 2025 WL 2405611, at *11 (citing Rockwell Int'l Corp. v. U.S. Dep't of Just., 235 F.3d 598, 604–05 (D.C. Cir. 2001)).

However, the deliberative process, attorney-client, and attorney-work-product privileges are not absolute. See In re Grand Jury Subpoenas, 454 F.3d at 520; see also Redland Soccer Club, Inc. v. Dep't of Army of U.S., 55 F.3d 827, 854 (3d Cir. 1995); United States v. Farley, 11 F.3d 1385, 1389 (7th Cir. 1993); Fausek v. White, 965 F.2d 126, 129 (6th Cir. 1992); Jackson v. Bd. of Educ. of Memphis City Sch., 2008 WL 747288, at *2 (W.D. Tenn. Mar. 18, 2008). The

4

Government bears the initial burden of establishing the privilege applies. See Equal Emp. Opportunity Comm'n v. Tepro, Inc., 2014 WL 12562856, at *7 (E.D. Tenn. Aug. 29, 2014) (citing United States v. Dakota, 197 F.3d 821, 825 (6th Cir. 1999)). Once the government shows it is entitled to a privilege, "the district court should balance the competing interests of the parties." Redland Soccer, 55 F.3d at 854; see also In re Grand Jury Subpoenas, 454 F.3d at 520.

Once the Court determines the asserted privilege applies, the burden shifts to the party seeking discovery to show "its need for the documents outweighs the government's interest." Redland Soccer, 55 F.3d at 854 ("[T]he party seeking disclosure may overcome the claim of privilege by showing a sufficient need for the material in the context of the facts or the nature of the case…."); see also In re Grand Jury Subpoenas, 454 F.3d 511, 520 (6th Cir. 2006) ("The privilege cannot stand in the face of countervailing law or strong public policy."; Farley, 11 F.3d at 1389 ("privilege may be overcome when there is a sufficient showing of a particularized need outweighing the reasons for confidentiality."). For example, the deliberative process privilege is "routinely denied" when there "is reason to believe the documents sought may shed light on government misconduct." Fieger, 2008 WL 205244 at * 14 (quoting Hinckley v. United States, 140 F.3d 277, 285 (D.C. Cir. 1998). Where, as here, a defendant establishes a *prima facie* case for vindictive prosecution, he has already met the burden of showing that at least some discovery could shed light on government misconduct and would thus defeat any privileges. Id.

Here, Abrego argues that the asserted privileges must yield to the competing interest of determining whether the Government brought this prosecution based on an improper, retaliatory motive. (Doc. No. 151 at 6). Abrego's position aligns with Sixth Circuit authority. In Adams, for example, the Sixth Circuit allowed the criminal defendant to take discovery to "find out how [that] unusual prosecution came about." 870 F.2d at 1146. Specifically, the Sixth Circuit ordered the

5

government to produce evidence on the "narrow issue" of "whether the EEOC, acting on an improper motive, induced the Department of Justice to institute a prosecution that would not otherwise have been undertaken." Id. In ordering that discovery, the Sixth Circuit certainly knew it would include internal communications among EEOC officials, as well as communications between the EEOC and DOJ, if any, that discussed the origins of and motivations for the prosecution. Those communications, like the communications Abrego seeks, would be classic examples of documents protected by various privileges. (See Doc. Nos. 178 at 10–11, 180 at 3 Nonetheless, the Sixth Circuit ordered their disclosure, implicitly finding that the need to determine whether a prosecution was unlawful trumps the public's interest in candid discussions amongst government officials and between government officials and their lawyers. The Sixth Circuit took a similar approach in Zakhari, 85 F.4th at 381, remanding the case to the district court for an evidentiary hearing (and any related discovery) after finding there was a reasonable likelihood of vindictiveness.

It is impossible to square the Government's blanket assertions of privilege with the outcome in Adams or Zakhari or with this Court's prior order requiring discovery. Prying into the charging motivations of government officials will almost always implicate pre-charging discussions amongst government officials and discussions between those officials and their government attorneys. It would be nonsensical for courts to order discovery into government officials' potential misconduct to then allow those officials to withhold discovery based on easily foreseeable assertions of privilege.

Generally, Abrego's due process right to a non-vindictive prosecution, see Zakhari, 85 F.4th at 385 and United States v. LaDeau, 734 F.3d 561, 566 (6th Cir. 2013), displaces the blanket evidentiary privileges asserted by the Government. To be clear, this conclusion is limited to those

6

rare cases where a defendant has established a *prima facie* case of vindictiveness. Moreover, the Court's conclusion about the Government's blanket assertion of privilege may be modified after a document-by-document *in camera* review.

## IV. *In camera* review

The Government's final argument asserts that any discovery should be reviewed *in camera* and the Court can decide what, if anything, gets produced to Abrego. (Doc. No. 178 at 21-22) (citing LaDeau, 734 F.3d at 573 n.4). Although LaDeau does not compel the Government's suggested process for *in camera* review, the Court, out of an abundance of caution, will adopt the Government's suggestion, especially where Abrego does not object to *in camera* review. (Doc. No. 180) ("Those documents should at the very least be produced *in camera* so that the Court can evaluate whether they are relevant to Mr. Abrego's motion and whether any privilege applies.").

## V. Conclusion

For these reasons, the Court will require the Government to produce discovery relevant to its motivation for charging Abrego for *in camera* review. The Court will then decide what, if anything, should be disclosed to Mr. Abrego.

An appropriate order will issue.

WAVERLY D. CRENSHAW, JR.
UNITED STATES DISTRICT JUDGE