IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE

UNITED STATES OF AMERICA

v.

KILMAR ARMANDO ABREGO GARCIA,

*Defendant.*

No. 3:25-cr-115

Judge Waverly D. Crenshaw, Jr.

**REPLY MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANT KILMAR ARMANDO ABREGO GARCIA'S
MOTION TO SUPPRESS TRAFFIC STOP AND FRUITS
THEREOF**

# PRELIMINARY STATEMENT

What is most significant about the government's opposition to Mr. Abrego's motion to suppress is what it concedes. It concedes that Trooper Brawner falsely stated that the speed limit was 65 miles per hour when it was actually 70. It concedes, too, that there is no evidence of any techniques Trooper Brawner used to measure Mr. Abrego's speed—no radar, no vehicle data, no contemporaneous or subsequent report of Trooper Brawner's stop of Mr. Abrego. Instead, the government offers justifications for the stop with no basis in the case law: That it was reasonable for a Tennessee Highway Patrolman to misread (or misrepresent) a posted speed limit; that it was reasonable to misapprehend Mr. Abrego's speed when pulling him over for speeding; or that Trooper Brawner's account of the stop will be credible merely because he bears no personal animus toward Mr. Abrego. Each of these arguments should be rejected.

Putting the government's flimsy justifications aside, it proffers only two additional facts to attempt to meet its burden to prove that Mr. Abrego was speeding: First, the government contends that a split-second glimpse of Trooper Brawner's speedometer on his body camera footage just before he pulled Mr. Abrego over read 75 miles per hour. (It actually shows Trooper Brawner driving at or below 70 miles per hour—the speed limit.) Second, the government argues that because Trooper Brawner (and thus Mr. Abrego), while driving in the left lane, had passed two cars in the right lane, that meant that Mr. Abrego was speeding. Even if credited, neither assertion would suffice to meet the government's burden to prove by a preponderance of the evidence that the stop of Mr. Abrego was lawful. Mr. Abrego's motion to suppress the traffic stop, and all fruits thereof, should therefore be granted.

I. **The Government Can Muster No Objective Evidence Corroborating Trooper Brawner's Allegation of Speeding**

First, Trooper Brawner's speedometer, when seen for a split second at the 19:56:37 mark

1

of the body camera footage, does not read 75 miles per hour, as the government contends. (Dkt. 175 at 2).

Trooper Brawner's speedometer, as in many vehicles, shows numbers for speeds of every twenty miles per hour (20, 40, 60, 80) and white tick marks for speeds of every ten miles per hour in between them (10, 30, 50, 70). (*See* Ex. A, Fig. 1). The government correctly notes that, in the second after Mr. Abrego moves to the right lane and applies his brakes, the needle of Trooper Brawner's speedometer is visible in the body camera footage. (*See* Ex. A, Fig. 2.) But critically, the speedometer needle is hovering above the speedometer's 70-mile-per-hour tick mark. (*See* Dkt. 151-1 at 00:37; Ex. A, Fig. 2). If the speedometer had read 75 at that moment, as the government mistakenly contends, the white tick mark indicating 70 miles per hour would be clearly visible to the left of the speedometer needle. It is not. In other words, the body camera footage does not show that Trooper Brawner was tailing Mr. Abrego at 75 miles per hour. Instead, it shows that, at the precise second Trooper Brawner activated his lights and Mr. Abrego began to brake, Trooper Brawner was moving at or below the speed limit of 70 miles per hour.

In any case, even if *Trooper Brawner's* speed did rise above the speed limit at any point during his pursuit of Mr. Abrego, that, of course, does not mean Mr. Abrego was speeding. The government simply assumes that Trooper Brawner was pacing Mr. Abrego in the lead-up to the traffic stop, but there is no evidence in the record, from Trooper Brawner or otherwise, confirming that assumption. (*See* Dkt. 175 at 3, 8). Nowhere in the body camera footage or radio traffic does Trooper Brawner state that he had paced Mr. Abrego before stopping him. (*See* Dkts. 151-1, 151-9). This matters. Absent evidence that Trooper Brawner was properly pacing Mr. Abrego, Trooper Brawner's speed cannot be equated with Mr. Abrego's. For example, if Mr. Abrego was driving the speed limit and Trooper Brawner was attempting to catch up to Mr. Abrego's car to, say, read

and run his license plate—as the radio traffic indicates occurred (*see* Dkt. 151-9 at 00:00-00:24)—Trooper Brawner would have had to be driving faster than Mr. Abrego (and therefore above the speed limit) to do so.

