IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | No. 3:25-cr-115 |
| KILMAR ARMANDO ABREGO GARCIA, | Judge Waverly D. Crenshaw, Jr. |
| *Defendant.* | |

**MEMORANDUM OF LAW IN OPPOSITION TO THE
GOVERNMENT'S MOTION TO QUASH**

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................ 1

BACKGROUND ..................................................................................................................... 2

ARGUMENT .......................................................................................................................... 5

    I.    Applicable Law ..................................................................................................... 5

    II.   The Motion to Quash Should Be Denied ........................................................... 6

CONCLUSION...................................................................................................................... 12

# TABLE OF AUTHORITIES

**CASES**

*Stern v. U.S. Dist. Court*,
   214 F.3d 4 (1st Cir. 2000) ................................................................................................ 6

*Trump v. Vance*,
   591 U.S. 786 (2020) ...................................................................................................... 11

*United States v. Brebis*,
   4 F.4th 551 (7th Cir. 2021) ............................................................................................. 6

*United States v. Burrell*,
   114 F.4th 537 (6th Cir. 2024) ......................................................................................... 7

*United States v. Crousore*,
   1 F.3d 382 (6th Cir. 1993) .............................................................................................. 9

*United States v. Fromme*,
   405 F. Supp. 578 (E.D. Cal. 1975) ............................................................................... 10

*United States v. Justice*,
   14 F. App'x 426 (6th Cir. 2001) ..................................................................................... 6

*United States v. Moore*,
   917 F.2d 215 (6th Cir. 1990) .......................................................................................... 6

*United States v. Nixon*,
   418 U.S. 683 (1974) .............................................................................................. 5, 6, 11

*United States v. Pate,*
   No. 09 Cr. 106 (ER), 2024 WL 1773996 (M.D. Tenn. Apr. 24, 2024) ......................... 6

*United States v. Valenzuela-Bernal*,
   458 U.S. 858 (1982) .................................................................................................. 9, 10

**FEDERAL RULES**

Fed. R. Crim. P. 17 .................................................................................................................. 5

**OTHER AUTHORITIES**

July 1, 2025 Addendum to June 24, 2025 Protected Whistleblower Disclosure of Mr. Erez
   Reuveni Submitted Pursuant to 5 U.S.C. § 2302 and 5 U.S.C. § 1213, S. Comm. on the
   Judiciary (July 10, 2025), https://www.judiciary.senate.gov/imo/media/doc/07-01-2025_
   _reuveni_batch_1_index_and_evidence_redacted_final.pdf ...................................... 8

# **PRELIMINARY STATEMENT**

The government has moved to quash subpoenas for testimony from DOJ officials at the upcoming hearing on Kilmar Armando Abrego Garcia's motion to dismiss for vindictive and selective prosecution. (Dkt. 181). The motion does little more than relitigate arguments that the Court has twice rejected. Yet even in repeating these already-rejected arguments, the government's brief is surprising. Here is the United States Department of Justice—until recently so venerated that it was entitled to, and typically deserved, a strong presumption of regularity—arguing that down is up. The government characterizes as "irrelevant" testimony that is not just relevant but central to the issues before the Court. It labels as a "fishing expedition" a request for testimony from a person the Court has already identified as a key witness. It describes as "unsupported" and "extraordinarily weak" a rare, successful *prima facie* showing of vindictiveness. It describes this as an ordinary case, feigning blindness when it is plain to any fair observer that the government's own conduct, time and time again, has made this case extraordinary.

Surprising, too, are the government's ongoing efforts to shirk its burden and to avoid defending itself from serious accusations of wrongdoing. This Court found that the public statements of multiple senior government officials came close to showing actual vindictiveness—government misconduct—and yet none of those senior officials have the courage to come to Court to defend themselves. Not one seeks to clear his or her name. The government bears the burden of rebutting Mr. Abrego's preliminary showing of vindictiveness. But the very officials whose testimony is required to meet that burden are resolutely unwilling to show up. For anyone interested in good government, that is profoundly troubling. For purposes of this motion, though, it makes things easy. The Court should deny the motion to quash, leaving the government with the choice it has always had: either supply the evidence necessary to meet its burden or recognize that this case, brought for entirely unjust reasons, must be dismissed.

