IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE

UNITED STATES OF AMERICA

v.

KILMAR ARMANDO ABREGO GARCIA,

*Defendant.*

No. 3:25-cr-115

Judge Waverly D. Crenshaw, Jr.

**KILMAR ARMANDO ABREGO GARCIA'S NOTICE OF
SUPPLEMENTAL INFORMATION RELEVANT TO MOTION TO
DISMISS FOR VINDICTIVE AND SELECTIVE PROSECUTION**

Kilmar Armando Abrego Garcia respectfully submits this supplemental notice to provide the Court with additional facts relevant to his motion to dismiss for vindictive and selective prosecution. Recent developments in Mr. Abrego's habeas case before Judge Xinis, concerning the government's misrepresentations about whether Costa Rica would accept Mr. Abrego upon his removal, make crystal clear that the government is willing to mislead the courts and defy court orders intended to shed light on its conduct, all in service of punishing Mr. Abrego. This provides further proof—if any were needed—of the government's vindictiveness toward Mr. Abrego and underscores the need for discovery into the motivations of the high-level officials who initiated this prosecution and are ultimately responsible for the government's misrepresentations regarding Mr. Abrego's third-country removal.

The government has made no secret that it is willing to punish Mr. Abrego by any means, even when that involves falsehoods and violations of law—and it now seeks to deport him to a distant third country in Africa where he does not speak the language, has no connections, and questions remain as to whether he would live freely. The government has tried again and again: first Uganda, then Eswatini and Ghana, and now Liberia. In his immigration proceedings, Mr. Abrego has designated Costa Rica as his country of removal, as is his statutory right. *See* 8 U.S.C. § 1231(b)(2)(A)(i). That country had previously offered written assurances, as of August 21, 2025, that it would accept Mr. Abrego as a refugee, grant him legal status, and prevent his refoulement to El Salvador. (Dkt. 113-1). The government, however, has disregarded Mr. Abrego's designation in his immigration proceedings and in the habeas corpus proceedings before Judge Xinis.

On November 14, 2025, the government claimed in a sealed filing in the habeas proceeding that "Costa Rica has represented that it would not simply accept Petitioner if asked" and that "[t]he government can hardly be at fault for not removing Petitioner to a country that refuses to accept

1

him." *Abrego Garcia v. Noem*, No. 8:25-cv-2780 (D. Md. Nov. 21, 2025), Dkt. 105 at 7. In support of its position, the government also filed a declaration by Acting ICE Director of Enforcement and Removal Operations John E. Cantú, which stated in substance that it was the Department of State's position that Costa Rica would not accept Mr. Abrego without further negotiations. *Abrego Garcia*, No. 8:25-cv-2780 (D. Md. Nov. 7, 2025), Dkts. 72 at 30, 72-17, 75-6.

On November 17, 2025, Judge Xinis ordered the government to produce Mr. Cantú at an evidentiary hearing scheduled for November 20 and instructed that he be prepared to testify as to the subject matter of his declaration based on his personal knowledge or knowledge obtained from others. *Abrego Garcia*, No. 8:25-cv-2780 (D. Md. Nov. 17, 2025), Dkt. 90. In so ordering, Judge Xinis chastised the government for its "strategy…present since day one" of repeatedly bringing witnesses who were unprepared to testify about the subject matter of the testimony requested by the court "in defiance" of the court's orders. *Abrego Garcia*, No. 8:25-cv-2780 (D. Md. Nov. 19, 2025), Dkt. 92 at 6, 11-12.

But once again the government defied Judge Xinis's order. At the evidentiary hearing on Thursday in Maryland, Mr. Cantú testified, in substance, that a State Department attorney told him what to put in his declaration on a five-minute Teams call and email on November 7, and that he did not know whether the Department of State had even been in contact with Costa Rica. Judge Xinis again excoriated the government for putting on a witness who had "zero information" for the court—Mr. Cantú was "the worst" of the witnesses the government had put on the stand thus far—and he "knew nothing" and "didn't know the meaning of the words in his own affidavit." *Abrego Garcia*, No. 8:25-cv-2780 (D. Md. Nov. 21, 2025), Dkt. 107 at 50, 126-27.

