**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF TENNESSEE**

UNITED STATES OF AMERICA

v.

KILMAR ARMANDO ABREGO GARCIA,

*Defendant.*

No. 3:25-cr-115

Judge Waverly D. Crenshaw, Jr.

**MOTION AND MEMORANDUM OF LAW IN SUPPORT OF**
**DEFENDANT KILMAR ARMANDO ABREGO GARCIA'S**
**MOTION IN LIMINE TO EXCLUDE EVIDENCE OF ALLEGED**
**MS-13 MEMBERSHIP AND GANG-RELATED EVIDENCE**

# TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................................ ii

TABLE OF AUTHORITIES ....................................................................................... iii

PRELIMINARY STATEMENT ................................................................................... 1

BACKGROUND ........................................................................................................... 2

ARGUMENT ................................................................................................................. 7

    I.    Applicable Law ...................................................................................... 7

    II.   Evidence Regarding Mr. Abrego's Purported Membership in MS-13 Should Be Excluded ................................................................................ 8

    III.  CC-5's Testimony Regarding the Uncharged Murder Should Be Excluded for Additional Reasons ........................................................ 13

    IV.  Evidence of Mr. Abrego's 2019 Arrest and Contemporaneous Allegations of Gang Membership Is Inadmissible for Additional Reasons ................................................................................................ 14

    V.   Evidence of Unrelated Criminal Activities of MS-13 Should Be Excluded ............. 15

CONCLUSION ............................................................................................................ 16

# TABLE OF AUTHORITIES

**CASES**

*Abrego Garcia v. Noem*,
    777 F. Supp. 3d 501 (D. Md. 2025) ................................................................. 1, 6

*Abrego Garcia v. Noem*,
    No. 25-1345, 2025 WL 1021113 (4th Cir. Apr. 7, 2025) ................................. 1, 7

*Brady v. Maryland*
    373 U.S. 83 (1963) ............................................................................................. 3

*United States v. Anderson*,
    333 F. App'x 17 (6th Cir. 2009) ........................................................................ 8

*United States v. Aranda-Diaz*,
    31 F. Supp. 3d 1285 (D.N.M. 2014) ................................................................ 12

*United States v. Bonds*,
    12 F.3d 540 (6th Cir. 1993) ............................................................................... 7

*United States v. Brown*,
    888 F.3d 829 (6th Cir. 2018) ........................................................................... 10

*United States v. Ford*,
    761 F.3d 641 (6th Cir. 2014) ............................................................................. 9

*United States v. Gibbs*,
    182 F.3d 408 (6th Cir. 1999) ....................................................................... 9, 15

*United States v. Gonzalez*,
    501 F.3d 630 (6th Cir. 2007) ..................................................................... 13, 14

*United States v. Hazelwood*,
    979 F.3d 398 (6th Cir. 2020) ............................................................................. 7

*United States v. Irvin*,
    87 F.3d 860 (7th Cir. 1996) ............................................................................. 12

*United States v. Jernigan*,
    341 F.3d 1273 (11th Cir. 2003) ....................................................................... 12

*United States v. Jobson*,
    102 F.3d 214 (6th Cir. 1996) ............................................................................. 8

*United States v. Johnson*,
No. 3:15-cr-88, 2017 WL 2472223 (M.D. Tenn. 2017) ................................... 13

*United States v. Johnson*,
256 F. Supp. 3d 755 (M.D. Tenn. 2017) ........................................ 13, 14

*United States v. Knox*,
17 F. App'x 353 (6th Cir. 2001) ........................................ 14

*United States v. Myers*,
No. 4:08-cr-170, 2009 WL 10679641 (N.D. Tex. Apr. 8, 2009) ........................ 11

*United States v. Newsom*,
452 F.3d 593 (6th Cir. 2006) ........................................ 7, 11

*United States v. Peete*,
781 F. App'x 427 (6th Cir. 2019) ........................................ 10

*United States v. Rios*,
830 F.3d 403 (6th Cir. 2016) ........................................ 12

*United States v. Roark*,
924 F.2d 1426 (8th Cir. 1991) ........................................ 15

*United States v. Serrano-Ramirez*,
811 F. App'x 327 (6th Cir. 2020) ........................................ 10

*United States v. Sherrill*,
972 F.3d 752 (6th Cir. 2020) ........................................ 8

*United States v. Shields*,
850 F. App'x 406 (6th Cir. 2021) ........................................ 10

*United States v. Smith*,
70 F.4th 348 (6th Cir. 2023) ........................................ 8

*United States v. Tolbert*,
8 F. App'x 372 (6th Cir. 2001) ........................................ 8

*United States v. Wheeler*,
67 F. App'x 296 (6th Cir. 2003) ........................................ 8, 12

**STATUTES**

8 U.S.C. § 1324 ........................................ 2

18 U.S.C. § 922(g)(1) ................................................................................................ 13

