IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>KILMAR ARMANDO ABREGO GARCIA,<br><br>*Defendant.* | No. 3:25-cr-115<br><br>Judge Waverly D. Crenshaw, Jr. |

**MOTION AND MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANT KILMAR ARMANDO ABREGO GARCIA'S
MOTION IN LIMINE TO EXCLUDE EVIDENCE OF UNLAWFUL
ENTRY AND UNLAWFUL PRESENCE**

**PRELIMINARY STATEMENT**

Defendant Kilmar Armando Abrego Garcia moves to exclude evidence of his illegal entry into or unlawful presence in the United States, to the extent that evidence is offered in the government's case-in-chief to show his knowledge or intent to commit the charged offenses. Over a decade ago, when he was a teenager, Mr. Abrego fled El Salvador and entered the United States in or around 2012. He lived in the United States without status until 2019, when an Immigration Judge found that he had been persecuted in El Salvador and granted him withholding of removal pursuant to 8 U.S.C. § 1231(b)(3). Since then, Mr. Abrego has lived and worked lawfully in the United States. *See Abrego Garcia v. Noem*, No. 8:25 Civ. 951, 2025 WL 2062203, at *3 (D. Md. July 23, 2025). Neither Mr. Abrego's unlawful entry into the United States as a teenager, nor his unlawful presence in the United States until 2019 is relevant to the charges in this case, and both are highly prejudicial and inflammatory if offered by the government to show his knowledge or intent to commit the charged offenses. Evidence of Mr. Abrego's unlawful entry and unlawful presence should therefore be excluded under Federal Rules of Evidence 404(b) and 403.

**ARGUMENT**

**I.    Applicable Law**

Evidence of other wrongs or acts, such as illegal entry or unlawful presence, are "not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with [that] character." Fed. R. Evid. 404(b)(1). Such evidence may be admissible only "for another purpose, such as" to prove "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." *Id.* 404(b)(2). "Even when evidence is properly admitted under Rule 404(b)," evidence of prior bad acts "may still be excluded under Rule 403 if its prejudicial effect substantially outweighs its probative value." *United States*

1

*v. Mubarak*, No. 24-3274, 2025 WL 2965694, at *2 (6th Cir. Oct. 21, 2025); *see also United States v. Hardy*, 643 F.3d 143, 150 (6th Cir. 2011).

To determine whether evidence is admissible under Rules 404(b) and 403, district courts follow a three-step process:

> *First,* the district court must decide whether there is sufficient evidence that the other act in question actually occurred. *Second,* if so, the district court must decide whether the evidence of the other act is probative of a material issue other than character. *Third,* if the evidence is probative of a material issue other than character, the district court must decide whether the probative value of the evidence is substantially outweighed by its potential prejudicial effect.

*United States v. Adams*, 722 F.3d 788, 810 (6th Cir. 2013) (quoting *United States v. Jenkins*, 345 F.3d 928, 937 (6th Cir. 2003)). Evidence is "probative of a material issue other than character" if (1) it is "offered for an admissible purpose," (2) that purpose "is material or 'in issue,'" and (3) "the evidence is probative with regard to the purpose for which it is offered." *Id.* The party seeking to admit other bad acts evidence bears the burden of showing that it is admissible under Rule 404(b). *See United States v. Hardy*, 228 F.3d 745, 750 (6th Cir. 2000).

