IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>KILMAR ARMANDO ABREGO GARCIA,<br><br>*Defendant.* | No. 3:25-cr-115<br><br>Judge Waverly D. Crenshaw, Jr. |

**MOTION AND MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANT KILMAR ARMANDO ABREGO GARCIA'S
MOTION IN LIMINE TO EXCLUDE AUDIO OF
TRAFFIC STOP VIDEO**

## PRELIMINARY STATEMENT

Defendant Kilmar Armando Abrego Garcia moves *in limine* to exclude audio from the body-worn camera video recording of the November 30, 2022 traffic stop. Specifically, because any recorded statements made by law enforcement or other witnesses that are played to the jury would be either inadmissible hearsay or potentially inadmissible under the Confrontation Clause of the Sixth Amendment, such audio should be excluded. Mr. Abrego understands that the government's current proposal is to play the audio and ask the Court to give the jury a contemporaneous instruction that it should not consider any out-of-court statements for their truth. Because this approach would expose the jury to unreliable hearsay and violate Mr. Abrego's Sixth Amendment rights, the Court should preclude the government from playing the audio of the traffic stop video unless (1) the government demonstrates that any statement played is not hearsay, and (2) the declarant is available for cross-examination.

## BACKGROUND

Mr. Abrego is charged with unlawful transportation of undocumented individuals under 8 U.S.C. § 1324(a)(1)(A)(ii) and conspiracy to transport undocumented individuals under 8 U.S.C. § 1324(a)(1)(A)(v). (Dkt. 3). On November 30, 2022, a state trooper with the Tennessee Highway Patrol ("THP") conducted a traffic stop on a Chevrolet Suburban on Interstate I-40 in Putnam County, Tennessee, outside of Cookeville, Tennessee, located in the Middle District of Tennessee. (*Id.* ¶ 30). That traffic stop was captured on video by a body-worn camera ("BWC") worn by THP Trooper Joshua Brawner, who pulled Mr. Abrego over allegedly for speeding.[1]

According to Trooper Brawner's BWC footage, the camera was turned on less than a minute before the stop itself and proceeded to record for the next hour and twenty-two minutes,

---

[1] Mr. Abrego has moved to suppress the traffic stop and all evidence deriving from it, including the BWC footage. (Dkt. 151).

1

capturing interactions between Mr. Abrego and the officers, the officers and the passengers, and the officers and the Federal Bureau of Investigation ("FBI") and Homeland Security Investigations ("HSI"), as well as interactions among the officers themselves.

On the understanding that the BWC footage, if not suppressed, would likely play a large part in the government's case at trial, the defense conferred with the government to better understand what content from the BWC footage the government was planning to introduce as evidence. In particular, the defense sought to understand how the government planned to deal with out-of-court statements recorded in the BWC footage. In the defense's view, the jury's exposure to various third parties' out-of-court statements creates significant hearsay and potentially Confrontation Clause concerns, and accordingly the defense proposed that the government play any BWC footage without sound. The government responded that, while still unsure, it likely would not agree to the defense's proposal and instead intended to play the BWC footage with sound for the relevant witnesses, and it would ask the Court to give a contemporaneous instruction to the jury that it should not consider any out-of-court statements for their truth.

## ARGUMENT

Because hearsay is inadmissible, the government bears the burden of proving that out-of-court statements captured on the BWC footage fit within an applicable hearsay exception or exclusion. *United States v. Kendrick*, 853 F.2d 492, 496 n.3 (6th Cir. 1988). Additionally, because any statements made during the stop were testimonial, the Confrontation Clause bars the admission of such statements in the absence of the declarant testifying at trial, unless the government can show that the declarant is unavailable to testify and that Mr. Abrego had a prior opportunity for cross-examination. *See Samia v. United States*, 599 U.S. 635, 643 (2023). Because the government's proposed contemporaneous instruction is insufficient to cure either of these infirmities, the government should be precluded from playing the audio of the BWC footage,

2

unless it has first shown that the specific statements to be played are admissible, and the declarant is available at trial to be cross-examined.

