# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF TENNESSEE

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>KILMAR ARMANDO ABREGO GARCIA,<br><br>*Defendant.* | No. 3:25-cr-115<br><br>Judge Waverly D. Crenshaw, Jr. |

**MOTION AND MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT KILMAR ARMANDO ABREGO GARCIA'S MOTION IN LIMINE TO EXCLUDE TROOPER OPINION TESTIMONY**

## PRELIMINARY STATEMENT

Defendant Kilmar Armando Abrego Garcia moves *in limine* to exclude opinion testimony from law enforcement officers involved in the November 30, 2022 traffic stop that Mr. Abrego was engaged in human smuggling, or, in their words, was an "ass hauler," and that he and the passengers in the vehicle were lying to law enforcement. Such testimony does not comply with the requirements of Federal Rule of Evidence 701.

## BACKGROUND

On November 30, 2022, Tennessee Highway Patrol ("THP") Trooper Joshua Brawner pulled Mr. Abrego over on Interstate 40 in Putnam County, Tennessee. Trooper Brawner's body-worn camera ("BWC"), which he activated shortly before the stop, recorded over an hour of footage of the stop. (Dkt. 151-1). Mr. Abrego has moved to suppress the entirety of the stop, including all of the BWC footage, because he was stopped unlawfully. (Dkt. 151, 175, 189). A hearing on that motion is scheduled for December 8-9, 2025. (Dkt. 208). Mr. Abrego is also moving *in limine* to require that, should the BWC footage be played at trial, it be played without audio, unless (1) the government demonstrates that any statement played is not hearsay, and (2) the declarant is available for cross-examination.

The BWC footage includes conversations between Trooper Brawner and the other officers at the scene. In those conversations, officers repeatedly expressed their opinion that Mr. Abrego was smuggling the van's passengers, which they referred to as "ass hauling" or "running." (*E.g.*, Dkt. 151-1 at 15:09-15:56 ("He's hauling these people for money. You got an ass hauler…Yeah so he's getting paid to haul these people…And if you get them out they're gonna have toothpaste and they're gonna have toothbrushes in their pockets, I guarantee it."), 23:03-23:19 ("He's running from Houston, Texas to District of Columbia…He's just—he's an ass hauler."), 24:50-25:10

1

("They'll have a Ziploc bag with some toiletries in it, maybe one change of clothes and that's it."), 26:00-26:09 ("That's his payment for hauling."), 1:03:43-1:03:50 ("He's obviously involved in trafficking."),[1] 1:06:58-1:07:06 ("He's involved in a crime right now.")).

The government has also disclosed a report from a telephonic interview conducted by Homeland Security Investigations ("HSI") with THP Officer Douglas Foster, one of the officers involved in the November 30, 2022 traffic stop. (*See* P000365-P000366). In that interview, Officer Foster stated that he had received "training in violations of law related to human smuggling and had been personally involved in numerous human smuggling incidents as a THP officer," and that upon arriving at the scene of the stop "he immediately suspected the vehicle was involved in human smuggling." (P000366). He further stated that his "experience has led him to the practice of visually observing the hands of anyone who claimed to be working in construction," and that "based on the condition of the passenger's hands, he did not believe the occupants in the vehicle were construction workers." (*Id.*).

On November 3, 2025, the government filed a notice regarding expert testimony pursuant to Federal Rule of Criminal Procedure 16. (Dkt. 209). In its notice, the government disclosed its intent to call "Agent Victor Garcia, Jr. with the United States Border Patrol who will testify as an expert on human smuggling involving illegal aliens." (*Id.* at 1). Mr. Abrego is moving *in limine* to exclude Agent Garcia's testimony under Federal Rules of Evidence 702 and 403.

## ARGUMENT

I. **The Troopers' Opinion Testimony Fails to Meet the Requirements of Rule 701**

Under Federal Rule of Evidence 701, "[i]f a witness is not testifying as an expert, testimony in the form of an opinion is limited to one that is: (a) rationally based on the witness's perception;

---

[1] Mr. Abrego is also moving *in limine* to exclude the use of the term "trafficking" because Mr. Abrego is not charged with a trafficking offense. *See* 8 U.S.C. § 1324(a)(1)(A)(ii).

