UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | ) )  )  |
| v. | ) No. 3:25-CR-00115 ) JUDGE CRENSHAW |
| KILMAR ABREGO GARCIA, | ) ) |
| Defendant. | ) ) ) |

### United States of America's Supplemental Brief on the Pending Motion to Quash

The United States submits this Supplemental Brief in response to the Court's December 3, 2025, Order (Doc. No. 241) (the "Order") requiring "supplemental briefing on whether the" documents produced by the United States in response to the Order "inform the parties' respective positions on the pending" Motion to Quash (Doc. No. 181).

The United States' position on its Motion to Quash has not changed. The United States maintains that the subpoenas for Deputy Attorney General Todd Blanche, Associate Deputy Attorney General Aakash Singh, and Acting Principal Associate Deputy Attorney General James McHenry (the "Subpoenaed DOJ Officials") should be quashed because the Subpoenaed DOJ Officials' testimony would be irrelevant, cumulative, inadmissible, and privileged, and the United States' recent production has only made that clearer.

None of the produced material refutes Acting U.S. Attorney Rob McGuire's affidavit stating that he "never received any direction from the Office of the Attorney General or the Office of the Deputy General, or any other attorney at Main Justice, that was unethical or inappropriate." Doc. No. 121-1 ¶ 48. As the production shows, pre-prosecution emails between DOJ attorneys confirm that Mr. McGuire made the decision to charge Defendant because he "believe[s] that

1

Abrego Garcia committed a federal crime here in our district and that it can be proven beyond a reasonable doubt." Doc. No. 229, at Abrego-Garcia000060–000061; *see also* Suppl. Aff., Doc. No. 178-1 ¶ 5 ("I [Mr. McGuire] ultimately made the decision on whether to seek an indictment in this case based on my belief that the defendant had committed a federal crime and that I could prove his guilt beyond a reasonable doubt.").

In fact, the United States' voluminous production shows nothing other than appropriate oversight by the Office of the Deputy Attorney General over a matter that naturally involves multiple agencies and DOJ components, including several U.S. Attorney's Offices.[1] This oversight was all the more proper given the sensitive nature of Defendant's return from El Salvador and suspected connections with a designated Foreign Terrorist Organization.[2]

Yet Defendant's fishing expedition continues based on two increasingly dubious theories: that mere communication between U.S. Attorney's Offices and the Office of the Deputy Attorney General demonstrates vindictive intent, and, even more fantastically, that high-ranking DOJ officials bamboozled the Acting U.S. Attorney into charging Defendant with unlawfully transporting other undocumented aliens. Of course, there can be no credible suggestion that communication between a U.S. Attorney's Office and high-ranking DOJ officials demonstrates improper intent. And not one of the over 3,000 documents produced by the United States to the

---

[1] The Office of the Deputy Attorney General oversees the U.S. Attorney's Offices and the Executive Office for U.S. Attorneys. *See Department of Justice Organizational Chart*, U.S. Dep't of Just. (Sept. 15, 2025), https://www.justice.gov/d9/2025-09/Departmental%20Organizational%20Chart%202025%20-%20508.pdf.

[2] MS-13 is a designated Foreign Terrorist Organization. *See* Foreign Terrorist Organization Designations of Tren de Aragua, Mara Salvatrucha, Cartel de Sinaloa, Cartel de Jalisca Nueva Generacion, Carteles Unidos, Cartel del Noreste, Cartel del Golfo, and La Nueva Familia Michoacana, 90 Fed. Reg. 10030, 10030 (Feb. 6, 2025). The Indictment charges that Defendant was "a member and associate of the transnational criminal organization, La Mara Salvatrucha, otherwise known and hereinafter referred to as MS-13." Doc. No. 3 ¶ 5.

Court or Defendant suggests that any DOJ official unduly influenced Mr. McGuire's prosecutorial discretion; indeed, the production proves the opposite. Nor does a single document lend credence to the theory that high-ranking DOJ officials somehow "unknowingly" induced Mr. McGuire, an experienced and well-respected criminal prosecutor, to charge Defendant with unlawfully transporting undocumented aliens and conspiring with others to do so. Def.'s Reply Br. in Opp'n to United States' Mot. to Quash, Doc. No. 180, at 2. Rather, the documents show only that two high-ranking DOJ Officials, Deputy Attorney General Blanche and Associate Deputy Attorney General Singh, exercised traditional oversight and communication typical of any high-profile and sensitive criminal prosecution.[3]

In addition, the Subpoenaed DOJ Officials' testimony will be protected by the same privileges the United States asserted over the produced documents. Their testimony will almost certainly pertain to legal advice relating to Mr. McGuire's prosecution decision and therefore will be protected not only by the attorney-work product doctrine and deliberative-process privilege,[4] but also by the attorney-client privilege, which is absolute and has not been waived.[5] At best,

---

[3] The third high-ranking official, Mr. McHenry, was not referenced in the production because he did not have any oversight responsibility over the U.S. Attorney's Offices at the time and did not become involved in the criminal prosecution until on or about June 22, 2025, well after Defendant was indicted. Defendant also has not alleged any involvement by Mr. McHenry in the initiation of the prosecution.

