IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>KILMAR ARMANDO ABREGO GARCIA,<br><br>*Defendant.* | No. 3:25-cr-115<br><br>Judge Waverly D. Crenshaw, Jr. |

**MOTION FOR SANCTIONS FOR GOVERNMENT'S
VIOLATION OF THE COURT'S ORDER ON
EXTRAJUDICIAL STATEMENTS**

# PRELIMINARY STATEMENT

On October 27, 2025, in response to repeated public statements on the part of the government that violated Local Rule 2.01 and threatened Mr. Abrego's right to a fair trial, this Court issued an Order ("October 27 Order" or the "Order") prohibiting "[e]mployees of DOJ and DHS" from making any public extrajudicial statements that "have a substantial likelihood of materially prejudicing [this proceeding], including especially that will interfere with a fair trial." (Dkt 183 at 2-3 (quoting L. Crim. R. 2.01(a)(1))). The Court instructed counsel for the government to transmit the October 27 Order to DOJ and DHS employees and warned that employees who fail to comply with the Order "may be subject to sanctions." (*Id.* at 1, 3).

On December 12 and 14, after Mr. Abrego was ordered released from DHS custody, and in flagrant violation of this Court's Order, Chief Border Patrol Agent Gregory Bovino—a senior DHS officer—appeared on national news to call Mr. Abrego an "alien smuggler," a "wife beater," and an "MS-13 gang member," to attack the judges presiding over Mr. Abrego's civil and criminal cases as "activist" and "extremist," and to promise that Mr. Abrego would be taken "out of circulation" and deported. When defense counsel raised these statements with counsel for the government, requesting a retraction, the government simply ignored defense counsel's request— meaning, the government did not even deign to respond to defense counsel's email raising the concern. Perhaps that is because there is no defense of Mr. Bovino's conduct: Mr. Bovino's statements clearly violate this Court's October 27 Order. The government's failure even to acknowledge the issue raises serious questions about its willingness to comply with that Order moving forward.

The government has repeatedly violated Local Rule 2.01(a)(1) and this Court's Orders. The latest violation is flagrant, and sanctions and other case-related relief are warranted. To permit

1

the Court to determine what sanctions and other remedies are appropriate, the government should be directed to disclose: (1) the steps it has taken to disseminate the Court's Order to DHS employees (including, specifically, Mr. Bovino), (2) who authorized Mr. Bovino to speak about Mr. Abrego's case and what guidance he received in advance of speaking about the case on national television, and (3) any communication between the prosecution and Mr. Bovino or DHS related to Mr. Bovino's statements, either before or after they were made.

## BACKGROUND

Over the last five months, this Court has taken a series of careful, measured steps to protect Mr. Abrego's right to a fair trial in light of the government's highly prejudicial statements about him. (*See* Dkt. 182 at 3-4). On July 3, 2025, the Court granted Mr. Abrego's motion for issuance of an order requiring compliance with Local Criminal Rule 2.01 and ordered all counsel "to comply with the Local Rules of this Court." (Dkt. 73).

That order fell on deaf ears. DHS officials continued to make public and prejudicial statements about Mr. Abrego. On July 18, 2025, for example, DHS Secretary Kristi Noem held a press conference at which she alleged that Mr. Abrego was "consistently being surrounded and working with [MS-13] gang members" and "has a lifetime history of trafficking individuals and of taking advantage of minors, soliciting pornography from them, nude photos of them, abusing his wife, abusing other illegals, aliens that were in this country, women that were under his care while he was trafficking them."[1] In response to Secretary Noem's inflammatory statements, the defense asked the Court to clarify that the requirements of Local Criminal Rule 2.01 apply not

---

[1] U.S. Dep't of Homeland Sec., *Secretary Noem to Host Press Conference Exposing "Worst of the Worst" Criminal Illegal Aliens in TN* (YouTube, July 18, 2025), https://www.youtube.com/watch?v=6J0-YouvMGo.

only to the DOJ but also to DHS, and to order the government to notify all relevant DHS officials of the requirement to comply with that Rule. (*See* Dkt. 94).

