**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF TENNESSEE**

UNITED STATES OF AMERICA

v.

KILMAR ARMANDO ABREGO GARCIA,

*Defendant.*

No. 3:25-cr-115

Judge Waverly D. Crenshaw, Jr.

**DEFENDANT KILMAR ARMANDO ABREGO GARCIA'S**
**SUPPLEMENTAL BRIEF ON UNITED STATES'**
**MOTION TO QUASH**

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ..........................................................................................................ii

PRELIMINARY STATEMENT ................................................................................................ 1

BACKGROUND ...................................................................................................................... 4

ARGUMENT .......................................................................................................................... 10

    I.   The Court Should Dismiss the Indictment on the Current Record ............................... 10

        A.  The Record Demonstrates Actual Vindictiveness .................................................. 11

        B.  The Government Cannot Rebut the Presumption of Vindictiveness ...................... 15

    II.  At a Minimum, The Court Should Deny the Motions to Quash ................................... 17

CONCLUSION ....................................................................................................................... 21

## TABLE OF AUTHORITIES

**CASES**

*Abrego Garcia v. Noem*,
No. 8:25-cv-2780, 2025 WL 3545447 (D. Md. Dec. 11, 2025) .................................. 4, 20

*Abrego Garcia v. Noem*,
No. 25-1345, 2025 WL 1021113 (4th Cir. Apr. 7, 2025) ................................ 20

*Bragan v. Poindexter*,
249 F.3d 476 (6th Cir. 2001) ..................................................................... 11, 16

*In re Grand Jury Subpoena Duces Tecum*,
112 F.3d 910 (8th Cir. 1997) ..................................................................... 19

*Ross v. City of Memphis*,
423 F.3d 596 (6th Cir. 2005) ..................................................................... 19

*Trump v. Vance*,
591 U.S. 786 (2020) .................................................................................. 20

*United States v. Andrews*,
633 F.2d 449 (6th Cir. 1980) ..................................................................... 12, 16

*United States v. Dupree*,
323 F.3d 480 (6th Cir. 2003) ..................................................................... 11

*United States v. Howell*,
17 F.4th 673 (6th Cir. 2021) ..................................................................... 16

*United States v. Koh*,
199 F.3d 632 (2d Cir. 1999) ...................................................................... 14

*United States v. LaDeau*,
734 F.3d 561 (6th Cir. 2013) ..................................................................... 11, 19

*United States v. Nixon*,
418 U.S. 683 (1974) .................................................................................. 20

*United States v. Pate*,
No. 3:09-CR-00106, 2024 WL 1773996 (M.D. Tenn. Apr. 24, 2024) ........................... 17

*United States v. Velsicol Chem. Corp.*,
498 F. Supp. 1255 (D.D.C. 1980) .............................................................. 12

*United States v. Zakhari,*
    85 F.4th 367 (6th Cir. 2023) ............................................................... 16, 17, 19

*In re Witness Before Special Grand Jury 2000-2,*
    288 F.3d 289 (7th Cir. 2002) ..................................................................... 19

**OTHER AUTHORITIES**

Chris Whipple, *Susie Wiles Talks Epstein Files, Pete Hegseth's War Tactics,*
    *Retribution, and More (Part 2 of 2)*, Vanity Fair (Dec. 16, 2025),
    https://www.vanityfair.com/news/story/trump-susie-wiles-interview-
    exclusive-part-2 ............................................................................................. 2

Glenn Thrush, *Justice Dept. Accuses Top Immigration Lawyer of Failing to Follow*
    *Orders*, N.Y. Times (Apr. 5, 2025),
    https://www.nytimes.com/2025/04/05/us/politics/justice-dept-immigration-
    lawyer-leave.html ........................................................................................ 14

Government Accountability Project, *Protected Whistleblower Disclosure of Erez*
    *Reuveni Regarding Violation of Laws, Rules Regulations, Abuse of Authority,*
    *and Substantial and Specific Danger to Health and Safety at the Department*
    *of Justice* (June 24, 2025),
    https://www.judiciary.senate.gov/imo/media/doc/06-24-2025_-
    _Protected_Whistleblower_Disclosure_of_Erez_Reuveni_Redacted.pdf ...................... 12

*Kilmar Abrego Garcia was indicted on 'very serious' charges, US deputy attorney*
    *general says*, Fox News (June 6, 2025),
    https://www.foxnews.com/video/6373969491112 .................................. 1, 4, 11

Memorandum From the Attorney General, *General Policy Regarding Zealous*
    *Advocacy on Behalf of the United States* (Feb. 5, 2025),
    https://www.justice.gov/ag/media/1388521/dl?inline ..................................... 14

Perry Stein et al., *Several top career officials ousted at Justice Department*, Wash.
    Post (Mar. 7, 2025), https://www.washingtonpost.com/national-
    security/2025/03/07/justice-department-trump-firings/ ................................... 15

Rebecca Falconer, *Reports: White House ordered firing of 2 DOJ prosecutors*, Axios
    (Mar. 30, 2025), https://www.axios.com/2025/03/31/trump-doj-prosecutors-
    fired .............................................................................................................. 15

Ryan J. Reilly, *White House terminates top federal prosecutors amid DOJ, FBI*
    *purge*, NBC News (Feb. 13, 2025), https://www.nbcnews.com/politics/justice-
    department/white-house-terminates-top-federal-prosecutors-doj-fbi-purge-
    rcna192008 ................................................................................................... 15

Sarah N. Lynch & John Kruzel, *Trump Justice Department fires heads of organized crime drug task force,* Reuters (Mar. 10, 2025), https://www.reuters.com/world/us/trump-justice-department-fires-head-organized-crime-drug-task-force-2025-03-08/ ............................................................... 15