Second, driving in the left lane to pass cars driving more slowly in the right lane—as the government argues that Mr. Abrego did because Trooper Brawner is seen on the body camera footage doing so—is not evidence of speeding. It has long been a recognized rule of the road that "[p]eople do have the right, within the speed limits, to pass others going in the same direction, and under such circumstances it is their duty to pass on the left." *Talley v. Dalton*, 10 Tenn. App. 597, 601 (Tenn. Ct. App. 1928). In fact, Tennessee law specifically requires drivers to move into the left lane to pass other vehicles. *See* Tenn. Code § 55-8-117(1) ("The driver of a vehicle overtaking another vehicle proceeding in the same direction shall pass to the left thereof at a safe distance and shall not again drive to the right side of the roadway until safely clear of the overtaken vehicle."). No record evidence, however, establishes the other cars' speeds. So even if Mr. Abrego was passing cars in the right lane while driving in the left, that shows only that he was driving faster than the cars in the right lane (which themselves were likely moderating their speed given Trooper Brawner's presence), not that Mr. Abrego was speeding in the left lane.

## II. Trooper Brawner's Mistake—If It Was One—Was Not Reasonable

Though conceding that Trooper Brawner falsely stated the speed limit during his stop of Mr. Abrego, the government nevertheless contends that his mistake of law—assuming it even was a mistake—was reasonable. (*See* Dkt. 175 at 5-6). The government's analogy to the facts of *Heien v. North Carolina*, 574 U.S. 54 (2014), which involved an ambiguous North Carolina brake-light law, is inapposite. (*Id.*). The government does not argue, nor could it, that the speed limit on I-40 near Cookeville was ambiguous. Indeed, nothing could have been clearer: The default speed limit on interstate highways in Tennessee is 70 miles per hour, *see* Tenn. Code § 55-8-152(c), and the

3

closest speed limit sign, at mile marker 287.6, said so. (*See* Dkt. 151-3 at 3:10-3:40). This case is far more analogous to *Akima v. Peca*—cited in Mr. Abrego's motion but tellingly ignored by the government's opposition—where the government argued that it was reasonable for an officer to misread the output of a breathalyzer. 85 F.4th 416, 428 (6th Cir. 2023). The Circuit was not persuaded, because a breathalyzer, like a speed limit sign, "yields a single, objective reading that every reasonable officer should be able to ascertain." *Id.*

Nor could Trooper Brawner have made a reasonable mistake of fact in misjudging Mr. Abrego's speed. The government protests that Trooper Brawner need not have been correct that Mr. Abrego was driving in excess of the speed limit, so long as it was reasonable for Trooper Brawner to suspect that he was. (*See* Dkt. 175 at 9). But it's not as if determining whether a vehicle is speeding on a highway "invites . . . hazy judgment calls." *Akima*, 85 F.4th at 428. Officers have multiple means of observing and confirming a vehicle's speed, such as radar technology (which the government concedes was not used during the stop of Mr. Abrego, *see* Dkt. 175 at 8). As a result, an officer has reasonable suspicion to make a stop of a driver who is speeding "if, and only if, he actually observed [him] speeding." *United States v. Ruiz*, 832 F. Supp. 2d 903, 912 n.12 (M.D. Tenn. 2011). So the question is simple: did Trooper Brawner employ the standard—accurate, testable—law enforcement tools to assess Mr. Abrego's speed? If so, the omission of that evidence from the government's brief is unusual; if not, then there was nothing "reasonable," nor lawful, about this stop.