## BACKGROUND

The Court is now all too familiar with the background of this case. But the facts most relevant to the government's motion to quash are as follows.

Mr. Abrego moved to dismiss this case, or alternatively for discovery and a hearing, on the basis that this was a vindictive and selective prosecution. (Dkts. 104, 105). On October 3, 2025, the Court resolved that motion in part, issuing an opinion finding "a realistic likelihood that the prosecution against [Mr. Abrego] may be vindictive," and therefore ordering "discovery and a hearing." (Dkt. 138 at 9; *see also id.* at 1 (noting that Mr. Abrego's request to dismiss was "not ripe for decision," pending further factual development)). That finding was based on extensive public statements about Mr. Abrego and this case made by senior federal officials, including the leadership of the Departments of Justice and Homeland Security. (*See id.* at 4-6 (discussing public statements made by DHS Secretary Kristi Noem and Attorney General Pamela Bondi)).

The Court found particularly probative statements made by Deputy Attorney General Todd Blanche on June 6, 2025, the day the indictment in this case was unsealed. Those "remarkable statements," the Court reasoned, "could be direct evidence of vindictiveness," and indeed came "close to establishing actual vindictiveness." (*Id.* at 7-8). The Court declined to "resolve" the actual vindictiveness question "at this juncture, given that [Mr. Abrego's] showing of a realistic likelihood of vindictiveness entitles him to discovery and a hearing," after which the Court could "revisit this issue if necessary." (*Id.* at 8).

Having ordered discovery and a hearing, the Court directed the parties to "meet and confer on the proper narrow scope of discovery," and said that a request Mr. Abrego had already sent the government was—with the exception of one subparagraph that the Court recommended narrowing or eliminating—a "good place to start." (*Id.* at 15 & n.2). Defense counsel responded by adhering

2

to this Court's direction, narrowing its requests and meeting and conferring with counsel for the government to discuss them. The government, by contrast, responded with what can only be described as intransigence.

In a meet and confer on October 7, 2025, the government "would not commit to producing any documents whatsoever." (Dkt. 146 at 1). In an October 9, 2025 status update, the government stated that it would produce solely (1) a resignation email and letter from the former Chief of the Criminal Division of the United States Attorney's Office for the Middle District of Tennessee, Ben Schrader (which were produced nearly two weeks later, on October 22, 2025); and (2) a supplemental affidavit from Acting United States Attorney Robert McGuire. (Dkt. 147 at 3-4). The government continued to refuse to comply with the order to produce discovery at a status conference and in meet and confer discussions on October 10, 2025. (Dkt. 172 at 1-2).

So, on October 13, 2025, Mr. Abrego filed a motion to compel the government to produce discovery. (Dkt. 159). That same day, Mr. Abrego sent the government a letter identifying witnesses whom the defense anticipated would be necessary witnesses at the hearing. (Dkt. 172 at 1-2). That letter also reserved the right to modify the witness list based on the review of any forthcoming document discovery. (*Id.* at 2 n.1). On October 20, 2025, the defense sent subpoenas for six witnesses to the government: (1) Deputy Attorney General Todd Blanche; (2) Counselor to the Deputy Attorney General James McHenry; (3) Associate Deputy Attorney General Aakash Singh; (4) Supervisory Special Agent John VanWie of HSI Baltimore; (5) Special Agent in Charge Rana Saoud of HSI Nashville; and (6) Acting United States Attorney for the Middle District of Tennessee Robert McGuire.

On October 22, 2025, the government filed its brief opposing Mr. Abrego's motion to compel. (Dkt. 178). That brief sought to limit discovery to Mr. McGuire—excluding any officials

3

senior to him, and excluding any communications to which he was not a party—on the basis that discovery was not warranted, and that certain executive privileges applied (such that none of even Mr. McGuire's own communications would be disclosed to the defense). (*Id.* at 21-22).