On Friday night, the government's representations to Judge Xinis that "Costa Rica has represented that it would not simply accept Petitioner if asked" and that Costa Rica "refuses to

accept him" were revealed to be flatly false. *Abrego Garcia*, No. 8:25-cv-2780 (D. Md. Nov. 21, 2025), Dkt. 105 at 7. In a statement to the *Washington Post*, Costa Rican Minister of Public Security Mario Zamora Cordero reiterated that his country would receive Mr. Abrego "under humanitarian conditions that guarantee the full respect for his rights and liberties" and "[t]hat position that we have expressed in the past remains valid and unchanged to this day." (Ex. A).[1] Mr. Zamora Cordero confirmed that "Costa Rica's offer to receive Mr. Abrego Garcia for humanitarian reasons stands" and would not require additional negotiations. (*Id.*).[2]

The government's shocking (yet, sadly, now predictable) conduct is relevant to Mr. Abrego's pending motion to dismiss for vindictive and selective prosecution for three reasons. *First*, the government's misrepresentations are unmistakable proof of continued vindictiveness: the government is using the prospect of deporting Mr. Abrego to the other side of the world as a cudgel to punish him for successfully challenging his unlawful removal to El Salvador. Just as "[c]ases do not magically appear on the desks of prosecutors" (Dkt. 185 at 2), Costa Rica's offer to accept Mr. Abrego did not magically disappear either. That offer has not changed, and clearly the government's desire to punish Mr. Abrego since he first challenged his erroneous deportation has not changed either. The government seeks to remove Mr. Abrego from the United States

---

[1] Maria Sacchetti, *Costa Rica says it would accept Kilmar Abrego García, contradicting U.S.*, Wash. Post (Nov. 21, 2025), https://www.washingtonpost.com/immigration/2025/11/21/kilmar-trump-deport-costarica/.

[2] It is worth noting that the government originally filed the statement that "Costa Rica has represented that it would not simply accept Petitioner if asked" under seal. *Abrego Garcia*, No. 8:25-cv-2780 (D. Md. Nov. 19, 2025), Dkt. 98 at 7. It appears the government did so to prevent the government of Costa Rica from catching wind of its misrepresentations. Indeed, on November 20, Judge Xinis ordered the government to remove unnecessary redactions from its submission, including that portion concerning Costa Rica's representations. Only after the government filed a revised version of its submission on November 21 did the government of Costa Rica issue its statement to the *Washington Post* to correct the record.

expeditiously, Mr. Abrego is willing to facilitate that removal and self-deport to Costa Rica, and that country is willing to accept him—but the only reason the government will not send him there is because that is where Mr. Abrego is willing to go. That is plain evidence that the government wants to do nothing more than punish Mr. Abrego for exposing its unlawful conduct. And the government's willingness to mislead the courts and hide the truth is still further evidence of the deep-seated animus that has motivated this coordinated campaign against Mr. Abrego.

*Second*, the government's recent conduct emphasizes the importance of meaningful discovery and testimony on vindictive and selective prosecution that goes up to the highest levels of the Department of Justice and the Department of Homeland Security. As Mr. Abrego explained in his opposition to the government's motion to quash, the testimony of officials from the Office of the Deputy Attorney General—Deputy Attorney General Todd Blanche, Acting Principal Associate Deputy Attorney General James McHenry, and Associate Deputy Attorney General Aakash Singh—is critical to answering the Court's questions about how this case ended up on the desks of prosecutors in this District. (Dkt. 193 at 6-9). And the government's recent conduct with respect to Costa Rica confirms that retaliatory animus toward Mr. Abrego originates at levels above the individual prosecutors in this case, making discovery into the motivations of high-ranking officials who have driven this sustained campaign of retribution all the more essential.[3]

---

[3] There is a direct connection between the attorneys involved in recent efforts to mislead Judge Xinis and the Office of the Deputy Attorney General. One of the government's principal attorneys in Mr. Abrego's habeas proceedings is Drew Ensign, Deputy Assistant Attorney General for the Office of Immigration Litigation, who told Judge Xinis at the November 20 hearing that it was his understanding from Mr. Cantú's testimony that Costa Rica was "not an open door" and "would require additional negotiations" and "is not something that can simply be done." *Abrego Garcia*, No. 8:25-cv-2780 (D. Md. Nov. 21, 2025), Dkt. 107 at 123-24. Mr. Ensign has been involved in Mr. Abrego's civil case since its early days, and in April 2025, he reportedly took direction from Mr. McHenry and instructed Erez Reuveni, the former Acting Deputy Director for the Office of Immigration Litigation, "to stop asking for facts supporting any possible defense of the case" and "that no 'asks' of El Salvador of any sort should be made" in litigating Mr. Abrego's civil case. *See* Gov't Accountability Project, Protected Whistleblower Disclosure of Erez Reuveni