## FEDERAL RULES

Fed. R. Evid. 401 ................................................................................................ 7, 15

Fed. R. Evid. 402 ................................................................................................... 7

Fed. R. Evid. 403 ............................................................................................ *passim*

Fed. R. Evid. 404(b)......................................................................................... 13, 14

## OTHER AUTHORITIES

Attorney General Pamela Bondi (@AGPamBondi), X (Apr. 16, 2025, 9:42 p.m.),
    https://x.com/AGPamBondi/status/1912682960156795369 ................................. 2

*Designating Cartels And Other Organizations As Foreign Terrorist Organizations And
    Specially Designated Global Terrorists*, White House (Jan. 20, 2025),
    https://www.whitehouse.gov/presidential-actions/2025/01/designating-cartels-and-other-
    organizations-as-foreign-terrorist-organizations-and-specially-designated-global-
    terrorists/ ..................................................................................................... 12

Gov't Accountability Project, Addendum Protected Whistleblower Disclosure of Mr. Erez
    Reuveni. (June 24, 2025), https://www.judiciary.senate.gov/imo/media/doc/06-24-
    2025__Protected_Whistleblower_Disclosure_of_Erez_Reuveni_Redacted.pdf.................. 2

*Grand Jury Indicts Suspended Officer*, Prince George's County Police Department News
    (June 30, 2020), https://pgpolice.blogspot.com/2020/06/grand-jury-indicts-suspended-
    officer.html..................................................................................................... 6

Greg Sargent, *Trump's Case Against Man Deported in "Error" Just Took Another Big Hit*,
    New Republic (Apr. 15, 2025), https://newrepublic.com/article/194010/kilmar-abrego-
    garcia-case-trump-deported-error-another-hit ...................................................... 6

Homeland Security (@DHSgov), X (Aug. 25, 2025, 4:19 p.m.),
    https://x.com/DHSgov/status/1960074630317666363 ....................................... 12

JD Vance (@JDVance), X (Apr. 1, 2025, 12:58 a.m.),
    https://x.com/JDVance/status/1906934067607556440 ........................................ 2

Press Release, Hyattsville Police Department, Statement on the 2019 City of Hyattsville
    Police Department Stop of Kilmar Armando Abrego Garcia (Apr. 21, 2025),
    https://hyattsville.org/DocumentCenter/View/8873/HPD_Reports_42125-
    FINAL?bidId= ................................................................................................. 5

Secretary Kristi Noem (@Sec_Noem), X (Aug. 25, 2025, 9:48 p.m.),
https://x.com/Sec_Noem/status/1960157409940295786....................................................... 2

Secretary Kristi Noem (@Sec_Noem), X (Sep. 19, 2025, 3:32 p.m.),
https://x.com/Sec_Noem/status/1969122466795593789....................................................... 2

## PRELIMINARY STATEMENT

Since the government unlawfully deported Defendant Kilmar Armando Abrego Garcia to El Salvador on March 15, 2025, it has sought to portray him as a violent MS-13 gang member to justify its egregious mistake. The government has done so not only in the court of public opinion— where Mr. Abrego has been disparaged as a member of MS-13 in no fewer than five dozen public statements from officials across the Executive Branch—but also in this Court. The government has indicated that it intends to introduce evidence of Mr. Abrego's purported membership in MS-13 as "background evidence" of the charged alien smuggling conspiracy. And such evidence will not be limited to the testimony of Mr. Abrego's purported co-conspirators, which this Court has stated "border[s] on fanciful" (Dkt. 95 at 32); it will also include an unrelated arrest in 2019 and allegations of Mr. Abrego's MS-13 affiliation from that time—which three federal judges have already deemed are "unsupported." *Abrego Garcia v. Noem*, No. 25-1345, 2025 WL 1021113, at *5 (4th Cir. Apr. 7, 2025) (Thacker, J., with King, J., concurring); *see Abrego Garcia v. Noem*, 777 F. Supp. 3d 501, 507 n.2, 508 n. 5 (D. Md. 2025) (Xinis, J.).

Mr. Abrego has not been charged with a racketeering conspiracy or some other gang-related enterprise, but with transporting undocumented aliens and conspiracy to do the same. The charged alien smuggling conspiracy is not an alleged conspiracy involving MS-13 members, nor are any of the purported co-conspirators alleged to be members of MS-13 (or any gang for that matter) or alleged to have participated in any MS-13-related activity. Because any evidence of Mr. Abrego's purported MS-13 affiliation has practically no probative value for the charged offenses, and any probative value it arguably has would be substantially outweighed by the resulting unfair prejudice to Mr. Abrego, the Court should exclude gang-related evidence under Federal Rule of Evidence 403.