## II. Evidence of Mr. Abrego's Illegal Entry and Unlawful Presence Is Subject to Rule 404(b)(3)'s Notice Requirements

As a preliminary matter, because the government has not included evidence of Mr. Abrego's unlawful entry into the United States and unlawful presence in its 404(b) notice, *see* Dkt. 223, it cannot now seek to use any such evidence at trial. "If the prosecution intends to introduce past-acts evidence for a permissible purpose, it must give reasonable notice to the defendant." *United States v. Prather*, 138 F.4th 963, 972 (6th Cir. 2025) (citing Fed. R. Evid. 404(b)(3)). Where a party fails to provide notice of 404(b) evidence, that evidence should be excluded. *United States v. Gonzalez*, 501 F.3d 630, 638 (6th Cir. 2007) ("[T]he remedy for an unexcused violation of Rule 404(b)'s notice requirement is exclusion of the evidence."). Here, the Court ordered the government to provide Mr. Abrego with notice of its intent to offer Rule 404(b) evidence by

2

November 13, 2025. (Dkt. 211). The government's notice, however, does not indicate its intent to use evidence that Mr. Abrego entered the United States unlawfully or was present unlawfully at any time. (Dkt. 223). Accordingly, the government is prohibited from doing so under Rule 404(b)(3).

### III. Evidence of Mr. Abrego's Illegal Entry or Unlawful Presence Is Inadmissible Under Rule 404(b)

The government cannot show that Mr. Abrego's unlawful entry or presence is relevant to whether he possessed the requisite knowledge or intent with respect to the charged alien smuggling offenses. To prove that Mr. Abrego transported aliens under 8 U.S.C. § 1324(a)(1)(A)(iii), the government must show that Mr. Abrego transported those passengers "knowing or in reckless disregard of the fact" that they were undocumented and with "the specific intent…to deliberately assist an alien in maintaining [their] illegal presence in this country." *United States v. Stonefish*, 402 F.3d 691, 695 (6th Cir. 2005) (cleaned up). To prove that Mr. Abrego conspired with others to transport aliens in violation of 8 U.S.C. § 1324(a)(1)(A)(v), "the government must establish: (1) the existence of an agreement to violate the law; (2) knowledge and intent to join the conspiracy; and (3) an overt act constituting actual participation in the conspiracy." *United States v. Hughes*, 505 F.3d 578, 593 (6th Cir. 2007).

A defendant's unlawful entry is not, in itself, probative of that defendant's knowledge of the immigration status of others. *United States v. Lagunes*, No. 3:12-CR-067 JD, 2013 WL 140391, at *2 (N.D. Ind. Jan. 11, 2013). *Lagunes* is instructive. There, the government sought to introduce evidence of a defendant's unlawful entry to the United States "through the use of a smuggler" to show that the defendant—who was charged with conspiracy to commit multiple offenses under 8 U.S.C. § 1324(a)(1)(A)—knew that his customers were undocumented. *Id.* at *1. The court excluded the defendant's illegal entry under Rule 404(b) because there was nothing to "suggest

3

that [the defendant's] illegal entry experience was somehow similar or related to or bore any relationship to his customers' illegal entry experiences, such that [he] would have personal knowledge of the customers' immigration status." *Id.* at *2. Here, there is no similarity or connection between Mr. Abrego's immigration history and the alleged transportation of undocumented individuals more than a decade later. Mr. Abrego's unlawful entry or unlawful presence would not provide him with any knowledge as to the immigration status of any purported passengers. Simply having entered the United States unlawfully at one point in time does not endow an individual with the ability to know whether another person is or is not undocumented.

Nor is Mr. Abrego's unlawful entry and presence probative of any intent to further the unlawful presence of others. "To determine if evidence of other acts is probative of intent," the Sixth Circuit "look[s] to whether the evidence relates to conduct that is substantially similar and reasonably near in time to the specific intent offense at issue." *United States v. Bell*, 516 F.3d 432, 443 (6th Cir. 2008) (cleaned up). Acts are substantially similar only if they are of the same order. *See Jenkins*, 345 F.3d at 937-38 (6th Cir. 2003). The Sixth Circuit has therefore held that "prior acts of *personal drug use*" are not "probative of intent to possess and distribute." *Bell*, 516 F.3d at 443; *see also Jenkins*, 345 F.3d at 937-38; *United States v. Haywood*, 280 F.3d 715, 721 (6th Cir. 2002). Like personal drug use and drug distribution, whether or not a defendant personally entered the United States unlawfully and remained here is "of a wholly different order" from transporting aliens with intent to further their unlawful presence. *Jenkins*, 345 F.3d at 938 (quoting *Haywood*, 280 F.3d at 721).