## I. Applicable Law

Hearsay is an out-of-court statement offered to prove the truth of the matter asserted. Fed. R. Evid. 801(c). Unless otherwise provided by a federal statute or the rules of evidence, hearsay is inadmissible. Fed. R. Evid. 802. "That's because hearsay statements are deemed less reliable. Unlike in-court witnesses, out-of-court declarants aren't sworn to tell the truth, aren't tested by cross-examination, and aren't available for the jury to evaluate their demeanor." *United States v. Lundy*, 83 F.4th 615, 618 (6th Cir. 2023). "[T]he proponent of a hearsay statement bears the burden of proving that the statement fits squarely within a hearsay exception or exclusion." *Kendrick*, 853 F.2d at 496 n.3.

Additionally, "[i]n all criminal prosecutions, the accused shall enjoy the right…to be confronted with the witnesses against him." U.S. Const. amend. VI. The Sixth Amendment's Confrontation Clause "forbids the introduction of out-of-court 'testimonial' statements unless the witness is unavailable and the defendant has had the chance to cross-examine the witness previously." *Samia*, 599 U.S. at 643; *see also Lundy*, 83 F.4th at 618-21 (with respect to a witness's hearsay statements captured on a BWC, such a statement is admissible only if the proponent (a) can establish that the statement is admissible under some exception to the rule against hearsay; and (b) (assuming the witness is not testifying) the statement is non-testimonial).

"A statement is testimonial if a reasonable person in the declarant's position would have anticipated the use of the statement in a criminal proceeding." *United States v. Boyd*, 640 F.3d 657, 665 (6th Cir. 2011). "Thus, statements made to police in the course of an official investigation are testimonial." *Id.*

## II. Unless the Government Shows Otherwise, the BWC Audio Is Hearsay and Should Be Excluded

The government has not disclosed to the defense which specific portions of the more than an hour-long BWC footage it intends to play for the jury. Consequently, the defense also does not know which specific statements the jury might hear if the government is allowed to proceed as it currently intends to proceed—by playing the audio and seeking a contemporaneous instruction from the Court instructing the jury that it should not consider any out-of-court statements for their truth. In any event, the government's current proposal should be rejected for two reasons.

*First*, the government bears the burden of proving that any statement from the BWC video that is played for the jury "fits squarely within a hearsay exception or exclusion." *Kendrick*, 853 F.2d at 496 n.3. The government's proposed solution cannot absolve it of that burden. *See also, e.g., United States v. Sutton*, 636 F. Supp. 3d 179, 198 (D.D.C. 2022) ("[I]t is the government's burden to demonstrate the relevance of any particular BWC and the admissibility of statements not made by individuals who will be witnesses at trial."). A "blanket assertion that the BWC audio is admissible because it is not offered 'to prove the truth of the matter asserted' is insufficient." *Id.* (quoting Fed. R. Evid. 801(c)). Instead, "[t]he government must identify the statements it wants to admit and provide specific reasons why the statements do not fall under the definition of hearsay set forth in Rule 801 or are admissible as an exception to the rule against hearsay under Rule 803." *Id.* A contemporaneous instruction that the jury should not consider any statements made in the video for their truth, as the government proposes, is similarly insufficient.

*Second*, the government's proposed contemporaneous instruction is not sufficient to eliminate the potential prejudice to Mr. Abrego from the jury hearing the statements. Proceeding in this manner would allow the jury to hear statements that, like all hearsay, "are deemed less reliable," *Lundy*, 83 F.4th at 618, and, here, are highly prejudicial. The risk of prejudice is