2

(b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." "[R]equirement (b) ensures that the proffered opinion is 'helpful in resolving issues' and does not 'amount to little more than choosing up sides.'" *United States v. Kerley*, 784 F.3d 327, 337 (6th Cir. 2015) (quoting Fed. R. Evid. 701 advisory committee's note (1972 Proposed Rules)). "Requirement (c), added by the 2000 amendment to Rule 701, serves to 'eliminate the risk that the reliability requirements set forth in Rule 702 will be evaded through the simple expedient of proffering an expert in lay witness clothing.'" *Id.* (quoting Fed. R. Evid. 701 advisory committee's note (2000)). "The burden is on the proponent" of lay witness opinion testimony to establish its admissibility under Rule 701. *See United States v. Freeman*, 730 F.3d 590, 595-96 (6th Cir. 2013).

### A. The Troopers' Opinion Testimony Is Not Helpful to Determining a Fact in Issue

"It is not 'helpful' when a witness, lay or expert, forms conclusions for a jury that the jurors are competent to reach on their own." *United States v. Howell*, 17 F.4th 673, 685 (6th Cir. 2021) (quoting *United States v. Kilpatrick*, 798 F.3d 365, 380 (6th Cir. 2015)). A lay witness may not, therefore, "explain to a jury what inferences to draw," *id.* (quoting *Kilpatrick*, 798 F.3d at 381), "spoon-[feed]…the government's theory of the case to the jury," *United States v. Freeman*, 730 F.3d 590, 597 (6th Cir. 2013), or "tell the jury what result to reach," because doing so would "cross[] the line from evidence to argument." *Kilpatrick*, 798 F.3d at 380-81. In particular, "[l]ay opinion witnesses should avoid expressing a conclusion that the defendant is guilty." *Id.* at 381. "[E]nforcement of Rule 701's criteria [is] uniquely important" where the lay witness is a law enforcement officer, because "[a]n agent presented to a jury with an aura of expertise and authority increases the risk that the jury will be swayed improperly by the agent's testimony, rather than rely on its own interpretation of the evidence." *Freeman*, 730 F.3d at 599; *see also United States v.*

3

*Glenn*, 146 F.4th 485, 491 (6th Cir. 2025).

The troopers' opinions that Mr. Abrego was engaged in human smuggling are analogous to the unhelpful lay opinion testimony the Sixth Circuit excluded in *Freeman*. There, an FBI special agent, testifying as a lay witness, provided his interpretation of the defendant's phone calls, including one in which the defendant said: "the situation is over with." *Freeman*, 730 F.3d at 598. The special agent testified that the "situation" was "regarding Leonard Day and his having stolen jewelry from Roy West, Roy West having put a hit on Leonard Day and Leonard Day ultimately being killed." *Id.* As the Sixth Circuit explained,

> Somehow, when passed through [the agent's] interpretive lens, this cryptic exchange becomes crystal clear, and his explanation fits perfectly with the prosecution's view of the case…. That is not to say a juror could not have reached the same conclusions…. It is rather to say that…[t]hese types of conclusions are the province of a jury.

*Id.*; *see also United States v. Williamson*, 656 F. App'x 175, 188 (6th Cir. 2016) (law enforcement officer's summary of all the calls played to the jury was the "egregious 'spoon-feeding' of the government's theory of the case to the jury…[that] *Freeman* warns against"). Here, as in *Freeman*, the troopers' opinion testimony places the facts (as they allege them) of the November 30, 2022 traffic stop through a clarifying "interpretive lens" that transforms the events of that night into a "crystal clear" narrative that "fits perfectly with the prosecution's view of the case." Their opinion testimony thus "stray[s] into matters that are reserved for the jury, such as opinions about a defendant's guilt." *United States v. Brooks*, 736 F.3d 921, 930 (10th Cir. 2013). The jury is perfectly capable of viewing the BWC footage—should it be found to be admissible—and drawing its own inferences as to guilt and credibility therefrom.[2]

---

[2] While law enforcement officers may be permitted to provide lay opinion testimony interpreting otherwise ambiguous facts when that testimony is based on extensive personal knowledge of the facts in a case, that is not the case here. In *United States v. Young*, 847 F.3d 328 (6th Cir. 2017), for example, the lead agent on a multi-year investigation was permitted to interpret "slang and

4

Case 3:25-cr-00115    Document 238    Filed 11/24/25    Page 5 of 9 PageID #: 4390