[4] The work-product doctrine protects materials prepared by or for a party or a party's attorney in anticipation of litigation or for trial. *See* Fed. R. Evid. 502(g)(2); *Hickman v. Taylor*, 329 U.S. 495, 510 (1947) (explaining that attorney work product "falls outside the arena of discovery and contravenes the public policy underlying the orderly prosecution and defense of legal claims" even under "the most liberal of discovery theories"). The deliberative-process privilege "allows the government to withhold documents and other materials that would reveal 'advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated.'" *In re Sealed Case*, 121 F.3d 729, 737 (D.C. Cir. 1997) (citations omitted).

[5] *See Ross v. City of Memphis*, 423 F.3d 596, 600–03 (6th Cir. 2005) (holding that a municipal corporation, as a governmental entity, may invoke the attorney-client privilege); *see also* M. S. Paulsen, *Who Owns the Government's Attorney-Client Privilege?*, 83 Minn. L. Rev. 473, 474

Defendant could ask the Subpoenaed DOJ Officials to testify about internal Executive Branch communications on an investigation and prosecution decision—which they could not possibly discuss without violating the attorney-client privilege and other forms of executive privilege. And, unless the Court intends to pierce the privilege—which it has no basis to do—there is little possibility that the high-ranking officials' testimony will yield relevant, admissible, and non-cumulative evidence that is not already present in the United States' production. Certainly, whatever little probative value the Subpoenaed DOJ Officials' testimony might provide is far outweighed by the United States' interests in maintaining the constitutional separation of powers and integrity of U.S. Attorneys' prosecutorial decisions.

Even more, subpoenas requiring high-ranking DOJ officials to testify in court transgresses the separation of powers. *See* United States' Reply in Supp. of Mot. to Quash, Doc. No. 199, at 4–5 (explaining that the apex doctrine precludes compelling the testimony of high-ranking DOJ officials). As such, "absent extraordinary circumstances," top Executive Branch officials should not "be called to testify regarding their reasons for taking official actions." *Simplex Time Recorder Co. v. Sec'y of Labor*, 766 F.2d 575, 586 (D.C. Cir. 1985). This is especially true when the high-ranking DOJ officials' duties would be "interrupted by judicial demands for information that could be obtained elsewhere." *In re Cheney*, 544 F.3d 311, 314 (D.C. Cir. 2008) (citing *Simplex Time Recorder*, 766 F.2d at 586). The United States has already produced such information in accordance with the Order—and Mr. McGuire has submitted two affidavits and is available to testify at an evidentiary hearing. *See* Aff., Doc. No. 121-1; Suppl. Aff., Doc. No. 178-1.

---

(1998) (explaining that the United States is a "client" that may invoke the attorney-client privilege).

4

Case 3:25-cr-00115   Document 263   Filed 12/12/25   Page 4 of 7 PageID #: 4530

Importantly, the apex doctrine is particularly potent in selective- and vindictive-prosecution claims because if a high-ranking official "was asked to testify in every case which the [agency] prosecuted, his time would be monopolized by preparing and testifying in such cases." *See In re United States*, 985 F.2d 510, 512 (11th Cir. 1993) (granting writ of mandamus to quash order directing Food and Drug Administration Commissioner to testify by telephone for thirty minutes in response to selective-prosecution claim). Given that the produced documents show that there is no basis for these subpoenas, Defendant cannot overcome the presumption against requiring high-ranking Executive Branch officials to testify. *See United States v. Newman*, 531 F. Supp. 3d 181, 188 (D.D.C. 2021) (explaining that there is a presumption against deposing high-ranking current or former government officials). And it would be inappropriate for the Court to install itself as the supervisor of high-ranking Executive Branch officials. *Cf. In re Noem*, No. 25-2936 (7th Cir. 2025) (granting mandamus because the district court's order "set[] the court up as a supervisor of [the Chief Patrol Agent at U.S. Customs and Border Protection]'s activities, intruding into personnel management decisions of the Executive Branch").

Further intrusion into the Executive Branch's affairs is unwarranted. The Court should grant the United States' Motion to Quash the subpoenas for Deputy Attorney General Todd Blanche, Associate Deputy Attorney General Aakash Singh, and Acting Principal Associate Deputy Attorney General James McHenry.

[Signature Block on Next Page]

Respectfully submitted,

*/s/ Stanley E. Woodward, Jr.*
Stanley E. Woodward, Jr.
Associate Attorney General
U.S. Department of Justice
950 Pennsylvania Ave NW
Washington, DC  20530


*/s/ Robert E. McGuire*
Robert E. McGuire
Acting United States Attorney
719 Church Street, Suite 3300
Nashville, TN  37203

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing will be served electronically to counsel of record via CM/ECF on December 12, 2025.

/s/ *Stanley E. Woodward, Jr.*
Stanley E. Woodward, Jr.