On July 31, 2025, the Court issued an order explaining that "compliance with Local Criminal Rules 2.01(a)(1) and (a)(4) is not discretionary for all attorneys and their firms or agencies," that "all counsel" in this case are subject to Tennessee Rule of Professional Conduct 3.8(f), and that "[a]ll counsel and those working with counsel shall ensure that any proper public communications include that the Indictment only contains allegations." (Dkt. 101). At that stage, the Court held that it was "not clear on the record before the Court" whether Local Rule 2.01 applied to DHS. (*Id.*). Thereafter, DOJ and DHS officials continued, undeterred, to publicly denigrate Mr. Abrego. Following Mr. Abrego's release from pretrial detention in August, Secretary Noem released a statement criticizing "[a]ctivist liberal judges" for "attempt[ing] to obstruct our law enforcement every step of the way in removing the worst of the worst criminal illegal aliens from our country."[2] White House "border czar" Tom Homan described Mr. Abrego as a "criminal alien…a member of MS-13…a wife-beater…a human trafficker…[and] a bad person [who is] not going to be here."[3] In response to the government's ongoing publicity campaign, defense counsel requested an additional order specifically directing officials from both DOJ and DHS to cease making prejudicial extrajudicial statements about Mr. Abrego. (Dkt. 118).

On October 27, 2025, the Court issued that additional order. (Dkt. 183). The Court held that Local Criminal Rule 2.01(a)(4) applies to "governmental agency employees" and placed "[e]mployees of DOJ and DHS…on notice that they are prohibited from making any 'extrajudicial

---

[2] Cameron Arcand, *Noem Torches "Activist Liberal Judges" After Abrego Garcia's Release from Jail: "New Low,"* Fox News (Aug. 22, 2025), https://www.foxnews.com/politics/noem-torches-activist-liberal-judges-after-abrego-garcias-release-from-jail-new-low.
[3] *America Will Be the 'Safest Nation' By the Time President Trump's Presidency Ends, Says Tom Homan*, Fox News (Aug. 24, 2025), https://www.foxnews.com/video/6377332527112.

statement…that the [individual] knows or reasonably should know will be disseminated by public communication that will have a substantial likelihood of materially prejudicing [this proceeding], including especially that will interfere with a fair trial.'" (*Id.* at 1-2 (quoting L. Crim. R. 2.01(a)(1))). In issuing that clarification, the Court observed that "government employees have made extrajudicial statements that are troubling, especially where many of them are exaggerated if not simply inaccurate," and expressed concern that "pervasive and inflammatory pre-trial publicity might compromise [Mr. Abrego's] fundamental right" to trial by an impartial jury. (Dkt. 182 at 1, 7). And the Court specifically warned that "DOJ and DHS employees who fail to comply with the requirement to refrain from making any statement that 'will have a substantial likelihood of materially prejudicing' this criminal prosecution may be subject to sanctions." (Dkt. 183 at 3; *see also* Dkt. 182 at 7).

The government moved for partial reconsideration of the Court's order on the basis that it "compell[ed] the United States to notify nearly 300,000 DHS employees—many of whom are in subagencies like the Federal Emergency Management Agency (FEMA), Transportation Security Administration (TSA), U.S. Secret Service (USSS), and the U.S. Coast Guard—about a rule that has no bearing on them." (Dkt. 218 at 1). On November 10, 2025, in accordance with the Government's request, the Court modified its order to require the Government to transmit the Order only to DHS employees "who are involved with this matter and authorized to speak on behalf of DHS about it." (Dkt. 222 at 1; Dkt. 183). But the Court did not modify the scope of its Order prohibiting *all* DOJ and DHS employees from making extrajudicial statements that violate Local Criminal Rule 2.01.

On December 11, 2025, the United States District Court for the District of Maryland granted Mr. Abrego's Petition for habeas corpus and ordered the Government to release Mr.