Steven Hale, *How Rob McGuire Accidentally Became the U.S. Attorney for Middle Tennessee*, Nashville Banner (Feb. 20, 2025), https://nashvillebanner.com/2025/02/20/acting-us-attorney-rob-mcguire/ ..................... 15

# PRELIMINARY STATEMENT

For months, the government has insisted that this is not a vindictive prosecution because Acting U.S. Attorney Robert McGuire *alone* made the decision to charge Kilmar Armando Abrego Garcia after he challenged his unlawful deportation to El Salvador. Six lawyers for the government—including the Associate Attorney General of the United States Stanley Woodward and Acting U.S. Attorney McGuire—signed a brief averring that "undisputed evidence shows that there is *no link* between the Office of the Deputy Attorney General and the decision to prosecute." (Dkt. 199 at 2 (emphasis in original)). The government has repeatedly claimed—sometimes under penalty of perjury—that the buck stopped with Mr. McGuire. That claim, it turns out, was false. It remains unknown where the buck actually stopped—the Deputy Attorney General? The Attorney General? The White House? We may never know. But what we do know, from documents the defense and the Court had to pry out of the government's hands, is that the government deceived the Court, the defense, and the public about Mr. McGuire's purported status as the sole decisionmaker. Put bluntly, numerous government lawyers chose to mislead this Court in order to try to save this unjust prosecution.

Months ago now, this Court recognized that Deputy Attorney General Todd Blanche's "remarkable" admission that this case was brought because "a judge in Maryland…questioned" the government's decision to deport Mr. Abrego and "accus[ed] us of doing something wrong"[1] may "come close to establishing actual vindictiveness." (Dkt. 138 at 7-8). The only thing the Court found missing from the record was evidence "tying [Mr. Blanche's statements] to actual decisionmakers." (*Id.* at 8). Not anymore. Previously, the Court rightly wondered who placed this

---

[1] *Kilmar Abrego Garcia was indicted on 'very serious' charges, US deputy attorney general says*, Fox News (June 6, 2025), https://www.foxnews.com/video/6373969491112.

case on Mr. McGuire's desk and what their motivations were. (Dkt. 185 at 2). We now know: it was Mr. Blanche and his office, the Office of the Deputy Attorney General, or "ODAG." On April 30, 2025, just three days after Mr. McGuire personally took on this case, one of Mr. Blanche's chief aides, Associate Deputy Attorney General Aakash Singh, told Mr. McGuire that this case was a ██████████████[2] (Abrego-Garcia000007). That same day, Mr. Singh asked Mr. McGuire: ████████████████████████████ (Abrego-Garcia000008). Mr. McGuire responded with a timing update, saying he wanted to ██████████████████ about a strategic question, and assuring Mr. Singh ████████████████████████ and ████████████████████████ (Abrego-Garcia000008). These communications and others show, as the Court put it, that ██████████████████ and ██████████████████ ██████████████████ (Dkt. 241 at 5, 7). The "remarkable" statements "com[ing] close" to establishing vindictiveness (Dkt. 138 at 7-8) came from the same place— ODAG—as the instructions to Mr. McGuire to charge this case. The only "independent" decision (Dkt. 199 at 1) Mr. McGuire made was whether to acquiesce in ODAG's directive to charge this case, or risk forfeiting his job as Acting U.S. Attorney—and perhaps his employment with the Department of Justice—for refusing to do the political bidding of an Executive Branch that is avowedly using prosecutorial power for "score settling."[3]

---

[2] The Court's December 3 opinion (Dkt. 241) remains sealed, and the discovery produced to the defense in connection with Mr. Abrego's motion to dismiss for vindictive and selective prosecution was provided pursuant to a protective order requiring that "[a]ny filing of discovery materials must be done under seal pending further orders of this Court" (Dkt. 77 at 2). Although the defense does not believe that any of these materials should be sealed for the reasons stated in Mr. Abrego's memorandum of law regarding sealing (Dkt. 264), the defense is publicly filing a redacted version of this brief out of an abundance of caution pending further orders of the Court.

[3] *See* Chris Whipple, *Susie Wiles Talks Epstein Files, Pete Hegseth's War Tactics, Retribution, and More (Part 2 of 2)*, Vanity Fair (Dec. 16, 2025), https://www.vanityfair.com/news/story/trump-susie-wiles-interview-exclusive-part-2.

Incredibly, after all of this, the government continues to seek to quash subpoenas for Mr. Blanche, Mr. Singh, and Acting Principal Associate Deputy Attorney General James McHenry. (Dkt. 263). It claims—contrary to the discovery and the Court's findings—that their testimony is "irrelevant." (*Id.* at 1). It asserts—having changed its story when it could no longer maintain the fiction—that ODAG's unusual role in this prosecution was mere "appropriate oversight." (*Id.* at 2). It protests that their testimony is shielded by blanket assertions of privilege which the Court has already repeatedly rejected. And it clings to "the separation of powers" to shield these senior government lawyers from having to come to court. (*Id.* at 4).

But none of these arguments can change what is plain for all to see: this is a vindictive prosecution that must be dismissed. The record as it now stands compels dismissal. This Court has already found that Mr. Blanche's "remarkable statements" "come close to establishing actual vindictiveness," and the government's own documents produced in discovery establish the "inference tying [those statements] to actual decisionmakers"—Mr. Blanche's own office and Mr. McGuire. (Dkt. 138 at 7-8). Nor, given the Court's preliminary findings, can the government rebut Mr. Abrego's *prima facie* showing of vindictiveness without the testimony of Mr. Blanche and his deputies. Because the government continues to resist providing any meaningful evidence necessary to rebut the presumption, there is no need for an evidentiary hearing. The Court should simply dismiss this case. Alternatively, if the government will not call the necessary witnesses, then the Court should allow the defense to do so by denying the motion to quash and compelling Mr. Blanche, Mr. Singh, and Mr. McHenry to testify about how and why they set this prosecution in motion.[4]

---

[4] Because it appears that the government has not produced a single internal communication within ODAG, or communications between ODAG and the White House, to the Court for *in camera* review (and the government still refuses to produce the privilege log Associate Attorney General

## BACKGROUND

The Court is by now well-versed in the "extraordinary" and "tortured history" of Mr. Abrego's case. *Abrego Garcia v. Noem*, No. 8:25-cv-2780, 2025 WL 3545447, at 1, 15 (D. Md. Dec. 11, 2025). We detail here the facts relevant to the need—or lack thereof—for an evidentiary hearing on his motion to dismiss for vindictive and selective prosecution and the government's motion to quash, as further informed by the very limited discovery produced to the defense.