### III. Trooper Brawner's Lack of Animus Is No Substitute for the Specific, Articulable Facts Necessary to Meet the Government's Burden

Finally, the government argues that because Trooper Brawner had no personal animus toward Mr. Abrego, he had no reason to lie about his speed to initiate the stop. (*See* Dkt. 175 at 8). That is usually true in traffic-stop cases, and it does nothing to help the government meet its

4

Case 3:25-cr-00115   Document 189   Filed 10/28/25   Page 5 of 8 PageID #: 1867

burden. In cases like this one, it is the absence of corroborating evidence, not malicious intent, that often renders an officer's account of a defendant's speed not credible. *See* Dkt. 151 at 9-11; *see also United States v. Hayes*, No. 19 Cr. 73, 2020 WL 4034309, at *12 (E.D. Tenn. Feb. 21, 2020), *report and recommendation adopted*, 458 F. Supp. 3d 857 (E.D. Tenn. 2020); *United States v. Ruiz*, 832 F. Supp. 2d 903, 913-14 (M.D. Tenn. 2011). Courts routinely recognize what the government ignores here (*see* Dkt. 175 at 8): officers have strong incentives to identify *some* basis for a (lawful) pretextual, investigative traffic stop, whether or not they have ever *met* the person they are stopping. *See, e.g.*, *United States v. Hill*, 195 F.3d 258, 267 (6th Cir. 1999) (expressing "concern" that officers can use the law on pretextual stops "as carte blanche permission to stop and search 'target' or 'profile' vehicles"); *Hayes*, 2020 WL 4034309, at *12 (suppressing evidence from a pretextual stop due to the absence of objective evidence of speeding); *Ruiz*, 832 F. Supp. 2d at 913-14 (same). The stop of Mr. Abrego, allegedly for going 75 in a 70-mile-per-hour zone, was a textbook pretextual stop—or a "good stop," as one trooper at the scene put it, even though it concluded without a citation for speeding. (*See* Dkt. 151-1 at 17:55-18:00, 1:18:30-1:19:35). Because officers' authority to conduct pretextual stops is broad, it is "the responsibility of the courts to make sure that police officers act appropriately and not abuse the power legally afforded to them by, among other things, carefully scrutinizing" the justification for the initial stop. *Hill*, 195 F.3d at 267. The government must be held to its burden of proving, by a preponderance of the evidence, that this stop was "supported by specific and articulable facts." (Dkt. 175 at 4 (quoting *United States v. Blair*, 524 F.3d 740, 750 (6th Cir. 2008))). The government offers no such facts.

## CONCLUSION

For the foregoing reasons, Mr. Abrego respectfully requests that the Court suppress the traffic stop and all evidence deriving from it.

5

Dated: October 28, 2025	Respectfully submitted,
    New York, New York

  /s/ Sean Hecker
Sean Hecker*
Jenna M. Dabbs*
David Patton*
HECKER FINK LLP
350 Fifth Avenue, 63rd Floor
New York, NY 10118
Telephone: (212) 763-0883
Fax: (212) 564-0883
shecker@heckerfink.com
jdabbs@heckerfink.com
dpatton@heckerfink.com

* admitted *pro hac vice*

Rascoe Dean (No. 034209)
SHERRARD ROE VOIGT & HARBISON PLLC
1600 West End Avenue, Suite 1750
Nashville, Tennessee 37203
Telephone: (615) 742-4200
Fax: (615) 742-4539
rdean@srvhlaw.com

*Counsel for Defendant Kilmar Armando Abrego Garcia*

6

**CERTIFICATE OF SERVICE**

I hereby certify that on October 28, 2025, I electronically filed the foregoing document with the clerk of the court by using the CM/ECF system, which will send a notice of Electronic Filing to the following: Acting United States Attorney, Robert E. McGuire, 719 Church Street, Suite 3300, Nashville, Tennessee 37203; Assistant United States Attorney, Jason Harley, 210 Park Avenue, Suite 400, Oklahoma City, Oklahoma 73102.

/s/ Sean Hecker