On October 27, 2025, the government filed the instant motion to quash the subpoenas issued to Messrs. Blanche, Singh, and McHenry.[1] (Dkt. 181). The motion argues that Mr. Abrego "has not established, and cannot establish, the relevance" of those witnesses' testimony, and that the witnesses' "conversations about official decision-making are protected by executive privilege and therefore presumptively shielded from disclosure." (*Id.* at 2-3). It also reiterated the government's argument that the testimony of senior DOJ officials was unnecessary "in light of the fact that the actual decisionmaker"—*i.e.* Mr. McGuire—"will testify at the evidentiary hearing." (*Id.* at 4). And, finally, the government argued that the subpoenas to Mr. Blanche and members of his staff were "the classic 'fishing expedition' that is profoundly disfavored by federal law," particularly in the context of "a claim of vindictive prosecution that is extraordinarily weak." (*Id.* at 6).

Also on October 27, 2025, after the government filed its motion to quash, the Court issued a decision on Mr. Abrego's motion to compel the production of documents. (Dkt. 185). The Court rejected the very same arguments on which the government continues to rely, ordering the government to produce relevant documents for the Court's review *in camera*. (*Id.* at 1). The Court

---

[1] With respect to the subpoenas for Mr. McGuire and Special Agents VanWie and Saoud, the government did not move to quash, and stated that it "intends to have each of those witnesses testify at the hearing on November 4, 2025." (Dkt. 181 at 1 n.1). It appears that the government intends to call those three witnesses itself, which is the government's prerogative, especially as the party with the burden of proof. The rules of evidence are relaxed at hearings, so there may be no issue, but if after calling these witnesses the government is permitted to object to Mr. Abrego's cross-examination of any of them under Fed. R. Evid. 611(b), Mr. Abrego reserves the right to re-call the relevant witnesses pursuant to his subpoenas at the conclusion of the government's evidence.

4

rejected the government's "attempt to relitigate the Court's decision that the motivations of other government officials above the local U.S. Attorney are relevant to the question of vindictiveness." (*Id.* at 2). The Court also largely rejected the government's arguments that the requested documents are protected by executive privilege or the work product doctrine, noting that the relevant asserted privileges were not absolute, and holding that "[w]here, as here, a defendant establishes a *prima facie* case for vindictive prosecution, he has already met the burden of showing that at least some discovery could shed light on government misconduct and would thus defeat any privileges." (*Id.* at 5). But the Court did not conclusively resolve the privilege assertions, instead explaining that while it was preliminarily rejecting the government's "blanket assertion of privilege," its ruling could still be "modified after a document-by-document *in camera* review." (*Id.* at 6-7).

Finally, that same day, the Court ordered the defense to respond to the government's motion to quash within two days. (Dkt. 184).

## ARGUMENT

I. **Applicable Law**

Federal Rule of Criminal Procedure 17(a) authorizes the issuance of subpoenas "command[ing] the witness to attend and testify at the time and place the subpoena specifies." It requires the clerk of court, in every federal district, to "issue a blank subpoena—signed and sealed—to the party requesting it." Subsection (c) of the Rule ("Producing Documents and Objects") allows subpoenas to also order the production of documents—though the subpoenas at issue here do not do so—and authorizes motions to "quash or modify" a subpoena *duces tecum* "if compliance would be unreasonable or oppressive." Fed. R. Crim. P. 17(c)(2); *see also United States v. Nixon*, 418 U.S. 683, 699 (1974) ("A subpoena for documents may be quashed if their production would be 'unreasonable or oppressive,' but not otherwise."). The Supreme Court has

5

interpreted this rule to require that a document subpoena "clear three hurdles: (1) relevancy; (2) admissibility; [and] (3) specificity." *Nixon*, 418 U.S. at 700.

Although subsection (a) does not contain the same express authorization for motions to quash, courts have held that subpoenas for testimony can likewise be quashed, and that the applicable standard for such a motion is "[r]oughly the same." *Stern v. U.S. Dist. Court*, 214 F.3d 4, 17 (1st Cir. 2000); *accord, e.g.*, *United States v. Pate*, No. 09 Cr. 106 (ER), 2024 WL 1773996, at *1 (M.D. Tenn. Apr. 24, 2024) ("The standard is basically the same for subpoenas compelling the attendance of witnesses…under Rule 17(a) as it is for subpoenas duces tecum under Rule 17(c)." (internal quotation marks and citation omitted)). A testimony subpoena "survives scrutiny if the party serving it can show that the testimony sought is both relevant and material." *Stern*, 214 F.3d at 17; *see also, e.g.*, *United States v. Bebris*, 4 F.4th 551, 559 (7th Cir. 2021) (same); *United States v. Moore*, 917 F.2d 215, 230 (6th Cir. 1990) ("relevant, material and useful to an adequate defense"). The decision on a motion to quash a Rule 17 subpoena is "left to the district court's discretion." *United States v. Justice*, 14 F. App'x 426, 433 (6th Cir. 2001).