Indeed, undersigned counsel understands that neither the Department of Justice nor the Department of Homeland Security ever bothered to inform Acting U.S. Attorney McGuire that Costa Rica offered to accept Mr. Abrego regardless of whether he entered a guilty plea, and that Costa Rica's offer remained open after Mr. Abrego rejected the government's plea offer. The upshot of this striking reality is clear: again, it is high-ranking officials in Washington, including Mr. Blanche, Mr. McHenry, and Mr. Singh, who bear primary responsibility for the government's reprehensible (and illegal) conduct here.

*Finally*, given the Department of Justice's brazen attempts to mislead the courts and defy court orders, documentation of how the Department of Justice has collected, reviewed, and produced discovery material in response to this Court's orders is necessary to ensure that the government has made "a good faith effort to comply" with the Court's discovery order. (*See* Dkt. 228; Dkt. 206 at 20).

When the Court first addressed Mr. Abrego's motion to dismiss for vindictive and selective prosecution, it decided that it "need not resolve Abrego's arguments on actual vindictiveness at

---

23 (June 24, 2025), https://www.judiciary.senate.gov/imo/media/doc/06-24-2025__Protected_Whistleblower_Disclosure_of_Erez_Reuveni_Redacted.pdf. Mr. Ensign's warning to Mr. Reuveni occurred just two weeks before the HSI investigation into Mr. Abrego was reopened, which ultimately led to his charges in this District.

Indeed, at the November 20 hearing, Mr. Ensign told the Court that "nothing would stop Mr. Abrego Garcia from, once being removed to Liberia, to apply to Costa Rica to take him." When Judge Xinis pressed him on why the government was "standing in the way" of Mr. Abrego's removal to Costa Rica and "taking the position he should go to Africa first," Mr. Ensign had no substantive response other than to assert conclusorily that "the [S]ecretary has determined that it would be prejudicial to the interests of the United States to do so," which, in the government's view, is not a reviewable decision. *Abrego Garcia*, No. 8:25-cv-2780 (D. Md. Nov. 21, 2025), Dkt. 107 at 125-26. It is difficult to fathom how sending one individual who is willing to go, to a country willing to receive him, which generally and historically has had a positive and cooperative relationship with the United States, could possibly be "prejudicial" to the interests of this country.

5

this juncture, given that his showing of a realistic likelihood of vindictiveness entitles him to discovery and a hearing." (Dkt. 138 at 8). But the government's brazen and misleading conduct regarding Costa Rica further proves the government's actual vindictiveness, allowing the Court to resolve that question now. This conduct also makes it impossible for the government to rebut the realistic likelihood of vindictiveness that Mr. Abrego has established—a realistic likelihood that the government's recent conduct has only made more concrete and more evident.

Mr. Abrego appreciates the Court's attention to his pending motion to dismiss and review of discovery produced by the government.

Dated: November 23, 2025
      New York, New York

Respectfully submitted,

/s/ Sean Hecker
Sean Hecker*
Jenna M. Dabbs*
David Patton*
HECKER FINK LLP
350 Fifth Avenue, 63rd Floor
New York, NY 10118
Telephone: (212) 763-0883
Fax: (212) 564-0883
shecker@heckerfink.com
jdabbs@heckerfink.com
dpatton@heckerfink.com

* admitted *pro hac vice*

Rascoe Dean (No. 034209)
SHERRARD ROE VOIGT & HARBISON PLLC
1600 West End Avenue, Suite 1750
Nashville, Tennessee 37203
Telephone: (615) 742-4200
Fax: (615) 742-4539
rdean@srvhlaw.com

*Counsel for Defendant Kilmar Armando Abrego Garcia*

## CERTIFICATE OF SERVICE

I hereby certify that on November 23, 2025, I electronically filed the foregoing document with the clerk of the court by using the CM/ECF system, which will send a notice of Electronic Filing to the following: Acting United States Attorney, Robert E. McGuire, 719 Church Street, Suite 3300, Nashville, Tennessee 37203; Assistant United States Attorney, Jason Harley, 210 Park Avenue, Suite 400, Oklahoma City, Oklahoma 73102.

/s/ Sean Hecker