## BACKGROUND

Mr. Abrego is charged in a two-count Indictment with conspiring to transport aliens in violation of 8 U.S.C. § 1324(a)(1)(A)(v)(I) and unlawfully transporting aliens in violation of 8 U.S.C. § 1324(a)(1)(A)(ii). (Dkt. 3). The government, however, intends to sensationalize an unlawful-transportation trial by introducing minimally probative (and weak) but highly prejudicial evidence of Mr. Abrego's alleged membership in MS-13 to serve its public-relations aims. That much has been plain since April 16, 2025, when Attorney General Pamela Bondi—resisting the Supreme Court's order to facilitate Mr. Abrego's return to the United States and seeking to justify his unlawful removal—said on national television that Mr. Abrego was "one of the top MS-13 members, who was illegally in our country, and a terrorist."[1] Weeks before that, Vice President JD Vance levied the blatant falsehood that Mr. Abrego is a "convicted MS-13 gang member."[2] Since then, the government has issued dozens of inflammatory statements labeling Mr. Abrego an "MS-13 gangbanger"[3] and a "violent MS-13 gang member."[4]

---

[1] Attorney General Pamela Bondi (@AGPamBondi), X (Apr. 16, 2025, 9:42 p.m.), https://x.com/AGPamBondi/status/1912682960156795369. There is no evidence that Mr. Abrego was a "top" member of MS-13 (or even a member of MS-13). Emails disclosed by Erez Reuveni, the former Acting Deputy Director for the Office of Immigration Litigation, show the lengths to which the government went to try to find evidence that Mr. Abrego was a "leader" of MS-13 to justify his mistaken removal. *See* Gov't Accountability Project, Addendum to Protected Whistleblower Disclosure of Mr. Erez Reuveni 34 (July 1, 2025), https://www.judiciary.senate.gov/imo/media/doc/07-01-2025_-_reuveni_batch_1_index_and_evidence_redacted_final.pdf. (Email from ICE lawyer: "So far I have found 'verified member'….I have not found anything indicating 'leader,' but I'll keep looking.")

[2] JD Vance (@JDVance), X (Apr. 1, 2025, 12:58 a.m.), https://x.com/JDVance/status/1906934067607556440.

[3] Secretary Kristi Noem (@Sec_Noem), X (Aug. 25, 2025, 9:48 p.m.), https://x.com/Sec_Noem/status/1960157409940295786.

[4] Secretary Kristi Noem (@Sec_Noem), X (Sep. 19, 2025, 3:32 p.m.), https://x.com/Sec_Noem/status/1969122466795593789.

Despite its best efforts, the government has apparently failed to muster any reliable evidence substantiating its allegations. The government has indicated that it plans to introduce evidence of Mr. Abrego's purported membership in MS-13 through the testimony of co-conspirators, specifically CC-1 and CC-2. (*See* Dkt. 177 at 7-8; Dkt. 223 at 2-3). But their statements about Mr. Abrego's alleged gang affiliation have been inconsistent at best.

In several early interviews with investigators, both CC-1 and CC-2 made no mention of Mr. Abrego's purported gang affiliation. On April 29, 2025, when CC-1 was asked about Mr. Abrego's possible gang involvement, CC-1 told investigators that he did not know if Mr. Abrego was a gang member and had not observed anything that would suggest Mr. Abrego was part of a gang. (P000418). On May 7, 2025—at his fourth interview, no less—CC-1 again told investigators that he did not know if Mr. Abrego was a member of MS-13, and he stated that he had not observed any signs or markings indicating Mr. Abrego's potential membership in MS-13. (P000348). On May 5, 2025, CC-1's family member, CC-2, was interviewed by the government for the first time and did not mention Mr. Abrego's purported affiliation with gangs, let alone MS-13. (P000342-P000344).

It was only on May 15, 2025—when CC-1 and CC-2 were both interviewed at the same United States Attorney's Office—that they changed their tune and made the exact same claim of Mr. Abrego's purported gang affiliation.[5] CC-1 told investigators that he could identify gang

---

[5] At CC-1's second interview on April 24, 2025, he confirmed that he "reached out to family and prison staff requesting to speak to HSI" while he was incarcerated, and he "spontaneously" told investigators that "he wanted protection for him and his family" and was specifically "worried about…CC-2," whom CC-1 had "in hiding because he was worried [CC-2] would be arrested and deported." (P000411 to P000415). A week-and-a-half later, CC-2 was arrested by Immigration and Customs Enforcement and promptly began cooperating against Mr. Abrego. (P000342).

The government, however, has prevented the defense from understanding the extent of any coordination between CC-1 and CC-2. To date, the government has not produced to the defense any recorded jail calls between CC-1 and CC-2, even though the disclosure of such material is

members by their clothes, tattoos, and behaviors, and that gang members and Mr. Abrego "greeted each other in [a] familial manner," which was very different than CC-1's interactions with gang members. (P000352). Just like CC-1, CC-2 told investigators that Mr. Abrego's mannerisms resembled that of a gang member and that gang members and Mr. Abrego "greeted each other in a familial manner," which was very different from CC-2's interactions with gang members. (P000358). Strikingly, however, neither CC-1 nor CC-2 claimed that Mr. Abrego was himself a member of MS-13 in any of their proffers, even while both claimed that MS-13 members were among the passengers transported in their alien smuggling business. The Court has already observed that to find that Mr. Abrego is a member of or affiliated with MS-13, "it would have to make so many inferences from the Government's proffered evidence in its favor that such conclusion would border on fanciful." (Dkt. 95 at 32).