Mr. Abrego's illegal entry is also not "reasonably near in time" to the charged conduct. *Bell*, 516 F.3d at 443. "There is no absolute maximum number of years that may separate a prior act and the offense charged," and where the prior conduct is connected to an ongoing pattern or

4

plan, the relevant time period lengthens. *United States v. Ismail*, 756 F.2d 1253, 1260 (6th Cir. 1985). But where, as here, the government seeks to admit evidence that is disconnected from the charged conduct, courts have held that even a period of five months may be too distant. *See Haywood*, 280 F.3d at 721. The Indictment alleges conduct beginning in 2016, approximately four years after Mr. Abrego entered the United States in 2012. (Dkt 3 at 1). Mr. Abrego's unlawful entry—as a teenager, no less—is neither substantially similar nor reasonably near in time to his alleged participation in the charged smuggling conspiracy. Such evidence is, therefore, inadmissible under Rule 404(b) and must be excluded.

### IV. Evidence of Mr. Abrego's Illegal Entry or Unlawful Presence Is Inadmissible Under Rule 403

Evidence that Mr. Abrego illegally entered or was present in the United States without lawful status until 2019 must be excluded under Rule 403 because its probative value is substantially outweighed by the danger of unfair prejudice. As explained, *supra*, evidence that Mr. Abrego entered the United States unlawfully or was without lawful status until 2019 has little, if any, probative value. "[T]he potential prejudice" of illegal entry and lack of lawful status, however, "is significant, because such evidence might invite jurors to decide that [a defendant] is guilty on the improper basis of his alienage or national origin." *United States v. Limon-Urenda*, No. CR 13-4067-2-MWB, 2014 WL 11322259, at *2 (N.D. Iowa Feb. 13, 2014); *see also Sanchez v. Davis*, 888 F.3d 746, 751 (5th Cir. 2018) ("[A] defendant's illegal status is considered so inflammatory that it is often the subject of motions in limine."); *Villegas v. Metro. Gov't of Davidson Cnty./Nashville-Davidson Cnty. Sheriff's Off.*, No. 3:09-0219, 2012 WL 4329235, at *16 (M.D. Tenn. Sept. 20, 2012) (recognizing "the prejudicial effect of evidence of immigration status in litigation"). Courts therefore routinely exclude evidence of unlawful immigration status as prejudicial and inflammatory. *E.g.*, *United States v. Brown*, No. 2:17-CR-00047(A)-CAS, 2018

WL 739268, at *9 (C.D. Cal. Feb. 5, 2018); *Limon-Urenda*, 2014 WL 11322259, at *2. Evidence that Mr. Abrego had entered the United States without authorization over a decade ago and lacked lawful status until 2019 is "the type of evidence that might create the risk that the jurors will act on the basis of emotion or induce the jury to decide the case on an improper basis." *Lagunes*, 2013 WL 140391, at *3.

Research substantiates the highly prejudicial nature of evidence about unlawful status. A University of Chicago study showed that "engrained biases" associated undocumented status with "crimes like rape or murder" and low levels of education.[1] The federal government's own statements regarding Mr. Abrego reflect the inflammatory nature of accusations of unlawful presence.[2] A post on the Department of Homeland Security's website states: "The mainstream media has peddled a sob story about Kilmar Abrego Garcia. *The facts are he is an illegal alien from El Salvador*, a MS-13 gang member, and has a history of violence."[3] Department of Homeland Security Secretary Kristi Noem has also said, for example, that "criminal illegals have

---

[1] *Cultural Stereotypes Drive Negative Perceptions of Undocumented Immigrants*, UChicago News (Oct. 13, 2018), https://news.uchicago.edu/story/cultural-stereotypes-drive-negative-perceptions-undocumented-immigrants.