4

particularly high here where the jury would be hearing statements from law enforcement officers expressing their *opinions* about what they *think* or *suspect* about Mr. Abrego's conduct. The Sixth Circuit has rightfully observed that "[a] limiting instruction is not always sufficient to cure the harm of highly prejudicial information improperly admitted at trial." *United States v. Nelson*, 725 F.3d 615, 622 (6th Cir. 2013)*, as clarified on denial of reh'g* (Jan. 16, 2014). In *Nelson*, the defendant argued on appeal that "prejudicial hearsay evidence was admitted in the form of police testimony regarding an anonymous 911 caller's description of an armed man fitting his exact characteristics." *Id.* at 618. The central issue for the jury at trial was whether the defendant possessed a gun, and the district court permitted the government "to present the testimony of five police officers describing in detail what the dispatcher told them about the suspect." *Id.* The district court found this "evidence was admissible as background information, and gave the jury a limiting instruction after each officer's testimony." *Id.* The Sixth Circuit reversed, concluding that "the prejudicial nature of the evidence and the fact that it went to the key issue for the jury's resolution made it unlikely that the limiting instruction adequately protected [the defendant] from prejudice." *Id.* at 622.

As in *Nelson*, a limiting instruction here would be similarly insufficient because the BWC footage goes directly to "the key issue for the jury's resolution" of the case, making it "unlikely" that the contemporaneous instruction could "adequately protect[]" Mr. Abrego from prejudice. *Id.* at 622. This is especially true where the BWC footage would likely be "repeatedly emphasized at trial." *Id*. Moreover, if any of the statements played at trial are made by officers or passengers that the government does not call as witnesses, the defense would not have the opportunity to cross-examine them on issues that are central to this case.

### III. Statements Made on the BWC are Testimonial and Should Be Excluded

The government should also be required to play the BWC footage without audio in light of

5

the Sixth Amendment's prohibition against the introduction of out-of-court testimonial statements, unless it calls the declarants to testify at trial. *See Samia*, 599 U.S. at 643; *Lundy*, 83 F.4th at 618-21. As the Supreme Court has explained, statements are testimonial when "the circumstances objectively indicate that there is no…ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution." *Davis v. Washington*, 547 U.S. 813, 822 (2006); *see also Lundy* 83 F.4th at 620 ("A classic example [of a testimonial statement] is a formal police interrogation intended to establish the facts of a crime committed well in the past."); *Crawford v. Washington*, 541 U.S. 36, 53 (2004) (stating that "interrogations by law enforcement officers fall squarely within" the class of testimonial hearsay).

The BWC footage is a recording of THP's hour-long interrogation of Mr. Abrego and its investigation more broadly, capturing statements made by THP officers to Mr. Abrego, to other passengers, to each other, and to officials at HSI and the FBI. All those statements "fall squarely within" the class of testimonial hearsay. *Crawford*, 541 U.S. at 53; *see also United States v. Aleman-Ramos*, 155 F. App'x 845, 850 n.2 (6th Cir. 2005) (finding that statements made by defendant's nine-year-old son in response to police questioning during traffic stop were testimonial and admission of the statements at trial violated the Confrontation Clause where defendant's son did not testify).

Additionally, the November 30, 2022 traffic stop would not qualify as an "ongoing emergency" that would make statements recorded over the course of that stop "non-testimonial." After Mr. Abrego was pulled over, allegedly for speeding, he engaged in a calm exchange with the officers and later was detained in a police car while THP conducted their investigation. THP's investigation included questioning the passengers in the vehicle Mr. Abrego was driving and

6

asking them to provide their names and date of birth. The stop lasted over an hour while THP troopers conducted their investigation, discussed that investigation among themselves, contacted HSI and the FBI, and awaited further direction from those agencies. As the Court is aware, the traffic stop did not result in Mr. Abrego being charged with a crime, and Mr. Abrego was allowed to drive on without a citation.

Finally, THP's interrogation of Mr. Abrego and the passengers that evening was clearly for the purpose of establishing events "potentially relevant to later criminal prosecution." *Davis*, 547 U.S. at 822. In fact, during the traffic stop itself, multiple troopers appeared to report Mr. Abrego to HSI and the FBI for human smuggling, all of which is captured on the BWC. These steps are consistent with a desire to establish events and a record that could be "potentially relevant to later criminal prosecution." *Id.*

Statements recorded on the BWC footage of the traffic stop are classic "testimonial" statements that can be introduced at trial only if the non-testifying declarant is unavailable and Mr. Abrego has had an opportunity to cross-examine the witness previously. *Samia*, 599 U.S. at 643. Because Mr. Abrego has not had an opportunity to cross-examine any of the declarants who made statements on the BWC previously, playing any hearsay statements from the BWC to the jury would violate Mr. Abrego's Sixth Amendment rights unless the government calls the declarant to testify at trial.