### B. The Troopers' Opinion Testimony Is the Same Form of Testimony that the Government Seeks to Admit as Expert Testimony

"Lay witnesses may not invade the realms of experts." *Dorchy v. Fifth Third Bank*, 596 F. Supp. 3d 969, 974 (E.D. Mich. 2022). A witness may therefore offer opinion testimony either "as a lay person under Rule 701 *or* as an expert under Rule 702." *Freeman*, 730 F.3d at 595 (emphasis added). Courts regularly exclude lay witness testimony based on specialized experience beyond the facts of the case. *E.g.*, *Smith v. Allstate Ins. Co.*, No. 1:05-CV-329, 2007 WL 4591603, at *1 (S.D. Ohio June 11, 2007) (precluding insurance adjuster from "offering as a lay witness opinions from his long experience in the field of adjusting insurance claims" (cleaned up)); *United States v. Garcia*, 413 F.3d 201, 216 (2d Cir. 2005) (excluding law enforcement lay opinion testimony based on the officer's review of "thousands of intercepted conversations in the course of various narcotics investigations" and specialized knowledge of the "price for a kilogram of cocaine in the New York market").

To the extent that the troopers' opinion testimony is based on anything beyond the capacity of an average juror, it is based on what the government has already classified as "specialist" expertise. By giving notice of its intent to call an expert in human smuggling, the government has shown that it believes testimony about the typical profile of human smugglers to be expert testimony "based on scientific, technical, or other specialized knowledge within the scope of Rule 702." Fed. R. Evid. 701(c); *see* Dkt. 209 at 5 (stating the government's intent to call Agent Garcia to provide expert testimony as to "how smugglers generally transport illegal aliens without personal effects such as clothes and luggage, use different routes and travel at night to avoid

---

jargon" on wiretapped calls. *Id.* at 351. In this case, the troopers in question observed Mr. Abrego for little more than an hour—most of which was spent speaking with each other. They do not have the kind of extensive personal knowledge of the case that would render their opinion testimony admissible under *Young*.

detection, [and] craft cover stories to provide if stopped by law enforcement," and "other aspects of his experience in human smuggling investigations"). And Trooper Foster's own statements, in his interview with HSI, indicate that he believes his statements to be based on his "training…related to human smuggling" and experience investigating human smuggling "as a THP officer." (P000366). Because opinion testimony must be offered either under Rule 701 or 702, *see Freeman*, 730 F.3d at 595, the government may not introduce the same opinions through lay witnesses that it seeks to introduce through its noticed expert.[3]

## CONCLUSION

Mr. Abrego respectfully requests that the Court preclude the government from introducing THP troopers' opinion testimony that he was engaged in human smuggling under Federal Rule of Evidence 701.

Dated: November 24, 2025
      New York, New York

Respectfully submitted,

/s/ Sean Hecker
Sean Hecker*
Jenna M. Dabbs*
David Patton*
HECKER FINK LLP
350 Fifth Avenue, 63rd Floor
New York, NY 10118
Telephone: (212) 763-0883
Fax: (212) 564-0883
shecker@heckerfink.com
jdabbs@heckerfink.com
dpatton@heckerfink.com

* admitted *pro hac vice*

---

[3] Nor, as discussed in the defense's *Daubert* motion, can the government seek to introduce expert opinion testimony on human smuggling without complying with the notice requirements of Federal Rule of Criminal Procedure 16(a)(1)(G) and providing the defense with an opportunity to challenge such testimony.

Rascoe Dean (No. 034209)
SHERRARD ROE VOIGT & HARBISON PLLC
1600 West End Avenue, Suite 1750
Nashville, Tennessee 37203
Telephone: (615) 742-4200
Fax: (615) 742-4539
rdean@srvhlaw.com

*Counsel for Defendant Kilmar Armando Abrego Garcia*

## CERTIFICATE OF SERVICE

I hereby certify that on November 24, 2025, I electronically filed the foregoing document with the clerk of the court by using the CM/ECF system, which will send a notice of Electronic Filing to the following: Acting United States Attorney, Robert E. McGuire, 719 Church Street, Suite 3300, Nashville, Tennessee 37203; Assistant United States Attorney, Jason Harley, 210 Park Avenue, Suite 400, Oklahoma City, Oklahoma 73102.

/s/ Sean Hecker