4

Abrego from Immigration and Customs Enforcement ("ICE") custody immediately. *Abrego Garcia v. Noem*, No. 8:25-CV-02780 (D. Md. Dec. 11, 2025), Dkt. 111.

Days after Judge Xinis ordered Mr. Abrego's release, Chief Border Patrol Agent Gregory Bovino made multiple highly prejudicial, inflammatory, and false statements about Mr. Abrego on national news. In a December 12, 2025 interview with Jesse Watters on Fox News, Mr. Bovino, speaking about Mr. Abrego, told Mr. Watters:

> It's too bad that we have these activist judges that legislate from the bench and put MS-13 gang members back out on the streets to harm Americans. That's what we're doing in these American cities, are taking individuals like this, quote, Maryland Dad, out of circulation and putting them back where they need to be, and that's in their country of record.[4]

In a December 14, 2025 appearance on NewsMax, Mr. Bovino doubled down on his vitriolic statements about Mr. Abrego, telling host Jon Glasgow:

> We have an MS-13 gang member walking the streets. As you said, a wife-beater, but also, let's not forget, he was also an alien smuggler. So here's someone that wants immigration relief, he wants to, to leech off the United States, and thinks it's okay to do that. And that Jon, maybe you and I have done something wrong? Wrong answer. When he becomes deportable, he is going to get deported. And he needs to be deported now. That's what you get when you have an extremist judge, or judges, that legislate from the bench. You have MS-13 gang members ready to prey on Americans yet again. And that's the very thing we're trying to stop here with President Trump and Kristi Noem's immigration efforts here in the homeland.[5]

On December 14, 2025, defense counsel informed Acting United States Attorney McGuire and Associate Attorney General Woodward of Mr. Bovino's televised statements and requested that the government "reiterate to Mr. Bovino that the Court's order bars him from making these

---

[4] *Border Patrol Chief Gregory Bovino Says Cooperation with Local Law Enforcement Makes Justice Easier to Achieve*, Fox News (Dec. 12, 2025), https://www.foxnews.com/video/6386418503112 (hereinafter Dec. 12, 2025 Fox News Interview).

[5] Video posted by Aaron Rupar (@aaron.rupar), X (Dec. 14, 2025), https://www.threads.com/@aaron.rupar/post/DSQB_tMCfE8/video-bovino-on-abrego-garcia-when-he-becomes-deportable-he-is-going-to-get-deported (hereinafter Dec. 14, 2025 NewsMax Interview).

types of statements." Defense counsel also requested that the government "issue a formal and public retraction of Mr. Bovino's statements through Newsmax and any other news outlet that may have carried them." The government did not respond.

### ARGUMENT

As this Court has explained, a trial "affected by extrajudicial statements…violate[s] [the] fundamental right" to "a fair trial by 'impartial' jurors." (Dkt. 182 at 5 (quoting *Gentile v. State Bar of Nevada*, 501 U.S. 1030, 1075 (1991))). Due process "requires that the accused receive a trial by an impartial jury free from outside influences," and that "[n]either prosecutors, counsel for defense, the accused, witnesses, court staff *nor enforcement officers*…should be permitted to frustrate its function." *Sheppard v. Maxwell*, 384 U.S. 333, 361, 363 (1966) (emphasis added). Local Criminal Rule 2.01 protects the right to a fair trial by "restrain[ing] speech that may pose a clear and present danger to a fair trial by an unbiased jury." (Dkt. 182 at 5).