On October 3, 2025, the Court found that Mr. Abrego had established "a realistic likelihood of vindictiveness," which the government bore the burden of rebutting with "objective, on-the-record explanations." (Dkt. 138 at 8, 15 (citations omitted)). That finding was based on the government's "timeline" in prosecuting this case—unlawfully deporting Mr. Abrego to El Salvador without bringing charges after two years of fruitlessly investigating him and indicting him only after he challenged his deportation—which suggested that Mr. Abrego had been criminally charged "in retaliation for his Maryland lawsuit." (*Id.* at 13-14). It was also based on the numerous public statements of Department of Homeland Security ("DHS") and Department of Justice ("DOJ") officials about Mr. Abrego and this case. (*Id.* at 4-6).

One of those statements, in the Court's view, "stands out amongst the rest." (*Id.* at 7). On June 6, 2025, the day the Indictment was unsealed, Deputy Attorney General Blanche said on national television that the government began "investigating" Mr. Abrego "after a judge in Maryland…questioned" the government's decision to deport him, found it "had no right to deport him," and "accus[ed] us of doing something wrong."[5] Mr. Blanche stated, in no uncertain terms,

---

Woodward promised over a month ago), the defense respectfully reserves the right to move to compel the production of additional documents should the Court determine that an evidentiary hearing remains necessary.

[5] *Kilmar Abrego Garcia was indicted on 'very serious' charges, US deputy attorney general says*, Fox News (June 6, 2025), https://www.foxnews.com/video/6373969491112.

that "the criminal case was brought to return Abrego to the United States, 'not [because of] a Judge,' but instead, because of 'an arrest warrant issued by a grand jury in the Middle District of Tennessee.'" (Dkt. 138 at 7 (quoting Mr. Blanche's June 6 statements)). The Court found that these "remarkable statements" could be "direct evidence of vindictiveness" and "may come close to establishing actual vindictiveness." (*Id.* at 7-8). But the Court reserved decision pending discovery and a hearing on Mr. Abrego's showing of a realistic likelihood of vindictiveness. (*Id.* at 8).

In resisting the Court's findings and its subsequent orders to produce discovery, the government has repeatedly assured the Court and the defense that this prosecution was not vindictive because the decision to charge Mr. Abrego was made exclusively by Mr. McGuire, who harbored no improper motives or animus toward Mr. Abrego. (*See, e.g.*, Dkt. 121). On September 15, 2025, in an affidavit attached to the government's opposition to Mr. Abrego's motion to dismiss, Mr. McGuire and other government lawyers collectively stated that Mr. McGuire began working on this case on April 27, 2025, after he received a call from Homeland Security Investigations ("HSI") Nashville Special Agent in Charge Rana Saoud. (Dkt. 121-1 at ¶ 4). This collective affidavit did not acknowledge the attorneys having any interactions with the Office of the Deputy Attorney General concerning this case, other than that they "never received any direction from the Office of the Attorney General or the Office of the Deputy General [sic], or any other attorney at Main Justice, that was unethical or inappropriate." (*Id.* ¶ 48). They also asserted that "[d]uring May 2025, after reviewing the evidence in this case…, Mr. McGuire became firmly convinced that, at trial, he could prove beyond a reasonable doubt that Abrego Garcia committed" the charged alien smuggling crimes, and subsequently presented the indictment to a Nashville grand jury. (*Id.* ¶¶ 16-17).

On October 22, 2025, in opposing the defense's motion to compel, Mr. McGuire made similar representations. In a supplemental affidavit that he alone signed, Mr. McGuire stated that he "received no direction from…the Department of Justice…on the question of whether to seek or not to seek an indictment in this case." (Dkt. 178-1 at ¶ 4). He added that he had "no correspondence (email, text, call, letter, etc.) with…the Attorney General, the Office of the Attorney General, the Deputy Attorney General, or the then-Principal Associate Deputy Attorney General (now Judge Emil Bove) about this prosecution"—conveniently omitting reference to the *Office of the* Deputy Attorney General. (*Id.* ¶ 2). And he said that he "ultimately made the decision on whether to seek an indictment in this case based on [his] belief that the defendant had committed a federal crime and that [he] could prove his guilt beyond a reasonable doubt." (*Id.* ¶ 5).

On October 27, 2025, the government moved to quash the defense's subpoenas for the testimony of Mr. Blanche, Mr. Singh, and Mr. McHenry. In so doing, the government continued to peddle the same narrative. (Dkt. 181). The government insisted that these witnesses' testimony was not relevant because "the actual decisionmaker, the Acting U.S. Attorney,…has stated under oath that he received no direction from the Deputy Attorney General or the Office of the Deputy Attorney General (ODAG) on whether to indict the present case." (*Id.* at 2). The government mocked the defense for issuing subpoenas "based on nothing more than speculation" because the defense "has no evidence that any such directives [from ODAG] were made." (*Id.* at 3). And in its reply brief in support of its motion to quash, the government doubled down, asserting that there was "*no link* between the Office of the Deputy Attorney General and the decision to prosecute." (Dkt. 199 at 2 (emphasis in original)). The government maintained, once again, that Mr. McGuire had "ma[de] an independent charging decision" and had "stated under oath that he received no direction from the Deputy Attorney General or his office or anyone else in DOJ on the decision to

prosecute." (*Id.* at 1-2). The government went so far as to tell the Court that the "evidence shows" that ODAG was "not involved" in Mr. Abrego's prosecution. (*Id.* at 3 n.1).