## II. The Motion to Quash Should Be Denied

The Court's reasoning in granting Mr. Abrego's motion to compel applies with equal force to the challenged subpoenas. There can be no remaining doubt that those three subpoenas seek testimony that is "both relevant and material." *Stern*, 214 F.3d at 17. That these subpoenas compel high-ranking officials to testify—because those officials participated in the decision to initiate this prosecution—does not alter the inquiry. Because the subpoenas easily satisfy the Rule 17 standard, the motion to quash should be denied.

*First*, the witnesses' testimony is relevant because it will answer questions central to the Court's determination of the vindictive prosecution motion. The Sixth Circuit, like many other courts, has often recognized that "[r]elevance is a low bar," satisfied by any testimony with "more

6

than the slightest probative worth." *United States v. Burrell*, 114 F.4th 537, 556-57 (6th Cir. 2024) (internal quotation marks and citations omitted). The testimony sought here has obvious and substantial probative value. The Court has asked: "how did Abrego's case arrive on [Mr. McGuire's] desk and why did it show up on April 27, 2025, when the case had previously been closed by DHS on April 1, 2025?" (Dkt. 185 at 2). "Cases do not magically appear on the desks of prosecutors," after all, and in answering the Court's questions, the "motivations of the people who place[d] the file on the prosecutor's desk" will be "highly relevant." (*Id.* at 2-3). Who are those people? Among others, Mr. Blanche, Mr. Singh, and Mr. McHenry.

And there can be no doubt—none—that Mr. Blanche has personal familiarity with the "motivations" behind this case. That is so because he went on television and explained those motivations, in no uncertain terms. Mr. Blanche said the government began "investigating" Mr. Abrego after "a judge in Maryland…questioned" the government's decision to deport him and "accus[ed] [the government] of doing something wrong." (Dkt. 138 at 7). He said, as this Court explained, "that the criminal case was brought to return Abrego to the United States, 'not [because of] a Judge,' but instead, because of 'an arrest warrant issued by a grand jury in the Middle District of Tennessee.'" (*Id.* (quoting video footage from Fox News)). Given that, the government's bizarre claim that it is "unknown altogether" what testimony Mr. Blanche might be asked to give (Dkt. 181 at 6) is impossible to take seriously. Mr. Blanche publicly claimed to know all about the motivations for this case. This Court has held that those motivations are a central issue at the upcoming hearing, and has already made clear that Mr. Blanche's testimony is relevant.[2]

---

[2] *See* Dkt. 138 at 7-8 ("Deputy Attorney General Blanche's remarkable statements could directly establish that the motivations for Abrego's criminal charges stem from his exercise of his constitutional and statutory rights to bring suit against the Executive Official Defendants, rather than a genuine desire to prosecute him for alleged criminal misconduct."); *id.* at 10 ("Indeed, Deputy Attorney General Blanche directly ties HSI's investigation to Abrego's Maryland suit. As discussed above, Deputy Attorney Blanche directly linked the Maryland lawsuit to the

And the Deputy Attorney General does not work alone. He has a staff. His office—"ODAG," in DOJ parlance—supervises every United States Attorney nationwide, including Mr. McGuire, as well as attorneys litigating cases at Main Justice. And it is often Mr. Blanche's staff, and not Mr. Blanche himself, interfacing with U.S. Attorney's Offices. That is true here: Mr. McGuire has averred that he did not have direct communications with Mr. Blanche (Dkt. 178-1 ¶ 2), and communicated instead with a member of the ODAG staff, Mr. Singh. (*See* Dkt. 181 at 3-4). Similarly, Mr. McHenry, another member of the ODAG staff, reportedly supervised Mr. Abrego's civil case and was apparently involved in supervising plea negotiations in this case. He was described in the whistleblower disclosure of Erez Reuveni, the former Acting Deputy Director for the Office of Immigration Litigation who represented the government in the early days of Mr. Abrego's civil lawsuit, as having "directed" Reuveni, as of April 2 and 3, "to stop asking for facts supporting any possible defense of the case, that no 'asks' of El Salvador of any sort should be made" in litigating Mr. Abrego's civil case—just two weeks before the investigation into Mr. Abrego was reopened.[3]