Based on the discovery disclosed to date, the only other co-conspirator who could potentially testify to Mr. Abrego's gang membership is CC-5, one of CC-1's former romantic partners. At an interview on May 22, 2025 (one week after CC-1 and CC-2 began calling Mr. Abrego a gang member), CC-5 told investigators that she grew up in 18th Street Gang territory in El Salvador and lived in Langley Park, Maryland, which was a known "MS-13[] area," and that Mr. Abrego also lived in Langley Park. (P000705). CC-5 alleged that Mr. Abrego once told her that he was in MS-13 and that he and another aspiring MS-13 member had killed the mother of an 18th Street leader in order to join MS-13. (P000706). CC-5 also told investigators that Mr. Abrego

---

required under *Brady v. Maryland*, 373 U.S. 83 (1963), and its progeny. To the contrary, at a meet-and-confer conference on October 3, 2025, the government represented, in sum and substance, that it had not collected any such jail calls and did not intend to do so. On October 13, 2025, the defense sent a letter to the government again requesting that it collect and produce the recorded jail calls and reminding the government of its preservation obligations. The government has not responded to this letter.

bragged about the killing while "talking in street talk with a gang attitude," "displayed MS-13 gang signs with his hands," and once "spoke with gang slang." (*Id.*). There is no further evidence to support CC-5's outlandish homicide claim.[6] Other co-conspirators, including CC-3, have stated that they don't know Mr. Abrego to be a member of any gang. (P000032).

Perhaps recognizing the flimsiness of the co-conspirators' allegations, the government recently informed the defense that, to corroborate the co-conspirators' anticipated testimony, the government may well seek to introduce Mr. Abrego's arrest in 2019 and evidence of his alleged gang affiliation from that time. That purported "evidence" fares no better.

On March 28, 2019, Mr. Abrego and three other men were arrested and detained by Prince George's County Police Department ("PGPD") officers while they were looking for work outside a Home Depot.[7] At the police station, officers questioned Mr. Abrego about his gang membership, which he denied. PGPD officers identified two of the men whom Mr. Abrego was with as purported members of MS-13. And they identified Mr. Abrego as a gang member because he was allegedly wearing "a Chicago Bulls hat and a hoodie with rolls of money covering the eyes, ears, and mouth of the presidents on the separate denominations," which officers believed was "indicative of Hispanic gang culture." (P000398). Wearing a Chicago Bulls hat, the officers

---

[6] In fact, at the July 16, 2025 revocation hearing, an HSI agent testified that CC-1 was likely present when Mr. Abrego allegedly told CC-5 about the murder of a rival gang member's mother. (Dkt. 99 at 39-40). But CC-1 was asked repeatedly about Mr. Abrego's gang membership and affiliation with MS-13 and never once mentioned this murder, which casts further doubt on CC-5's credibility.

[7] A detective with the Hyattsville Police Department ("HPD") first approached the four men outside the Home Depot and called PGPD. HPD never identified Mr. Abrego as a gang member. *See* Press Release, Hyattsville Police Department, Statement on the 2019 City of Hyattsville Police Department Stop of Kilmar Armando Abrego Garcia (Apr. 21, 2025), https://hyattsville.org/DocumentCenter/View/8873/HPD_Reports_42125-FINAL?bidId= ("At no time did any member of the HPD identify or file any reports classifying Abrego Garcia as a member of any gang.").

asserted, was evidence of being a "member in good standing with the MS-13." (*Id.*) The officers further reported that an unnamed source of information had informed them that Mr. Abrego was an "active member of MS-13 with the Westerns clique," with the "rank of 'Chequeo' with the moniker of 'Chele.'" (*Id.*) These findings were recorded in a "Gang Field Interview Sheet" prepared by PGPD Officer Ivan Mendez, which he then uploaded to GangNet, a nationwide law enforcement database. (*Id.*). But Mr. Abrego was never charged with any crime; he was instead transferred to the custody of United States Immigration and Customs Enforcement ("ICE") for removal proceedings.