[2] Evidence of unlawful entry and unlawful presence is prejudicial and inflammatory in an ordinary case. It is even more prejudicial and inflammatory here given just how much the government has focused on illegal immigration in the public discourse, and as a way to disparage Mr. Abrego specifically. Recently, for example, the White House created a webpage that appears to be a mock Myspace page for Minority Leader Hakeem Jeffries. *Mysafespace: A Place for Dems*, The White House, https://www.whitehouse.gov/mysafespace/ (last visited Nov. 24, 2025). Under "Hakeem's Blurbs," the page reads: "Heroes:…Transnational gangs, illegal immigrants," and "Who I'd like to meet: Honestly, we couldn't meet enough members of Antifa or illegal immigrants." *Id.* Under "Hakeem's Interests," the page reads: "General: ANTIFA, acting tough, drug dealers and illegal criminal aliens." *Id.* The page also includes a picture of Mr. Abrego Garcia with the clearly-insincere caption "Maryland Dad." *Id.*

[3] THE REAL STORY: Kilmar Abrego Garcia is an MS-13 Gang Member With a History of Violence, Dep't of Homeland Sec. (Apr. 16, 2025), https://www.dhs.gov/news/2025/04/16/kilmar-abrego-garcia-ms-13-gang-member-history-violence.

no place in our homeland,"[4] and has told the public that the departure of "1.6 MILLION illegal immigrants…means safer streets, taxpayer savings, pressure off of schools and hospital services and better job opportunities for Americans."[5]

Evidence of Mr. Abrego's illegal entry and unlawful presence before 2019 is highly inflammatory and has no probative value in this case. It should therefore be excluded under Rule 403.

## CONCLUSION

Mr. Abrego respectfully requests that the Court preclude the government from introducing evidence of his illegal entry or unlawful status before 2019 to show Mr. Abrego's knowledge or intent to commit the charged offenses.

Dated: November 24, 2025  
      New York, New York

Respectfully submitted,

/s/ Sean Hecker  
Sean Hecker*  
Jenna M. Dabbs*  
David Patton*  
HECKER FINK LLP  
350 Fifth Avenue, 63rd Floor  
New York, NY 10118  
Telephone: (212) 763-0883  
Fax: (212) 564-0883  
shecker@heckerfink.com  
jdabbs@heckerfink.com  
dpatton@heckerfink.com  

* admitted *pro hac vice*

Rascoe Dean (No. 034209)  
SHERRARD ROE VOIGT & HARBISON PLLC

---

[4] *100 Days of Making America Safe Again*, Dep't of Homeland Sec. (Apr. 29, 2025), https://www.dhs.gov/news/2025/04/29/100-days-making-america-safe-again.  
[5] *Secretary Noem Announces 1.6 Million Illegal Aliens Have Left the U.S.*, Dep't of Homeland Sec. (Aug. 14, 2025), https://www.dhs.gov/news/2025/08/14/secretary-noem-announces-16-million-illegal-aliens-have-left-us.

1600 West End Avenue, Suite 1750
Nashville, Tennessee 37203
Telephone: (615) 742-4200
Fax: (615) 742-4539
rdean@srvhlaw.com

*Counsel for Defendant Kilmar Armando Abrego Garcia*

## CERTIFICATE OF SERVICE

I hereby certify that on November 24, 2025, I electronically filed the foregoing document with the clerk of the court by using the CM/ECF system, which will send a notice of Electronic Filing to the following: Acting United States Attorney, Robert E. McGuire, 719 Church Street, Suite 3300, Nashville, Tennessee 37203; Assistant United States Attorney, Jason Harley, 210 Park Avenue, Suite 400, Oklahoma City, Oklahoma 73102.

/s/ Sean Hecker