### IV. The Government Should Be Required To Play the BWC Footage Without Audio

Instead of playing the BWC footage with audio and exposing the jury to hearsay and/or violating Mr. Abrego's Sixth Amendment rights, the government should instead be required to play the BWC footage without audio, unless it first demonstrates, as is its burden, that the admission of the statement does not violate the rule against hearsay or Mr. Abrego's right to confrontation under the Sixth Amendment. *Samia*, 599 U.S. at 643; *Lundy*, 83 F.4th at 618-21.

7

Such an approach would be consistent with the approach the United States Attorney's Office for the Middle District of Tennessee has previously taken before this Court. *See United States v. London*, No. 3:22-CR-00310, Dkt. 112 at 7-8 (M.D. Tenn. Feb. 12, 2023). In *London*, the government notified the Court prior to trial that it intended to play at trial footage recorded by certain law enforcement officers' body-worn cameras with the "audio portions entirely redacted," a solution that as the government explained, "other courts have approved to cure any hearsay concerns with playing body-worn camera footage at trial." *Id.* at 7; *see also e.g., Sutton*, 636 F. Supp. 3d at 198 (requiring the government to identify specific non-hearsay statements from body-worn camera footage that it would seek to admit at trial and concluding that, "[s]hould that prove too difficult, with respect to some or all of the BWC videos, the Court will consider admitting the video portions only"); *United States v. Hill*, 2022 WL 5171161, at *5 (S.D. Ind. Oct. 5, 2022) ("Because the Government intends to redact the allegedly inadmissible statements described by [the defendant], the Court declines to preclude the body-worn camera footage and audio *in limine*"); *United States v. O'Dowd*, 2022 WL 4467703, at *3 (D. Utah Sept. 25, 2022) ("Where the statements in the bodycam recording are inadmissible hearsay, they are inadmissible. However, only the audio of the recording is inadmissible."). That same approach should apply here, and the government has identified no basis to deviate from past practice endorsed by this Court.

## CONCLUSION

For the foregoing reasons, Mr. Abrego respectfully requests that the Court preclude the government from playing the BWC video audio unless (1) the government demonstrates that any statement played is not hearsay, and (2) the declarant is available for cross-examination.

Dated: November 24, 2025        Respectfully submitted,
   New York, New York

                   /s/ Sean Hecker
                  Sean Hecker*
                  Jenna M. Dabbs*
                  David Patton*
                  HECKER FINK LLP
                  350 Fifth Avenue, 63rd Floor
                  New York, NY 10118
                  Telephone: (212) 763-0883
                  Fax: (212) 564-0883
                  shecker@heckerfink.com
                  jdabbs@heckerfink.com
                  dpatton@heckerfink.com

                  * admitted *pro hac vice*

                  Rascoe Dean (No. 034209)
                  SHERRARD ROE VOIGT & HARBISON PLLC
                  1600 West End Avenue, Suite 1750
                  Nashville, Tennessee 37203
                  Telephone: (615) 742-4200
                  Fax: (615) 742-4539
                  rdean@srvhlaw.com

                  *Counsel for Defendant Kilmar Armando Abrego Garcia*

**CERTIFICATE OF SERVICE**

I hereby certify that on November 24, 2025, I electronically filed the foregoing document with the clerk of the court by using the CM/ECF system, which will send a notice of Electronic Filing to the following: Acting United States Attorney, Robert E. McGuire, 719 Church Street, Suite 3300, Nashville, Tennessee 37203; Assistant United States Attorney, Jason Harley, 210 Park Avenue, Suite 400, Oklahoma City, Oklahoma 73102.

/s/ Sean Hecker