Mr. Bovino's inappropriate and prejudicial comments plainly violate Local Criminal Rule 2.01(a)(4) and the Court's October 27 Order. In the October 27 Order, which applies to DHS officials like Mr. Bovino, the Court reiterated Local Criminal Rule 2.01(a)(2)(B)'s "non-exhaustive list of extra-judicial statements that [are] 'more likely than not to have a material prejudicial effect on a proceeding.'" (Dkt. 183 at 2 (quoting L. Crim. R. 2.01(a)(2)(B))). That list includes: "[t]he prior criminal record…, or the character or reputation of the accused," "[t]he fact that an accused has been charged with a crime, unless there is included therein a statement that the charge is merely an accusation and that the accused is presumed innocent unless and until proven guilty," and "[a]ny opinion as to the accused's guilt or innocence, or as to the evidence in the case." (*Id.*; *see also* Dkt. 182 at 6). As this Court has explained, Local Rule 2.01's restrictions are

6

designed to ensure that defendants like Mr. Abrego are "presumed innocent unless and until proven guilty beyond a reasonable doubt by a jury." (Dkt. 101 at 1).

Mr. Bovino's statements are the archetypal problematic statements this Court has prohibited. That's unsurprising, because these are the talking points used by the White House and DHS. On Fox News and Newsmax, Mr. Bovino stated that Mr. Abrego "was…an alien smuggler," a "wife-beater," and an "MS-13 gang member[]."[6] Those descriptions go both to Mr. Abrego's character and reputation and to his guilt or innocence in this case, where he is charged with human smuggling. Mr. Bovino, of course, failed to acknowledge that the allegations in the Indictment—including that Mr. Abrego is a gang member and human smuggler—are "merely an accusation," instead opining that Mr. Abrego should be taken "out of circulation" because he would go on "to harm Americans."[7] Moreover, Mr. Bovino flatly undermined these proceedings by criticizing the judges presiding over Mr. Abrego's criminal and civil cases as "activist" and "extremist."[8]

Mr. Bovino's statements are no different from the statements that this Court has already found to be "contrary to" Local Criminal Rule 2.01 and "more likely than not to have a material prejudicial effect on a proceeding." (Dkt. 182 at 6-7 (internal quotations and citation omitted)). In issuing the very order that Mr. Bovino violated, this Court held that statements that Mr. Abrego is an "MS-13 gang member, human trafficker, serial domestic abuser, and child predator," or that he "played 'a significant role in an alien smuggling ring'" run afoul of Local Criminal Rule 2.01. (*Id.* at 7 (internal quotations and citation omitted)). Mr. Bovino was fully on notice, therefore, that his statements were violative of the Court's order. If for some reason Mr. Bovino did not receive the

---

[6] Dec. 12, 2025 Fox News Interview, *supra* note 4; *see also* Dec. 14, 2025 NewsMax Interview, *supra* note 5.
[7] Dec. 12, 2025 Fox News Interview, *supra* note 4.
[8] Dec. 12, 2025 Fox News Interview, *supra* note 4 (referring to "activist judges"); Dec. 14, 2025 NewsMax Interview, *supra* note 5 (describing "an extremist judge, or judges, that legislate from the bench").

7

Court's October 27 Order, then the government violated the Order as well by failing to provide the Order to Mr. Bovino as the Court required.

The government's refusal to issue a retraction, or even to respond to counsel's correspondence raising Mr. Bovino's statements, evinces their utter disregard for this Court's Order. Although the retraction of an extrajudicial statement "has only a modest impact on the 'likelihood of prejudice' inquiry, it is considerably more relevant to the issue of willfulness." *United States v. Koubriti*, 305 F. Supp. 2d 723, 750 (E.D. Mich. 2003). In *Koubriti*, the court held that the Justice Department's "prompt retraction" of the Attorney General's prejudicial extrajudicial statement—just two days after the statement was made—suggested that the violation was "inadvertent rather than willful." *Id.* Furthermore, in *Koubriti*, the court's decision not to pursue contempt proceedings rested on a statement from the Attorney General in which he apologized for his remarks and described them as "a mistake," as well as on circumstances indicative of inadvertence, rather than willfulness. *Id.* at 748. Here, the government's decision to completely ignore defense counsel's request for a retraction shows the opposite.