On December 3, 2025, the government's narrative was exposed as fiction. Its web of false representations to the Court collapsed with just 20-odd pages of its own records that it was forced to produce to the defense, most of which were in the possession of Mr. McGuire from day one. (*See* Dkt. 241).

These documents show that, on April 27, 2025, at 6:39 p.m., the same evening that Mr. McGuire told the Court this case landed on his desk when he received a call from Ms. Saoud, he in fact *also* received an email from the Office of the Deputy Attorney General. Specifically, Mr. Singh emailed Mr. McGuire, ███████████████████████████ (Abrego-Garcia000001). Mr. Singh included the United States Attorneys in the Southern District of Texas and the Northern District of Alabama on this request, strong evidence that ODAG was behind the inception of this prosecution as it coordinated among Mr. McGuire's peers, all of whom reported to Mr. Blanche. On April 28, Mr. Singh ████████████████████████████ ████████████████████████████████████████ from the Acting Assistant Director of HSI Domestic Operations. The HSI official's email contained no other context than ███████████████ making plain that it was a response to a request from Mr. Singh. (Abrego-Garcia002927).

In the days immediately after Mr. Singh's outreach, Mr. McGuire kept him abreast of his efforts to charge Mr. Abrego, while Mr. Singh in turn directed Mr. McGuire. (Abrego-Garcia000007). On the morning of April 30, Mr. McGuire sent an update to Mr. Singh and others ████████████████████████████ Mr. McGuire told Mr. Singh that he and Jacob Warren, a director of Joint Task Force Vulcan, were going to have a call that day to



[REDACTED] and that they believed they could [REDACTED] assuring Mr. Singh that [REDACTED] (Abrego-Garcia000003).

Later that day, Mr. Singh asked Mr. McGuire [REDACTED] and requested a [REDACTED] (Abrego-Garcia000008). An hour later, Mr. McGuire responded [REDACTED] and explained that his [REDACTED] (*Id.*). Mr. McGuire agreed with Mr. Singh that he wanted [REDACTED] (*Id.*). Again, Mr. McGuire assured Mr. Singh that [REDACTED] (*Id.*). Mr. Singh then [REDACTED] (Dkt. 241 at 7 (citing Abrego-Garcia000007-000008)). Mr. McGuire replied that [REDACTED] (Abrego-Garcia000007)—which is exactly what was filed in this case, [REDACTED] That evening, Mr. Singh thanked Mr. McGuire, [REDACTED], and [REDACTED] (Dkt. 241 at 7 (quoting Abrego-Garcia000007)).

Mr. McGuire's communications with Mr. Singh on April 30 show that, at that point, he had committed to pressing forward with prosecuting Mr. Abrego alongside Mr. Singh. Indeed, he knew within days of this case landing on his desk that charging Mr. Abrego was a [REDACTED] for

Mr. Blanche's office. And he affirmatively sought the involvement of the ████████████—ODAG—in making that decision.

Mr. McGuire expressed as much to the leadership team of his office. On May 15, he circulated ██████████████████████ to the leadership team of the U.S. Attorney's Office for the Middle District of Tennessee, including former chief of the criminal division Ben Schrader, for their review. (Abrego-Garcia000060-000061). Mr. McGuire told them that he wanted ████████████████████████████████████████████████ and that ████████████████████████████ ████████████████ (Abrego-Garcia000060-000061). Mr. Schrader responded with a ████████████████████████████████████ and requested that Mr. McGuire ████████████████████████[6] (Abrego-Garcia000060 (emphasis in original)). Mr. Schrader resigned days later.

Whatever Mr. Schrader's memorandum said made no difference as Mr. McGuire and Mr. Warren pressed ahead, working hand in glove with Mr. Singh's office in the days leading up to Mr. Abrego's May 21 indictment. On May 17, Mr. Warren emailed Mr. Singh with another update, informing him that they were working to ████████████████████████ ████████████████████████ (Abrego-Garcia000018). Per their ████████████ Mr. Warren told Mr. Singh that ████████████████████████ ████████████████ and asked Mr. Singh to ████████████████ ████████████████ (Id.). Mr. Warren also asked Mr. Singh to let them know ████ ████████████████████████████████████████████

---

[6] This memorandum was not produced to the defense. Because the government has yet to provide the defense with the privilege log it committed to producing, the defense does not know whether the government submitted this memorandum to the Court for *in camera* review.

█████████████████████████████████████████████ (Abrego-Garcia000018-000019).

On May 18, Mr. Singh instructed Mr. McGuire and Mr. Warren to ██████████████████

████████████████████ (Abrego-Garcia000018)—the implication of which, as the

Court has explained, █████████████████████████████████████████████████

███████████████████ (Dkt. 241 at 8). On May 20, Mr. Singh followed up asking for a ██

████████ (Abrego-Garcia000023). Mr. Abrego was indicted the next day.

In ordering the production of these documents to the defense, the Court explained that they

████████████████████████████████████████████████████

██████████████████████████████ (Dkt. 241 at 7). The documents ██████████

█████████████████████████████████████████████████

█████████████████████████████████████

███████████████████████ (*Id.* at 4-5). And these documents █████████

█████████████████████████████████████████████████

████████████████████ (*Id.* at 5). Given Mr. Abrego's ██████████

██████████████████ in moving to dismiss this case, the Court held these documents had

to be disclosed to the defense. (*Id.* at 8). In light of that disclosure, the Court ordered supplemental

briefing on the government's pending motion to quash. (*Id.*).