It is unimaginable that either Mr. McHenry or Mr. Singh was freelancing, directing actions in two of the highest-profile cases in the country without ever consulting with their boss, Mr. Blanche.[4] Nor does the government say as much, instead falling back on the argument that

---

investigation of criminal behavior by Abrego."); *id.* at 14-15 ("That the Attorney General and various DHS officials, among others, are currently defending themselves in Abrego's successful civil suit provides a plausible rationale for HSI reopening its investigation into Abrego. This must be considered with Deputy Attorney General Blanche's possible admission connecting the two.").

[3] Gov't Accountability Project, *Protected Whistleblower Disclosure of Erez Reuveni Regarding Violation of Laws, Rules & Regulations, Abuse of Authority, and Substantial and Specific Danger to Health and Safety at the Department of Justice* 23 (June 24, 2025), https://www.judiciary.senate.gov/imo/media/doc/06-24-2025_-_Protected_Whistleblower_Disclosure_of_Erez_Reuveni_Redacted.pdf.

[4] Though Mr. Abrego has ample reason to believe that both Mr. McHenry and Mr. Singh would provide relevant and material testimony, should document discovery reveal that they or any other

"[w]hatever communications at least two of the subpoenaed parties had with each other or others, Mr. McGuire was not a party to them." (*Id.* at 4). The Court has now rejected that argument and confirmed the relevance of such communications. (Dkt. 185 at 2-3).

Given this record—Mr. Blanche's public statements confirming his knowledge and involvement, coupled with Mr. McGuire's admission that he communicated with others at ODAG rather than with Mr. Blanche directly, all evaluated in the light of the Court's motion to compel ruling—the government's claim that Mr. Abrego is "fishing" suggests that the government misunderstands the metaphor. (Dkt. 181 at 6). The subject of the ODAG witnesses' testimony is the motivations behind this investigation and case. As the Court has concluded, that is unquestionably relevant.

*Second*, the testimony is clearly material. Testimony is material when it could potentially affect the outcome of a hearing or trial. *E.g. United States v. Valenzuela-Bernal*, 458 U.S. 858, 868 (1982); *cf. also, e.g.*, *United States v. Crousore*, 1 F.3d 382, 385 (6th Cir. 1993) ("Material information is information that, if believed, would tend to influence or affect the issue under determination.").

The defense cannot, of course, state with specificity what these witnesses will say on the stand. But that, of course, is not required—nor is it an uncommon situation for a criminal defendant. As the Supreme Court explained in *Valenzuela-Bernal*, where a defendant cannot interview a potential witness before seeking his testimony, "it is of course not possible to make any avowal of *how* [that] witness may testify." *Valenzuela-Bernal*, 458 U.S. at 871. Nonetheless,

---

relevant witnesses were not involved, Mr. Abrego may withdraw his corresponding subpoenas. Likewise, if the documents show that other government officials beyond those subpoenaed were involved, the defense may seek additional subpoenas, to ensure the Court hears testimony from the most relevant witnesses.

"the events to which a witness might testify, and the relevance of those events…may well demonstrate either the presence or absence of the required materiality." *Id.* Here, the relevant witnesses will testify about how and why the Abrego file landed on Mr. McGuire's desk—events in which they were evidently involved—and the Court has already recognized their motivations as "highly relevant." (Dkt. 185 at 2). On the record as it stands, the explanations of Mr. Blanche and members of his staff (along with their contemporaneous communications) about what motivated the reopening of the investigation into Mr. Abrego, and the decision to propose that Mr. McGuire charge him, would likely be outcome-determinative. Nothing more is required to show materiality.