Although an immigration judge relied on Officer Mendez's Gang Field Interview Sheet to deny bond over Mr. Abrego's hearsay objection in April 2019 (P000407), Mr. Abrego was ultimately granted withholding of removal, and the evidentiary value of the Gang Field Interview Sheet has since been squarely discredited. Days after filing the Gang Field Interview Sheet, Officer Mendez was suspended for providing information about an ongoing investigation to a commercial sex worker whom he was paying for sexual acts; he subsequently pled guilty to misconduct in office.[8] And, this year, when the government attempted to argue that it had a lawful basis to deport Mr. Abrego to El Salvador in violation of his withholding of removal order because he was a member of MS-13, three federal judges rejected the Gang Field Interview Sheet's allegations of gang membership as "unsubstantiated." *Abrego Garcia*, 777 F. Supp. 3d at 508 & n.5 (Xinis, J.) ("The 'evidence' against Abrego Garcia consisted of nothing more than his Chicago Bulls hat and hoodie, and a vague, uncorroborated allegation from a confidential informant claiming he

---

[8] *See Grand Jury Indicts Suspended Officer*, Prince George's County Police Department News (June 30, 2020), https://pgpolice.blogspot.com/2020/06/grand-jury-indicts-suspended-officer.html; Greg Sargent, *Trump's Case Against Man Deported in "Error" Just Took Another Big Hit*, New Republic (Apr. 15, 2025), https://newrepublic.com/article/194010/kilmar-abrego-garcia-case-trump-deported-error-another-hit.

belonged to MS-13's 'Western' clique in New York—a place he has never lived."); *see also Abrego Garcia*, 2025 WL 1021113, at *5 & n.8 (Thacker, J., with King, J., concurring) (stating government's evidence of Mr. Abrego's connection to MS-13 from 2019 immigration proceedings was "thin, to say the least," and the "unsupported—and then abandoned—assertion that Abrego Garcia was a member of a gang" did not justify his removal in violation of the withholding order).

On October 29, 2025, the Court declined to strike allegations regarding Mr. Abrego's purported MS-13 membership from the Indictment. But the Court made clear that this was not the end of the matter. The Court emphasized that the government "still has the burden to prove the Indictment's allegations at trial based on *admissible* evidence," noting that if the government "fails to connect those allegations [regarding Mr. Abrego's purported MS-13 membership] to the charges in the Indictment, then the Court can also revisit this issue." (Dkt. 192 at 6).

## ARGUMENT

### I. Applicable Law

Because only relevant evidence is admissible, *see* Fed. R. Evid. 402, a Court must first determine if evidence is relevant with reference to Rule 401: "Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401. "In a criminal case, a fact is 'of consequence' if it makes it more or less likely that the defendant committed the charged conduct." *United States v. Hazelwood*, 979 F.3d 398, 409 (6th Cir. 2020). But even where a fact is relevant, it may not be admissible. Federal Rule of Evidence 403 permits a court to "exclude relevant evidence if its probative value is substantially outweighed by a danger of…unfair prejudice." Unfair prejudice "refers to evidence which tends to suggest [a] decision on an improper basis." *United States v. Newsom*, 452 F.3d 593, 603 (6th Cir. 2006) (quoting *United States v. Bonds*, 12 F.3d 540, 567 (6th Cir. 1993)). This may occur when the evidence is particularly

shocking or inflammatory, or when it otherwise may arouse the jury's hostility or sympathy without regard to the probative value of the evidence. *United States v. Smith*, 70 F.4th 348, 353 (6th Cir. 2023).

The Sixth Circuit instructs trial courts to "be particularly careful in admitting evidence of gang affiliation, 'since most jurors are likely to look unfavorably upon a defendant's membership in a…gang.'" *United States v. Sherrill*, 972 F.3d 752, 765 (6th Cir. 2020) (quoting *United States v. Tolbert*, 8 F. App'x 372, 378 (6th Cir. 2001)). Although evidence of gang affiliation is admissible for limited purposes, such as to show "the defendant's opportunity to commit a crime" or "where the interrelationship between people is a central issue in the case," it is "inadmissible if there is no connection between the gang evidence and the charged offense." *United States v. Anderson*, 333 F. App'x 17, 24 (6th Cir. 2009). Even where there is a proper basis to admit gang evidence, a court must "balance the probative value of the gang evidence…against its potential for substantial prejudice." *United States v. Jobson*, 102 F.3d 214, 221 (6th Cir. 1996). Where evidence of gang affiliation has "no probative value as to the charge of conspiracy" but merely "create[s] the inference of [the defendant's] involvement in a…conspiracy from his association with a notorious gang," exclusion under Rule 403 is warranted. *United States v. Wheeler*, 67 F. App'x 296, 300 (6th Cir. 2003) (holding that court erred in admitting evidence of gang involvement in drug conspiracy case).

## II. Evidence Regarding Mr. Abrego's Purported Membership in MS-13 Should Be Excluded

The Court should exclude evidence of Mr. Abrego's purported membership in MS-13, because even under the government's proffered theory of relevance, the probative value of such evidence to the alien smuggling charges in this case is extraordinarily low, and such evidence would be wildly prejudicial to Mr. Abrego.