Mr. Bovino's statements, which come on the heels of a long line of vitriolic and prejudicial statements on the part of the government, are just the latest in a longstanding pattern of governmental misconduct that jeopardizes Mr. Abrego's right to a fair trial. The jury pool continues to be exposed, within weeks of the current trial date, to highly prejudicial and false claims about Mr. Abrego. Mr. Bovino's statements are also likely to influence witness testimony by causing witnesses to fear that presenting any testimony that does not align with the government's theory of the case will put them at risk of retribution. *See United States v. Trump*, 88 F.4th 990, 1012-14 (D.C. Cir. 2023) (extrajudicial statements may "pose a significant and imminent threat to individuals' willingness to participate fully and candidly in the process, to the

content of their testimony and evidence, and to the trial's essential truth-finding function"); *see also Estes v. Texas*, 381 U.S. 532, 547 (1965) (publicity of proceedings "might render witnesses reluctant to appear and thereby impede the trial as well as the discovery of the truth").

This Court's October 27 Order was its second attempt to put an end to the government's use of prejudicial and inflammatory statements to aid in its retribution campaign against Mr. Abrego. (Dkt. 183; Dkt. 101). The government requested and obtained reconsideration of the Court's order on the basis that it should not be obliged to transmit the Order to every one of DHS's nearly 300,000 employees, many of whom work for FEMA, the TSA, the USSS, and the Coast Guard. (Dkt. 218 at 1). The Court's modification of its Order limited the government's obligation to transmit the Order (Dkt. 222 at 1; Dkt. 183), but not its scope. The order prohibits *all* DOJ and DHS employees, including Mr. Bovino—who works not for FEMA, the TSA, the USSS, or the Coast Guard, but for Customs and Border Patrol—from making extrajudicial statements that violate Local Criminal Rule 2.01. In the months since the Court issued its first Order requiring compliance with Local Criminal Rule 2.01, the government has had every opportunity to ensure DOJ and DHS employees comply with Local Rule 2.01. Its failure to do so reveals that our government believes it is more important to defame Mr. Abrego than to ensure his right a fair trial.

Federal courts have the authority to sanction parties for violations of Court orders under contempt statutes and pursuant to their inherent power. *Koubriti*, 305 F. Supp. 2d at 757. Under 18 U.S.C. § 401(3), a court has the "power to punish…[d]isobedience or resistance to its lawful writ, process, order, rule, decree, or command." Criminal contempt proceedings, which are initiated at the discretion of the court, are appropriate where a party violates "a specific court order addressed to the parties," where a party commits either a "single, particularly egregious violation" or "'repeated and flagrant abuses' that demonstrate a willful disregard for the court's authority,"

9

and where the party acts willfully in disregarding the court's authority. *United States v. Concord Mgmt. & Consulting LLC*, No. 18-CR-32-2 (DLF), 2019 WL 7758635, at *7 (D.D.C. July 1, 2019). Whereas the purpose of criminal contempt proceedings is "to vindicate the authority of the court," the purpose of civil contempt proceedings is remedial. *United States v. Bayshore Assocs., Inc.*, 934 F.2d 1391, 1400 (6th Cir. 1991) (quoting *Gompers v. Bucks Stove & Range Co.*, 221 U.S. 418, 441 (1911)). Civil contempt sanctions may be warranted where a party fails to make a reasonable attempt to comply with a court order of which they have notice. *Taggart v. Lorenzen*, 587 U.S. 554, 561 (2019). Finally, "[i]t has long been recognized that federal courts have the inherent power to discipline attorneys who violate their orders, separate and apart from their authority under the contempt statutes." *Koubriti*, 305 F. Supp. 2d at 757. In *Koubriti*, for example, the Court formally admonished the Attorney General for extrajudicial statements about the defendant, notwithstanding the Justice Department's prompt retraction of those statements, the Attorney General's "personal apology to the Court and counsel," and the court's finding that the statements did not cause the defendant prejudice. *Id.* at 757-59, 765.