<u>**ARGUMENT**</u>

**I.** **The Court Should Dismiss the Indictment on the Current Record**

The Court has identified the following question as central to its resolution of Mr. Abrego's

motion to dismiss: "how did Abrego's case arrive on [Mr. McGuire's] desk and why did it show

up on April 27, 2025, when the case had previously been closed by DHS on April 1, 2025?" (Dkt.

185 at 2). Despite the government's brazen efforts to mislead the Court, the answer to this question

is now obvious: this case landed on Mr. McGuire's desk because Mr. Blanche's deputy, Mr. Singh,

who we now know had a ██████████████████████████████ placed it there.

(Dkt. 241 at 5). Remarkably, the government still seeks to avoid producing Mr. Blanche, Mr. Singh, or Mr. McHenry to testify at an evidentiary hearing to answer this Court's questions about their own motivations, insisting in its supplemental brief that its position has "not changed." (Dkt. 263 at 1). That is troubling (if no longer surprising) given that even the slim documentary record the government has produced establishes their central relevance here. But the most straightforward answer is simply to skip the hearing entirely. The record as it stands is far more than sufficient to require dismissal of the Indictment. There is now clear evidence of actual vindictiveness. And even if there were not, the government would be unable to rebut the presumption of vindictiveness that Mr. Abrego has established given its steadfast refusal to make Mr. Blanche, Mr. Singh, or Mr. McHenry available at a hearing.

## A. The Record Demonstrates Actual Vindictiveness

A defendant can obtain dismissal of an indictment by presenting "objective evidence that a prosecutor acted in order to punish the defendant for standing on his legal rights." *United States v. LaDeau*, 734 F.3d 561, 566 (6th Cir. 2013) (quoting *United States v. Dupree*, 323 F.3d 480, 489 (6th Cir. 2003)). Although it is "exceedingly difficult to make" a showing of actual vindictiveness, *Bragan v. Poindexter*, 249 F.3d 476, 481 (6th Cir. 2001), this Court has found that Mr. Blanche's "remarkable statements" on June 6 "may come close to establishing actual vindictiveness." (Dkt. 138 at 7-8). Specifically, Mr. Blanche told the public that the government started "investigating" Mr. Abrego "after a judge in Maryland…questioned" its decision to deport him, found that it "had no right to deport him," and "accus[ed] us of doing something wrong."[7] These statements, the

---

[7] *Kilmar Abrego Garcia was indicted on 'very serious' charges, US deputy attorney general says*, Fox News (June 6, 2025), https://www.foxnews.com/video/6373969491112.

Court explained, "could directly establish that the motivations for Abrego's criminal charges stem from his exercise of his constitutional and statutory rights to bring suit against the Executive Official Defendants, rather than a genuine desire to prosecute him for alleged criminal misconduct." (Dkt. 138 at 7-8). Indeed, Mr. Blanche's statements are exactly the kind of "actual confession by the prosecutor" (*id.* at 8 (quoting *United States v. Andrews*, 633 F.2d 449, 454 (6th Cir. 1980))) that the Sixth Circuit has suggested makes out the "clearest possible case of prosecutorial vindictiveness." (*Id.*). *See also United States v. Velsicol Chem. Corp.*, 498 F. Supp. 1255, 1265-66 (D.D.C. 1980) (finding actual vindictiveness where prosecutor "clearly expressed his intent and motivation" in bringing charges). What was missing, in the Court's view, was an "inference tying [Mr. Blanche's statements] to actual decisionmakers." (Dkt. 138 at 8).

There is now little need to draw an inference. The documents produced to the defense clearly tie Mr. Blanche and his office to the decision to charge this case. Mr. Blanche's office was not only involved in the decision to charge Mr. Abrego but actively pushed for his indictment as a ███████ (Abrego-Garcia000007). That is unsurprising, because another member of Mr. Blanche's staff, Mr. McHenry, had been supervising Mr. Abrego's civil case just two weeks before the investigation into Mr. Abrego was reopened, as the government was conjuring up arguments to avoid a ruling that would hold it accountable for unlawfully deporting Mr. Abrego.[8] It was Mr. Singh who then reached out to Mr. McGuire on April 27, along with two other United States

---

[8] *See* Gov't Accountability Project, Protected Whistleblower Disclosure of Erez Reuveni Regarding Violation of Laws, Rules & Regulations, Abuse of Authority, and Substantial and Specific Danger to Health and Safety at the Department of Justice 23 (June 24, 2025), https://www.judiciary.senate.gov/imo/media/doc/06-24-2025_-_Protected_Whistleblower_Disclosure_of_Erez_Reuveni_Redacted.pdf (describing Mr. McHenry's role, which included instructing Erez Reuveni "to stop asking for facts supporting any possible defense of the case" and "that no 'asks' of El Salvador of any sort should be made" in litigating Mr. Abrego's civil case).

Attorneys, ██████████████████████████████ At the same time, Mr. Singh was

apparently conducting his own investigation, ███████████████████ from HSI

the very next day. It was Mr. Singh who asked ████████████████████████████

three days after Mr. McGuire began working on it, who directed Mr. McGuire ██████████,

and who insisted ████████████████████████████████████████████████

████████████████████ Mr. McGuire and Mr. Warren heard the message from ODAG loud

and clear. As did Mr. Schrader, who chose to resign rather than do ODAG's bidding. But

Mr. McGuire and Mr. Warren ████████████████████████████████████

████████████ asking for ███████████████████████████████████,

███████████████████████, and ████████████████████████████

█████████ And just three days before the indictment was ultimately presented to the grand

jury, Mr. Singh instructed Mr. McGuire and Mr. Warren to ██████████████████████

█████████████████—████████ that presumably could come only from

Mr. Singh's boss, Mr. Blanche. (Dkt. 241 at 8 (quoting Abrego-Garcia000018)).