Nor can the government dodge a materiality finding based on its assertion that the testimony of these witnesses is unnecessary because "the government is already willing to take the exceptional step of submitting the Acting U.S. Attorney…to cross-examination about the inception of this prosecution." (Dkt. 181 at 5). The government bears the burden of rebutting Mr. Abrego's preliminary showing of vindictiveness. It can call whomever it wants in an effort to make the showing required. But the government cannot satisfy that burden with the testimony of Mr. McGuire, Ms. Saoud, and Mr. VanWie alone. And whatever the government's plans, those plans cannot foreclose Mr. Abrego from obtaining the evidence necessary to confirm what is already plain from the existing factual record: that this was the exceedingly rare *actually vindictive* prosecution.

*Third*, and finally, the government's arguments that these witnesses are particularly important people, and thus should not be haled into court to testify (Dkt. 181 at 4-6), should be rejected. The government is right that high-ranking DOJ officials have "manifold pressing duties far from this District." (*Id.* at 5). But even the President of the United States may be subpoenaed under Rule 17 when he has relevant testimony to give. *See United States v. Fromme*, 405 F. Supp.

578, 581-83 (E.D. Cal. 1975) (granting motion for Rule 17 subpoena to President Ford to testify in prosecution for an assassination attempt, because "where the President himself is a percipient witness…[he] must be amenable to subpoena as any other person would be"); *see also Nixon*, 418 U.S. at 702 (affirming denial of President's motion to quash a Rule 17 subpoena). And it is no answer that "top executive department officials should not, absent extraordinary circumstances, be called to testify regarding their reasons for taking official actions." (Dkt. 181 at 6 (collecting cases)). Most of the government's support for that proposition comes from civil cases, but as the Supreme Court has repeatedly cautioned, "the common law maxim that 'the public has a right to every man's evidence'" is at its zenith "in the criminal setting, where our common commitment to justice demands that 'guilt shall not escape' nor 'innocence suffer.'" *Trump v. Vance*, 591 U.S. 786, 799 (2020) (quoting *Nixon*, 418 U.S. at 709). Here, it was numerous public statements by "top executive department officials," indicating that they caused this prosecution to move forward and did it with vindictive motivations, that supported Mr. Abrego's showing and require these witnesses' testimony. So even if "extraordinary circumstances" *were* a prerequisite, this case presents them. The Court has already agreed. (*See* Dkt. 185 at 2 ("This is not an ordinary case.")). Nor is there any basis for the government's suggestion that the need for these witnesses' testimony must somehow be balanced against the strength of Mr. Abrego's claim. (Dkt. 181 at 6). The government cites no law to support such a balancing test. But even if the law were on its side, the facts are not. The Court has already rejected the government's "weak showing" theory on the merits, as a "clear misreading and misunderstanding of the Court's Memorandum Opinion." (Dkt. 185 at 3).

11
Case 3:25-cr-00115    Document 193    Filed 10/29/25    Page 14 of 16 PageID #: 1903

Mr. Abrego has made out a *prima facie* case of government misconduct entitling him to discovery and a hearing, and has issued subpoenas for testimony that is relevant and material. The subpoenas are valid, and they must be enforced.

**CONCLUSION**

For the foregoing reasons, the Court should deny the government's motion to quash.

Dated: October 29, 2025
New York, New York

Respectfully submitted,

Sean Hecker*
Jenna M. Dabbs*
David Patton*
HECKER FINK LLP
350 Fifth Avenue, 63rd Floor
New York, NY 10118
Telephone: (212) 763-0883
Fax: (212) 564-0883
shecker@heckerfink.com
jdabbs@heckerfink.com
dpatton@heckerfink.com

* admitted *pro hac vice*

Rascoe Dean (No. 034209)
SHERRARD ROE VOIGT & HARBISON PLLC
1600 West End Avenue, Suite 1750
Nashville, Tennessee 37203
Telephone: (615) 742-4200
Fax: (615) 742-4539
rdean@srvhlaw.com

*Counsel for Defendant Kilmar Armando Abrego Garcia*

**CERTIFICATE OF SERVICE**

I hereby certify that on October 29, 2025, I electronically filed the foregoing document with the clerk of the court by using the CM/ECF system, which will send a notice of Electronic Filing to the following: Acting United States Attorney, Robert E. McGuire, 719 Church Street, Suite 3300, Nashville, Tennessee 37203; Assistant United States Attorney, Jason Harley, 210 Park Avenue, Suite 400, Oklahoma City, Oklahoma 73102.

/s/ Sean Hecker