The government has indicated that it intends to introduce evidence of Mr. Abrego's alleged membership in MS-13 to provide "needed context and understanding about the scope of the conspiracy and the relationship between co-conspirators." (Dkt. 223 at 2). The government asserts that Mr. Abrego's alleged membership in MS-13 would essentially serve two purposes. First, Mr. Abrego's purported membership in MS-13 made him "the appropriate choice" to transport passengers whom the co-conspirators believed to be gang members, because Mr. Abrego allegedly had the ability to collect payments from "recalcitrant" gang-member passengers. (*Id.*). Second, Mr. Abrego's alleged association with MS-13 "impacted the destination and travel route" of alien smuggling trips to Maryland. (Dkt. 177 at 8).

Under the government's theory, then, Mr. Abrego's purported membership in MS-13 plays only a tangential role in the charged conspiracy, laying bare its low probative value in this case. The government does not allege that the charged alien smuggling conspiracy is part of MS-13's criminal enterprise. None of the co-conspirators are alleged to be members of MS-13. Nor are any of the co-conspirators alleged to be connected to one another by virtue of their shared involvement in the criminal activities of MS-13. Nor are there any allegations that unidentified participants in the conspiracy to transport undocumented aliens were MS-13 members.

As such, the admission of evidence about Mr. Abrego's purported membership in MS-13 in this case would be far afield from those cases in which the Sixth Circuit has held evidence of gang membership admissible to prove the existence of the charged conspiracy and the defendant's participation therein, on the theory that participants in the conspiracy were themselves gang members. *See United States v. Gibbs*, 182 F.3d 408, 430 (6th Cir. 1999) (evidence of gang affiliation was relevant where government's theory was that drug dealers who were members of the gang were also part of the charged drug trafficking conspiracy); *United States v. Ford*, 761

F.3d 641, 650 (6th Cir. 2014) (evidence of gang affiliation was relevant because it "furthered the Government's theory that the co-conspirators were a distinct subset of the many people involved in the Fallen Angels record label and that the bond between the subset was their involvement in the Vice Lords"); *United States v. Shields*, 850 F. App'x 406, 410-11 (6th Cir. 2021) (gang-related evidence was probative of defendant's participation in the drug distribution conspiracy because "[t]he gang relationship was 'the glue that connect[ed] these parties' and showed 'how they kn[e]w one another and worked together'"). Nor is there any suggestion that Mr. Abrego's motive for participating in the charged alien smuggling conspiracy was somehow connected to his purported membership in MS-13, which further distinguishes this case from those where gang-affiliation evidence was held admissible. *See, e.g.*, *United States v. Serrano-Ramirez*, 811 F. App'x 327, 342 (6th Cir. 2020) (gang affiliation was probative of defendant's motive for assaulting witness because defendant assaulted witness to prevent him from informing on defendant's MS-13 racketeering activity); *United States v. Peete*, 781 F. App'x 427, 438-39 (6th Cir. 2019) (gang affiliation was probative of defendant's possession of firearm and was the "catalyst for all of the events underlying the charged crime").

 The government contends that Mr. Abrego's purported membership in MS-13 "is important to the jurors['] understanding of the context of the conspiracy" (Dkt. 177 at 7), but the government cannot gesture at *res gestae* to bring any and all gang-related evidence into this case and thereby "allow[] the jury to hear all of the evidence and not a sanitized version of it" (Dkt. 223 at 3). Indeed, the Sixth Circuit has warned that *res gestae* can "easily be abused" and "cannot be broadly applied to completing a story"; rather, the doctrine "imposes severe limitations in terms of the temporal proximity, causal relationship, or special connections that must exist between the other acts and the charged offense." *United States v. Brown*, 888 F.3d 829, 838 (6th Cir. 2018)

(quotations omitted). It is the government's burden here to demonstrate the relevance of Mr. Abrego's membership in MS-13. And the government's proffered theory of relevance fails to establish any probative value.

For starters, as discussed above, CC-1, CC-2, and CC-5's testimony as to Mr. Abrego's membership in a gang has been inconsistent. CC-1 and CC-2—who the government claims would testify that Mr. Abrego's gang membership enabled him to collect payments from recalcitrant MS-13 members and affected travel routes—have not even identified Mr. Abrego as a member of MS-13 in particular. Such inconsistent testimony from co-conspirators is, at best, minimally probative of Mr. Abrego's alleged membership in MS-13. Moreover, even if Mr. Abrego's alleged membership in MS-13 affected travel routes and gave him the ability to collect payments from purported gang-affiliated passengers, that has marginal probative value for the issues in this case: whether Mr. Abrego himself knowingly and intentionally agreed with one or more of the co-conspirators to transport undocumented aliens. *See United States v. Myers*, No. 4:08-cr-170, 2009 WL 10679641, at *2 (N.D. Tex. Apr. 8, 2009) ("The government has not argued that [defendant's] association with the 'AB boys' [Aryan Brotherhood] is necessary to proving his involvement in the drug conspiracy. It would, therefore, appear that any association by [defendant] with the 'AB boys' is of minimal probative value."); *Newsom*, 452 F.3d at 603 (holding that district court abused its discretion in admitting evidence of gang tattoos in felon-in-possession of a firearm case where the fact that defendant had such tattoos "did not make it any more likely that he possessed the particular gun charged in the indictment on the day in question").