Any or all of these sanctions, as well as other case-related relief, may be appropriate here. Since this Court's extrajudicial statements Order issued on October 27, 2025, the government has been on notice that violations of Local Criminal Rule 2.01 may result in sanctions. The Court's October 27 opinion explained that "any future statements that pose a clear and present danger to [Mr.] Abrego's fair trial rights may subject the speaker to sanctions." (Dkt. 182 at 7-8 (citing *United States v. Brinley*, 684 F.3d 629, 634 (6th Cir. 2012) (holding that a district court's local rules carry the "force of law."); *see* Dkt. 183 at 3).

At this stage, sanctions and other case-related relief are warranted for the government's blatant violation of this Court's Order. On October 27, this Court specifically ordered DHS

officials to comply with Local Criminal Rule 2.01. (Dkt. 183 at 2-3; *see also* Dkt. 101 at 1). Either the government shared the Court's Order with Mr. Bovino and he violated it, or the government violated the Court's order by failing to share it with Mr. Bovino. There is no reason to believe that, absent sanctions, the government will comply with a future Order reiterating what this Court has already held. Before the Court can determine what sanctions are appropriate here, however, the government should be directed to disclose to the defense and the Court whether and how the prosecution provided Mr. Bovino with a copy of this Court's Order, who gave Mr. Bovino authorization to speak about Mr. Abrego's case and what guidance Mr. Bovino was given about those statements, and any and all communications between counsel for the government and Mr. Bovino or DHS regarding Mr. Bovino's statements, including any attempts to obtain a retraction or apology. It is particularly important for the government to disclose the process through which Mr. Bovino was authorized to speak about Mr. Abrego's case because the government's very choice to permit Mr. Bovino to make statements about Mr. Abrego suggests a disregard for this Court's extrajudicial statements Order.

## CONCLUSION

Mr. Abrego respectfully requests that the Court order the government to disclose: (1) whether and how the prosecution provided Mr. Bovino with a copy of this Court's Order, (2) who authorized Mr. Bovino to speak about Mr. Abrego's case, and (3) what guidance that person or persons gave Mr. Bovino about what he could and could not say on national television, as well as any and all communications between counsel for the government and Mr. Bovino or DHS regarding Mr. Bovino's statements, including any attempts to obtain a retraction or apology, so that the Court may determine the appropriate course of action.

Dated: December 19, 2025       Respectfully submitted,
     New York, New York

                                          /s/ Sean Hecker
Sean Hecker*
Jenna M. Dabbs*
David Patton*
HECKER FINK LLP
350 Fifth Avenue, 63rd Floor
New York, NY 10118
Telephone: (212) 763-0883
Fax: (212) 564-0883
shecker@heckerfink.com
jdabbs@heckerfink.com
dpatton@heckerfink.com

* admitted *pro hac vice*

Rascoe Dean (No. 034209)
SHERRARD ROE VOIGT & HARBISON PLLC
1600 West End Avenue, Suite 1750
Nashville, Tennessee 37203
Telephone: (615) 742-4200
Fax: (615) 742-4539
rdean@srvhlaw.com

*Counsel for Defendant Kilmar Armando Abrego Garcia*

12

Case 3:25-cr-00115    Document 271    Filed 12/19/25    Page 13 of 14 PageID #: 4585

## CERTIFICATE OF SERVICE

I hereby certify that on December 19, 2025, I electronically filed the foregoing document with the clerk of the court by using the CM/ECF system, which will send a notice of Electronic Filing to the following: Acting United States Attorney, Robert E. McGuire, 719 Church Street, Suite 3300, Nashville, Tennessee 37203; Assistant United States Attorney, Jason Harley, 210 Park Avenue, Suite 400, Oklahoma City, Oklahoma 73102; Associate Attorney General Stanley E. Woodward, Jr., 950 Pennsylvania Avenue NW, Washington, D.C. 20530.

    /s/ Sean Hecker

13

Case 3:25-cr-00115   Document 271   Filed 12/19/25   Page 14 of 14 PageID #: 4586