    The government's documents establish that the decision to prosecute Mr. Abrego was not

Mr. McGuire's to make ████████ but was, at the very least, █████████ with ODAG. (Dkt. 241 at 7).

As the Court has explained, these documents ████████████████████ because Mr. Singh, who

had a ██████████████ in the decision to prosecute, ██████████████████ (*Id.* at 4-5). Mr.

McGuire's highly unusual communications with Mr. Singh show that, just three days after this

case landed on his desk, he resolved to go along with ODAG's instructions to pursue this case. Mr.

McGuire was thus prevailed upon by Mr. Blanche's office to charge Mr. Abrego in this district—

not "unknowingly,"[9] but with full awareness that this case was a ▮▮▮▮▮ for ODAG, or the ▮▮▮▮▮▮▮ as Mr. McGuire put it. *See United States v. Koh*, 199 F.3d 632, 640 (2d Cir. 1999) (actual vindictiveness established where "the prosecutor harbored genuine animus toward the defendant, or was prevailed upon to bring the charges by another with animus").

And the surrounding context explains how and why DOJ leadership succeeded in prevailing upon Mr. McGuire. Just three weeks before Mr. Singh reached out to Mr. McGuire, Erez Reuveni, the former Acting Deputy Director for the Office of Immigration Litigation, was placed on leave and then fired for refusing to parrot baseless arguments justifying Mr. Abrego's unlawful removal before Judge Xinis. Attorney General Bondi issued a statement in connection with his placement on leave, warning "every Department of Justice attorney" that they would "face consequences" if they failed to "zealously advocate on behalf of the United States."[10] As Attorney General Bondi had made clear in a memorandum issued the day she was sworn into office, her warning was not limited to making "good-faith arguments on behalf of the Administration," but also included the threat of termination for any DOJ attorney who "otherwise delays or impedes the Department's mission."[11] Thus, Mr. McGuire—who stated just days after the Attorney General

---

[9] In previous filings, the defense gave Mr. McGuire the benefit of the doubt, adopting the Court's suggestion that senior DOJ and DHS officials may have "induced Acting U.S. Attorney McGuire (*albeit unknowingly*) to criminally charge Abrego in retaliation for his Maryland lawsuit." (Dkt. 138 at 13 (emphasis added); *see, e.g.*, Dkt. 180 at 2). But that framing presumed the truth of his representations to the Court that he received "no direction" from anyone to charge this case. Those representations are belied by his own emails.

[10] Glenn Thrush, *Justice Dept. Accuses Top Immigration Lawyer of Failing to Follow Orders*, N.Y. Times (Apr. 5, 2025), https://www.nytimes.com/2025/04/05/us/politics/justice-dept-immigration-lawyer-leave.html.

[11] Memorandum From the Attorney General, *General Policy Regarding Zealous Advocacy on Behalf of the United States* (Feb. 5, 2025), https://www.justice.gov/ag/media/1388521/dl?inline.

issued her memorandum that he didn't "want to leave the Department of Justice"[12]—undoubtedly understood the consequences he faced if he refused ODAG's direction to pursue this case. Indeed, by the time Mr. Singh contacted Mr. McGuire, the White House and DOJ had fired over a dozen United States Attorneys and other senior DOJ attorneys.[13]

This record leaves no doubt that this prosecution was directed by Mr. Blanche, whose retaliatory motives are already a matter of public record. And were there any shred of doubt remaining, it would be squarely refuted by the government's misleading of the Court in stating that Mr. McGuire received "no direction" from ODAG on the decision to prosecute—which the government peddled in furtherance of its effort to avoid producing the very discovery that exposed the truth about the source of this prosecution.

Because the record clearly establishes actual vindictiveness by the government in prosecuting this case, the Indictment must be dismissed.

**B.      The Government Cannot Rebut the Presumption of Vindictiveness**

Were the record insufficient to prove actual vindictiveness, dismissal of the indictment would still be necessary because the government's position on the defense's subpoenas cannot be squared with meeting its burden to rebut Mr. Abrego's *prima facie* case of vindictiveness. Having

---

[12] Steven Hale, *How Rob McGuire Accidentally Became the U.S. Attorney for Middle Tennessee*, Nashville Banner (Feb. 20, 2025), https://nashvillebanner.com/2025/02/20/acting-us-attorney-rob-mcguire/.

[13] *See* Ryan J. Reilly, *White House terminates top federal prosecutors amid DOJ, FBI purge*, NBC News (Feb. 13, 2025), https://www.nbcnews.com/politics/justice-department/white-house-terminates-top-federal-prosecutors-doj-fbi-purge-rcna192008; Perry Stein et al., *Several top career officials ousted at Justice Department*, Wash. Post (Mar. 7, 2025), https://www.washingtonpost.com/national-security/2025/03/07/justice-department-trump-firings/; Sarah N. Lynch & John Kruzel, *Trump Justice Department fires heads of organized crime drug task force*, Reuters (Mar. 10, 2025), https://www.reuters.com/world/us/trump-justice-department-fires-head-organized-crime-drug-task-force-2025-03-08/; Rebecca Falconer, *Reports: White House ordered firing of 2 DOJ prosecutors*, Axios (Mar. 30, 2025), https://www.axios.com/2025/03/31/trump-doj-prosecutors-fired.

made that showing, Mr. Abrego has shifted the burden to the government to rebut the presumption of vindictiveness, which the government can do only by providing "objective, on-the-record explanations" establishing that this case was brought based on legitimate, non-vindictive reasons. (Dkt. 138 at 15 (quoting *United States v. Howell*, 17 F.4th 673, 687 (6th Cir. 2021))). *See Bragan*, 249 F.3d at 482 ("[O]nly objective, on-the-record explanations can suffice to rebut a finding of [a] realistic likelihood of vindictiveness." (quoting *Andrews*, 633 F.2d at 456)). The "government's explanations [are to] be formally presented and tested" at an evidentiary hearing. *Andrews*, 633 F.2d at 457; *see United States v. Zakhari*, 85 F.4th 367, 381 (6th Cir. 2023) (government cannot rely on "unsupported assertions in [its] brief" to carry its burden). If the government fails to offer sufficient evidence to rebut the presumption, the indictment must be dismissed. *See Bragan*, 249 F.3d at 482.