To the contrary, evidence of Mr. Abrego's purported membership in MS-13 would almost certainly "create the inference of [his] involvement in a[n] [alien smuggling] conspiracy from his association with a notorious gang"—which is both impermissible propensity reasoning and

extraordinarily prejudicial. *Wheeler*, 67 F. App'x at 300 (holding that district court abused its discretion in admitting evidence of defendant's gang involvement, which had "no probative value as to the charge of conspiracy to distribute marijuana"). The "substantial risk of unfair prejudice" posed by evidence of gang affiliation cannot be understated, because "[g]angs generally arouse negative connotations and often invoke images of criminal activity and deviant behavior." *United States v. Rios*, 830 F.3d 403, 421 (6th Cir. 2016) (quoting *United States v. Irvin*, 87 F.3d 860, 864 (7th Cir. 1996)); *see United States v. Jernigan*, 341 F.3d 1273, 1284-85 (11th Cir. 2003) ("[M]odern American street gangs are popularly associated with a wealth of criminal behavior and social ills, and an individual's membership in such an organization is likely to provoke strong antipathy in a jury."). Evidence of gang membership, therefore, "has the potential to elicit an unfavorable reaction from the jury and cause the jury to condemn [a defendant] for his gang membership, rather than decide the case on the evidence that the United States presents against him at trial." *United States v. Aranda-Diaz*, 31 F. Supp. 3d 1285, 1298 (D.N.M. 2014) (excluding evidence of defendant's gang membership because "danger of unfair prejudice…substantially outweighs [the evidence's] minimal probative value of any contested issues in the case"). That is particularly true in the case of MS-13, a violent, criminal organization with transnational notoriety, which the government has designated a foreign terrorist organization.[9] Indeed, the Court need look no further than the government's own statements about Mr. Abrego to comprehend the prejudicial and inflammatory effect of painting him as an MS-13 member.[10]

---

[9] *See Designating Cartels And Other Organizations As Foreign Terrorist Organizations And Specially Designated Global Terrorists*, White House (Jan. 20, 2025), https://www.whitehouse.gov/presidential-actions/2025/01/designating-cartels-and-other-organizations-as-foreign-terrorist-organizations-and-specially-designated-global-terrorists.

[10] *See, e.g.*, Homeland Security (@DHSgov), X (Aug. 25, 2025, 4:19 p.m.), https://x.com/DHSgov/status/1960074630317666363 ("Kilmar Abrego Garcia is not and will never be a Maryland Man—he is a criminal illegal alien from El Salvador and public safety threat.

Accordingly, this Court should exclude any evidence related to Mr. Abrego's purported membership in MS-13.

### III. CC-5's Testimony Regarding the Uncharged Murder Should Be Excluded for Additional Reasons

All evidence of Mr. Abrego's purported membership in MS-13 should be excluded under Rule 403. CC-5's anticipated testimony that Mr. Abrego was allegedly involved in the murder of the mother of an 18th Street leader as he aspired to join MS-13 should be barred for two additional reasons.

First, evidence of Mr. Abrego's alleged involvement in an unrelated prior homicide is clearly 404(b) evidence that the government should have noticed if it sought to admit it—and its failure to do so renders it inadmissible. *United States v. Gonzalez*, 501 F.3d 630, 638 (6th Cir. 2007) ("[T]he remedy for an unexcused violation of Rule 404(b)'s notice requirement is exclusion of the evidence.").

Second, evidence of an uncharged murder of a rival gang member's mother that is unrelated to the conspiracy would no doubt be highly prejudicial. This Court's decision in *United States v. Johnson*, 256 F. Supp. 3d 755 (M.D. Tenn. 2017), is instructive. There, the government sought to introduce evidence of an uncharged murder in a case charging unlawful possession of a firearm under 18 U.S.C. § 922(g)(1) to show that the defendant unlawfully possessed the firearm, and the Court concluded that "[t]hrowing an uncharged murder into the mix…adds a whole new level of prejudice, which can only serve to inflame the passions and/or prejudices of the jury." *Id.* at 761-62; *see United States v. Johnson*, No. 3:15-cr-88, 2017 WL 2472223, at *1 (M.D. Tenn. June

It is insane that sanctuary politicians chose to glorify and stand with an MS-13 gang member over the safety of American citizens. @POTUS Trump and @Sec_Noem are not going to allow this illegal alien—who is an MS-13 gang member, human trafficker, serial domestic abuser, and child predator—to terrorize American citizens any longer.").