The government is unwilling to produce the evidence necessary to carry its burden. The Court has repeatedly held that "the motivations of other government officials above the local U.S. Attorney are relevant to the question of vindictiveness," and has deemed Mr. McGuire's affidavits insufficient to answer how this case arrived on his desk and why it showed up on April 27 when DHS had previously closed the case. (Dkt. 185 at 2; Dkt. 138 at 10-12). Still, the government remains resolute in its refusal to produce Mr. Blanche, Mr. Singh, or Mr. McHenry at an evidentiary hearing, even after the Court has carefully reviewed over 3,000 pages of discovery and ordered the production of documents that show Mr. Blanche and Mr. Singh were the relevant officials "above" Mr. McGuire who directed this prosecution.

Those documents make it even more difficult for the government to meet its burden because the link between Mr. Blanche's retaliatory animus and the decision to prosecute is now crystal clear. In fact, *none* of the discovery produced by the government in connection with

Mr. Abrego's motion to dismiss helps the government rebut the presumption of vindictiveness. And to the extent Mr. McGuire personally believed he developed legitimate reasons to charge Mr. Abrego as he investigated this case, his assertions are undermined by his own emails showing that he was committed to charging this case within days of Mr. Singh reaching out to him. Despite all this, the government still chooses to hide behind Mr. McGuire's discredited affidavits—now refusing even to call him as a witness to meet its own burden.[14] (*See* Dkt. 263 at 1-3). But that does nothing to alter the glaring absence of any "objective, on-the-record explanations," *Zakhari*, 85 F.4th at 383, from Mr. Blanche or Mr. Singh about their decision to initiate this prosecution.

Without this testimony, it is impossible for the government to meet its burden of proof. Accordingly, the Court should find that the presumption of vindictiveness stands and dismiss the Indictment.

## II.    At a Minimum, The Court Should Deny the Motions to Quash

If the Court determines that an evidentiary hearing remains necessary to fully adjudicate Mr. Abrego's motion to dismiss, the Court should deny the government's motion to quash. The documents disclosed to date reinforce the defense's previous arguments that the subpoenas clear Rule 17's requirements. (*See* Dkt. 193). *See United States v. Pate*, No. 3:09-CR-00106, 2024 WL 1773996, at *1 (M.D. Tenn. Apr. 24, 2024) ("[A] subpoena ad testificandum survives scrutiny if the party serving it can show that the testimony sought is both relevant and material." (quotation omitted)). And the government's arguments to the contrary warrant no different result.

*First*, the government's recently produced documents underscore the relevance of the witnesses' testimony. In opposing the government's motion to quash, the defense argued that the

---

[14] That Mr. McGuire's sworn affidavits are squarely contradicted by documents the government has produced is precisely why the government is required to provide "objective, on-the-record explanations," subject to testing by the defense. *See Zakhari*, 85 F.4th at 383.

testimony of these witnesses had substantial probative value because the Court had already recognized that "[t]he motivations of the people who place the file on the prosecutor's desk are highly relevant when considering a motion to dismiss for vindictive prosecution." (Dkt. 185 at 2-3; *see* Dkt. 193 at 7). The discovery produced to the defense confirms that ODAG was involved in directing the prosecution of this case from the very first day that Mr. McGuire began working on this case, as detailed above and in the Court's December 3 opinion ordering the disclosure of these documents to the defense. (*See* Dkt. 241 at 4-8). The Court has found that Mr. Singh ███████████ ████████████████████████████████████████ and it has connected Mr. Singh's communications to Mr. Blanche given that Mr. Singh worked in his office. (*Id.* at 5).

Perhaps recognizing the futility of continuing to argue that ODAG was "not involved" in this prosecution (Dkt. 199 at 3 n.1), the government now claims that there is nothing to see here because its "voluminous production shows nothing other than appropriate oversight by the Office of the Deputy Attorney General."[15] (Dkt. 263 at 2). This argument is not a serious one. It is not "typical" (*id.* at 3) for the Office of the Deputy Attorney General to receive ████████████ ███████████████████████████████████████████ or to be intimately involved in decisions around investigating and prosecuting a case charging unlawful transportation of aliens. And the government cannot simply throw around words like "high-profile," "sensitive," and "Foreign Terrorist Organization" to establish that ODAG's involvement in this case was somehow "traditional" and "appropriate" and thereby quash the defense's subpoenas. (*Id.* at 2-3).

---

[15] The government's decision to rely on its "voluminous production" is a curious one. The government produced 3,000 pages of documents to the Court for *in camera* review, which contained ███████████████████████████████████████████████████ ███████ (Dkt. 241 at 2). The government appears not to have produced or even collected internal communications among members of Mr. Blanche's staff, which are no doubt highly relevant to the propriety of ODAG's motivations and actions here.

The government's position is in fact fatal for its motion to quash. Whether or not ODAG's involvement in this prosecution reflected mere "traditional oversight and communication typical of any high-profile and sensitive criminal prosecution" (*id.* at 3) or calculated retribution against Mr. Abrego is the very purpose of seeking these witnesses' testimony. And under Sixth Circuit precedent, it is insufficient for the government to justify its conduct through "unsupported assertions in [its] brief." *Zakhari*, 85 F.4th at 381. Rather, if the government wants to argue that ODAG's involvement in this case is proper, it must do so using "objective, on-the-record explanations." *Id.* (quoting *LaDeau*, 734 F.3d at 566). That requires that these witnesses testify at an evidentiary hearing.