7, 2017) (excluding such evidence from trial). Whereas the uncharged murder in *Johnson* at least involved the firearm that the government charged the defendant with unlawfully possessing, the alleged killing of a rival gang member's mother in this case would have even less probative value for the charged alien smuggling conspiracy, which is not even alleged to be part of MS-13's criminal enterprise and, by the government's own telling, involves no other MS-13 members. The Court should, therefore, preclude CC-5 from testifying about Mr. Abrego's alleged involvement in the uncharged killing of a rival gang member's mother.

## IV. Evidence of Mr. Abrego's 2019 Arrest and Contemporaneous Allegations of Gang Membership Is Inadmissible for Additional Reasons

To the extent the government seeks to introduce evidence of Mr. Abrego's arrest in 2019 and PGPD's allegations of his membership in MS-13 from that time in order to prove his purported gang membership, such evidence should be excluded under Rule 403 for the reasons stated above. But this evidence is inadmissible for additional reasons.

First, because the government has not included evidence of Mr. Abrego's arrest in 2019 in its 404(b) notice (*see* Dkt. 223), it is prohibited from using such evidence at trial. *See Gonzalez*, 501 F.3d at 638. Mr. Abrego's arrest in 2019 and the resulting Gang Field Interview Sheet are other acts evidence subject to 404(b). *See United States v. Knox*, 17 F. App'x 353, 357 (6th Cir. 2001). The government's failure to provide the required 404(b) notice precludes it from now seeking to use any such evidence at trial.

Second, the government cannot introduce the Gang Field Interview Sheet as evidence of Mr. Abrego's purported membership in MS-13 (setting aside its utter lack of reliability) because it contains inadmissible hearsay. Even if the government were to call disgraced PGPD Officer Mendez to testify about the contents of the Gang Field Interview Sheet, there would still be a remaining layer of hearsay in the form of the unnamed source's statement that Mr. Abrego was an

14

"active member of MS-13 with the Westerns clique." (P000398). To date, the government has still not disclosed the identity of that source to the defense.

## V.    Evidence of Unrelated Criminal Activities of MS-13 Should Be Excluded

The Court should exclude any reference to other criminal activities of MS-13 that do not involve the charged alien smuggling conspiracy under Federal Rules of Evidence 401 and 403. The Indictment alleges that "MS-13 was a criminal enterprise engaged in, among other activities, acts and threats involving murder, extortion, narcotics trafficking, firearms trafficking…and money laundering." (Dkt. 3 ¶ 6). The Indictment charges none of these crimes, nor the involvement of any other MS-13 members in those crimes. And none of these crimes are relevant at all to the existence of the charged alien smuggling conspiracy, Mr. Abrego's alleged participation in that conspiracy, or his alleged transportation of aliens. The risk of prejudice from the jury hearing about the uncharged criminal activities of a gang would no doubt be extraordinary, not least because of the risk that the jury could attribute these violent crimes to Mr. Abrego or infer Mr. Abrego's guilt by association with such crimes. *See United States v. Roark*, 924 F.2d 1426, 1430, 1432, 1434 (8th Cir. 1991) (permitting the government to introduce substantial uncharged misconduct of the Hells Angels, including its "general reputation for drug-related activities," which amounted to a "relentless attempt to convict [defendant] through his association with the motorcycle club," constituted reversible error); *United States v. Gibbs*, 182 F.3d at 430 (holding that district court erred in admitting references to violent acts of gang, such as "cop killer" and "slob killer," where there was no connection between those references and any of the defendants or the charged drug distribution conspiracy).

## CONCLUSION

For the foregoing reasons, Mr. Abrego respectfully requests that the Court preclude the government from introducing evidence relating to his purported membership in MS-13 and other gang-related evidence.

Dated: November 24, 2025               Respectfully submitted,
      New York, New York

/s/ Sean Hecker
Sean Hecker*
Jenna M. Dabbs*
David Patton*
HECKER FINK LLP
350 Fifth Avenue, 63rd Floor
New York, NY 10118
Telephone: (212) 763-0883
Fax: (212) 564-0883
shecker@heckerfink.com
jdabbs@heckerfink.com
dpatton@heckerfink.com

* admitted *pro hac vice*

Rascoe Dean (No. 034209)
SHERRARD ROE VOIGT & HARBISON PLLC
1600 West End Avenue, Suite 1750
Nashville, Tennessee 37203
Telephone: (615) 742-4200
Fax: (615) 742-4539
rdean@srvhlaw.com

*Counsel for Defendant Kilmar Armando Abrego Garcia*

16

## CERTIFICATE OF SERVICE

I hereby certify that on November 24, 2025, I electronically filed the foregoing document with the clerk of the court by using the CM/ECF system, which will send a notice of Electronic Filing to the following: Acting United States Attorney, Robert E. McGuire, 719 Church Street, Suite 3300, Nashville, Tennessee 37203; Assistant United States Attorney, Jason Harley, 210 Park Avenue, Suite 400, Oklahoma City, Oklahoma 73102.

/s/ Sean Hecker