*Second*, the government's continued claims of privilege similarly do not shield Mr. Blanche, Mr. Singh, and Mr. McHenry from testifying. As the Court has already held time and again, the government's blanket privilege assertions must yield to Mr. Abrego's showing of need for discovery into his *prima facie* claims of prosecutorial vindictiveness. (*See, e.g.*, Dkt. 185 at 5-7, Dkt. 241 at 8). The government's assertion of attorney-client privilege in this context is particularly baseless. The only case the government cites for this proposition, *Ross v. City of Memphis*, 423 F.3d 596 (6th Cir. 2005), specifically cabins its holding to the civil context. *Id.* at 602-03. Indeed, in other cases where courts have held that the government cannot assert the attorney-client privilege in criminal proceedings, they have pointed to the fact that "strong public interest in honest government and in exposing wrongdoing by public officials would be ill-served by recognition of a governmental attorney-client privilege." *In re Grand Jury Subpoena Duces Tecum*, 112 F.3d 910, 921 (8th Cir. 1997); *see also In re Witness Before Special Grand Jury 2000-2*, 288 F.3d 289, 293 (7th Cir. 2002) ("Public officials…exercise the power of the state. With this responsibility comes also the responsibility to act in the public interest….[R]eason and experience

dictate that…the duty of public lawyers to uphold the law and foster an open and accountable government outweigh any need for a privilege in this context."). Allowing public officials to use the attorney-client privilege as a shield against disclosure of communications that gave rise to a vindictive prosecution is precisely the reason why courts have not extended the privilege to the criminal context in the first place.

*Finally*, in a last-ditch effort, the government once again rests on the argument that, "absent extraordinary circumstances, top Executive Branch officials should not be called to testify" in "every case which the [agency] prosecuted." (Dkt. 263 at 4-5 (internal quotation marks and citations omitted)). Not only are there numerous public statements by such officials indicating that they caused this prosecution to go forward and did it with vindictive motives, there is now proof— at odds with the narrative initially put forth by the government—that these officials were working in lockstep with Mr. McGuire to charge this case. To the extent that "extraordinary circumstances" are required to hale these officials into court to answer for this prosecution, they have been demonstrated here. (*See* Dkt. 185 at 2 ("This is not an ordinary case.")); *see, e.g.*, *Abrego Garcia v. Noem*, No. 25-1345, 2025 WL 1021113, at *6 (4th Cir. Apr. 7, 2025) (Wilkinson, J., concurring) (describing Mr. Abrego's circumstances as "extraordinary"). In a criminal case, where the defendant has already demonstrated a *prima facie* case of vindictive prosecution and has connected the officials in question to the decision to charge that case, "the common law maxim that 'the public has a right to every man's evidence,'" *Trump v. Vance*, 591 U.S. 786, 799 (2020) (quoting *United States v. Nixon*, 418 U.S. 683, 709 (1974)), outweighs any concern that the court would be "monopoliz[ing]" these officials' time by engaging in its fact-finding function. (Dkt. 263 at 5). To

20

allow vague concerns about separation of powers to control whether executive officials must testify in such a case would render vindictive prosecution a nullity.[16]

**CONCLUSION**

For the foregoing reasons, the Court should dismiss the Indictment, or, in the alternative, deny the government's motion to quash.

Dated: December 19, 2025      Respectfully submitted,
  New York, New York

             /s/ Sean Hecker
             Sean Hecker*
             Jenna M. Dabbs*
             David Patton*
             HECKER FINK LLP
             350 Fifth Avenue, 63rd Floor
             New York, NY 10118
             Telephone: (212) 763-0883
             Fax: (212) 564-0883
             shecker@heckerfink.com
             jdabbs@heckerfink.com
             dpatton@heckerfink.com

             * admitted *pro hac vice*

             Rascoe Dean (No. 034209)
             SHERRARD ROE VOIGT & HARBISON PLLC
             1600 West End Avenue, Suite 1750
             Nashville, Tennessee 37203
             Telephone: (615) 742-4200

---

[16] Indeed, this motion represents just one more link in a long chain of attempts to shirk responsibility for decisions made regarding Mr. Abrego's fate at the highest levels of DHS and DOJ. In Mr. Abrego's civil action, the government has consistently served up witnesses who lacked actual knowledge of the facts of his case. *See Abrego Garcia*, 2025 WL 3545447, at *7 n.12 (observing that the government has provided a string of witnesses who were either "unprepared or defiant in their refusal to answer questions" and stating that the government's "entire course of conduct" will be considered when the court reaches Mr. Abrego's sanctions motion in his other civil action); *see also id.* at *15-16 (observing that, in trying to "assess the validity of Mr. Abrego's claims," the government "did not just stonewall" but "affirmatively misled the tribunal," and that the government's actions "all reflect that whatever purpose was behind his detention, it was not for the 'basic purpose' of timely third country removal").

21

Fax: (615) 742-4539
rdean@srvhlaw.com

*Counsel for Defendant Kilmar Armando
Abrego Garcia*

## CERTIFICATE OF SERVICE

I hereby certify that on December 19, 2025, I electronically filed the foregoing document with the clerk of the court by using the CM/ECF system, which will send a notice of Electronic Filing to the following: Acting United States Attorney, Robert E. McGuire, 719 Church Street, Suite 3300, Nashville, Tennessee 37203; Assistant United States Attorney, Jason Harley, 210 Park Avenue, Suite 400, Oklahoma City, Oklahoma 73102; Associate Attorney General Stanley E. Woodward, Jr., 950 Pennsylvania Avenue NW, Washington, D.C. 20530.

/s/ Sean Hecker