# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE

|  |  |
|---|---|
| UNITED STATES OF AMERICA | No. 3:25-cr-115 |
| v. | Judge Waverly D. Crenshaw, Jr. |
| KILMAR ARMANDO ABREGO GARCIA, | |
| *Defendant.* | |

## MOTION TO COMPEL PRODUCTION OF WITNESS MATERIAL AND PRIVILEGE LOG IN CONNECTION WITH EVIDENTIARY HEARING ON KILMAR ARMANDO ABREGO GARCIA'S MOTION TO DISMISS FOR VINDICTIVE AND SELECTIVE PROSECUTION

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................................. ii

PRELIMINARY STATEMENT ........................................................................................... 1

BACKGROUND .................................................................................................................. 3

    I.    The Government Agrees to Produce Jencks Act Material in Advance of the Hearing on Mr. Abrego's Motion to Dismiss, Mooting Need for the Court to Order Production of Those Materials .................................................................................................... 3

    II.   The Government Agrees to Provide a Privilege Log ..................................................... 5

    III.  The Government Reneges on Its Agreements .............................................................. 6

ARGUMENT ....................................................................................................................... 8

    I.    The Court Should Order the Government to Produce Prior Statements for All Witnesses Relating to Their Testimony ............................................................................................ 8

    II.   The Court Should Order the Production of the Privilege Log ...................................... 17

CONCLUSION .................................................................................................................... 19

# TABLE OF AUTHORITIES

**CASES**

*Arizona v. Manypenny*,
 672 F.2d 761 (9th Cir. 1982) ....................................................... 13

*Berger v. United States*,
 295 U.S. 78 (1935) ....................................................................... 11

*Bordenkircher v. Hayes*,
 434 U.S. 357 (1978) ..................................................................... 16

*Bragan v. Poindexter*,
 249 F.3d 476 (6th Cir. 2001) ....................................................... 11

*Giglio v. United States*,
 405 U.S. 150 (1972) ....................................................................... 3

*Goldberg v. United States*,
 425 U.S. 94 (1976) ..................................................................... 9, 14

*Jencks v. United States*,
 353 U.S. 657 (1953) ..................................................................... 14

*Mirando v. U.S. Dep't of Treasury*,
 766 F.3d 540 (6th Cir. 2014) ....................................................... 10

*Reynolds v. C.I.R.*,
 861 F.2d 469 (6th Cir. 1988) ....................................................... 10

*United States v. Adams*,
 870 F.2d 1140 (6th Cir. 1989) .................................................... 2, 11

*United States v. Andrews*,
 633 F.2d 449 (6th Cir. 1980) ...................................................... 2, 11

*United States v. Fatico*,
 458 F. Supp. 388 (E.D.N.Y. 1978) ............................................ 12, 14

*United States v. Hackett*,
 No. 11-CR-51, 2011 WL 5323506 (N.D.W. Va. Sept. 30, 2011) ................... 18

*United States v. Hudson*,
 609 F.2d 1326 (9th Cir. 1979) ...................................................... 10

Case 3:25-cr-00115    Document 286    Filed 01/14/26    Page 3 of 24 PageID #: 4719

*United States v. Jones*,
No. 98-CR-251, 1999 WL 35809719 (D.N.M. Apr. 23, 1999) ...................................... 15

*United States v. LaDeau*,
734 F.3d 561 (6th Cir. 2013) ........................................................................ 11

*United States v. N. Am. Reporting, Inc.*,
740 F.2d 50 (D.C. Cir. 1984) ........................................................................ 10

*United States v. Nixon*,
418 U.S. 683 (1974) .................................................................................... 12

*United States v. Nobles*,
422 U.S. 225 (1975) .................................................................................... 13

*United States v. O'Keefe*,
252 F.R.D. 26 (D.D.C. 2008) ........................................................................ 18

*United States v. Reynolds*,
345 U.S. 1 (1953) ........................................................................................ 14

*United States v. Warren*,
8 F.4th 444 (6th Cir. 2021) ........................................................................... 10

*United States v. Zakhari*,
No. 19-CR-208 (W.D. Ky. Apr. 11, 2024), Dkt. 224 ...................................... 17

*United States v. Zakhari*,
85 F.4th 367 (6th Cir. 2023) .............................................................. 11, 16, 16

## FEDERAL RULES AND STATUTES

18 U.S.C. § 3500 ............................................................................................ 3, 14

Fed. R. Civ. P. 26 ............................................................................................... 18

Fed. R. Crim. P. 26.2 ...................................................................................... 3, 14

## OTHER AUTHORITIES

Fed. R. Crim. P. 26.2(g) Advisory Committee's Note to 1993 Amendment......................... 15, 16

## PRELIMINARY STATEMENT

The government previously agreed to produce two categories of key information in advance of the evidentiary hearing in this case, which is now set for January 28, 2026: (1) Jencks Act and Federal Rule of Criminal Procedure 26.2 material for witnesses whom the government intends to call to testify at the hearing; and (2) a privilege log of all documents the government submitted for *in camera* review of its asserted privilege claims. In an ordinary case, the government would be trusted to comply with its agreement, and there would be no need for the parties to burden the Court. Regrettably, the government has reneged, refusing to provide witness material and stonewalling on producing a privilege log of materials provided to the Court, to say nothing of internal communications of the Office of the Deputy Attorney General and other Executive Branch communications that may or may not have been sought or collected but not produced even to the Court. The government's unrelenting effort to impede an objective inquiry into the motives behind this prosecution only confirms that it is unwilling and unable to rebut the presumption of vindictiveness that has already attached.

At a Court conference on October 31, 2025, the government represented that it would produce witness materials in advance of the hearing for Homeland Security Investigations ("HSI") Supervisory Agent John VanWie and, if such material existed, for former HSI Special Agent in Charge Rana Saoud. The Court seemingly relied on that representation in preparing to conduct its *in camera* review (*see* Dkt. 208 at 2), and even in determining the scope of discovery required to be produced to Mr. Abrego on his motion to dismiss.

But on January 9, 2026, less than three weeks before the government is to be put to the test of rebutting Mr. Abrego's presumption of vindictiveness, the government abruptly changed course. Mr. McGuire informed the defense that the government would no longer produce Jencks

or Rule 26.2 material for any of the government's witnesses. Separately, since agreeing to produce a privilege log on November 17, 2025, the government has failed to produce its privilege log for nearly two months. Surprisingly, the government has simply ignored the defense's repeated written inquiries about when it might be produced.

The government should not be permitted to walk back its commitments to the defense and the Court, shirk its legal obligations, and, most critically, hamstring Mr. Abrego's ability to test meaningfully through cross examination whether the government can "produce objective, on-the-record explanations for Abrego's prosecution that rebuts the presumption of vindictiveness." (Dkt. 281 at 3). Where, as here, there has been a "*prima facie* showing of 'a realistic likelihood of vindictiveness,'" the Sixth Circuit requires that courts "conduct an evidentiary hearing where the government's explanations can be formally presented *and tested*." *United States v. Adams*, 870 F.2d 1140, 1146 (6th Cir. 1989) (emphasis added) (quoting *United States v. Andrews*, 633 F.2d 449, 454 (6th Cir. 1980) (en banc)). To be able to "test" the government's proffered explanations for prosecuting this case, the defense requires access to witnesses' prior statements to cross-examine them meaningfully. Accordingly, Mr. Abrego respectfully requests that the Court order the government to produce prior statements of its witnesses—including emails and text messages—that are related to the subject matter of their testimony or the vindictiveness of this case, consistent with its prior representations and with the obligations that would ordinarily apply under the Jencks Act and Rule 26.2, to allow for the type of adversarial testing that the Sixth Circuit requires. Mr. Abrego also requests that the Court order the government to produce the privilege log it has already agreed to produce immediately or no later than January 21, 2026, to ensure the defense has adequate time to prepare for the hearing.

2

## BACKGROUND

I. **The Government Agrees to Produce Jencks Act Material in Advance of the Hearing on Mr. Abrego's Motion to Dismiss, Mooting Need for the Court to Order Production of Those Materials**

On October 14, 2025, the Court set an evidentiary hearing on Mr. Abrego's motion to dismiss for vindictive and selective prosecution for November 3, 2025, which was then reset to November 4 and 5. (Dkts. 162, 167). After the government refused to produce any meaningful discovery to the defense, on October 27, 2025, the Court granted Mr. Abrego's motion to compel and ordered the government to produce five categories of documents for *in camera* review by noon on October 29. (Dkts. 185, 186). The government began producing documents to the Court, and on October 29, the Court ordered the parties to meet and confer on documents the government had received from Mr. VanWie (the "VanWie documents"). (Dkt. 191 at 2).

In accordance with the Court's order, the government and the defense met and conferred on October 30, 2025. At that meeting, Mr. McGuire told defense counsel that the government would produce witness material pursuant to the Jencks Act,[1] Federal Rule of Criminal Procedure 26.2,[2] and *Giglio v. United States*, 405 U.S. 150 (1972), by November 3, the day before the scheduled hearing. Specifically, Mr. McGuire represented to defense counsel that he would "siphon out" Jencks material from the VanWie documents and provide that material to the defense.

---

[1] The Jencks Act provides that, "[a]fter a witness called by the United States has testified on direct examination, the court shall, on motion of the defendant, order the United States to produce any statement (as hereinafter defined) of the witness in the possession of the United States which relates to the subject matter as to which the witness has testified." 18 U.S.C. § 3500(b).

[2] Federal Rule of Criminal Procedure 26.2 requires, on motion of the defendant, that the government produce "any statement of the witness that is in their possession and that relates to the subject matter of the witness's testimony" after that witness has testified on "direct examination" at trial or at specified pre- or post-trial hearings. Fed. R. Crim. P. 26.2(a), (g).

He also said that he intended to confer with Ms. Saoud about her Jencks Act and Rule 26.2 material, and that he would check with both Mr. VanWie and Ms. Saoud about any *Giglio* material.

At the October 31 conference, Mr. McGuire made these same representations to the Court. He did so not in a vacuum, but instead in response to inquiries from the Court suggesting the defense was entitled to certain documents as discovery, consistent with the Court's order. During the conference, the Court expressed that its "quick review suggests [the VanWie documents] look like documents that would all go to the defense," and that the Court was "hoping [the government] could look at them thoroughly, then meet with the defendants, say, Hey, we found some additional documents they need." Ex. A. at 10 (Tr. of Oct. 31, 2025 Conference) (Dkt. 206). In response, Mr. McGuire told the Court that documents from Mr. VanWie would be provided as Jencks material before the hearing:

> As to the documents we received from Agent VanWie – *there are texts and emails. Your Honor, I think when Agent VanWie testifies, they're – we would provide them as Jencks.* I had previously provided them or discussed with Mr. Dean at our meet and confer that there would – we would make a Jencks production prior to the hearing. I'm going through that now. I'm pretty close to having that decided….I don't think all of them would qualify as Jencks. *I think there are many that would. And we would provide those…to the defense prior to the hearing….[T]hey certainly would be Jencks if he testified.*

(*Id.* at 11 (emphasis added)). When the Court explained that Rule 16 "doesn't envision what we're doing here" with respect to discovery and that the Court's focus was on whether "any of these documents are going to be relevant to his testimony regarding what he did when the…criminal investigation was revi[v]ed," Mr. McGuire reaffirmed "that's what we would consider really to be Jencks material." (*Id.* at 11-12). In this exchange, Mr. McGuire thus forestalled an order requiring the documents to be produced as ordinary discovery, by assuring both the Court and the defense that he intended to produce the documents from Mr. VanWie to the defense as Jencks material. As for Ms. Saoud, Mr. McGuire said he had "asked for [Jencks] material from Special Agent Saoud

as well, because she is one of our witnesses that we've noticed. I'm still working on that. But the idea I had told Mr. Dean is I would provide them before the hearing." (*Id.* at 13).

The Court ultimately adjourned the November 4 and 5 hearing to December 8 to give the government additional time to produce documents for *in camera* review by November 14. (*Id.* at 7-8). Accepting "the [g]overnment's representations" that "at least some of those [VanWie] documents will be produced to the defense and will not be in dispute," the Court also ordered the government to inform it by November 14 whether VanWie documents "Bates-numbered 000191 to 001060" were produced to the defense or whether they required *in camera* review. (Dkt. 208 at 2). The defense does not know what, if anything, the government communicated to the Court about the VanWie documents on November 14, but to date, the government has not produced any additional documents to the defense beyond those ordered disclosed by the Court on December 3 and 10. Because of the government's representations to the Court in October, however, the defense took no action with respect to appropriate discovery, in reliance on the understanding that at least some of the VanWie documents would be produced in advance of any hearing as Jencks and Rule 26.2 material, along with similar material for other witnesses.

## II.    The Government Agrees to Provide a Privilege Log

At the October 31 conference, the Court also instructed the government that it should be collecting and reviewing documents "in a business-like manner" making "a good faith effort to comply" with the Court's order, and "should be ready to at least explain to the Court that at a minimum [the government has] engaged in the conduct and the search necessary to show a good faith due diligence to find documents" responsive to the Court's order granting Mr. Abrego's motion to compel. Ex. A. at 20. On November 7, 2025, defense counsel sent a letter to the government requesting that it produce the memorialization of its process for collecting and reviewing documents produced for *in camera* review, as well as a document-by-document

privilege log for documents produced to the Court for *in camera* review but not disclosed to the defense. (Dkt. 228-1).

On November 17, 2025, after the government made its supplemental production of documents to the Court, Associate Attorney General Stanley E. Woodward responded to defense counsel's letter. Although Mr. Woodward objected to providing an explanation of the government's document collection process, he stated that "the United States will provide a privilege log of the documents it produced to the Court for *in camera* review." Ex. B at 1 (November 17, 2025 Letter from S. Woodward to S. Hecker). He added that the privilege log would "include[] a brief description of each document produced to the Court for *in camera* review and, where applicable, the privilege asserted." *Id.* at 2. Thereafter, on December 1, defense counsel asked the government when it expected to produce the privilege log but received no definite response, other than a vague promise that it was "forthcoming."

## III.    The Government Reneges on Its Agreements

On December 3, 2025, the Court ordered that a subset of the 3,000 pages of documents that it reviewed *in camera* be disclosed to the defense. (Dkt. 241). The Court ordered the disclosure of around 20 pages of documents that "support Abrego's argument" and show that Mr. McGuire "was not a solitary decision-maker" and that the Deputy Attorney General and his staff were involved in the decision to prosecute. (*Id.* at 4). The Court canceled the evidentiary hearing and ordered supplemental briefing on the government's motion to quash. (*Id.* at 8-9). On December 12, the defense again asked the government about the status of the privilege log, because counsel still had no information about the vast majority of the documents produced by the government for *in camera* review that were not ordered produced. The government did not respond.

On December 23, the Court reserved decision on the motion to quash and scheduled an evidentiary hearing for January 28 limited to "whether the government can produce objective,

on-the-record explanations for Abrego's prosecution that rebut[] the presumption of vindictiveness." (Dkt. 281 at 3).

On January 5, 2026, in preparation for the evidentiary hearing, defense counsel asked the government for confirmation that Mr. VanWie, Ms. Saoud, and Mr. McGuire would be testifying at the evidentiary hearing and requested disclosure of their Jencks and Rule 26.2 material in advance of the evidentiary hearing to avoid delays. The defense also inquired about the status of the government's privilege log.

On January 9, the government reneged on its agreement to provide Jencks and Rule 26.2 material for its witnesses—whom it identified as Mr. VanWie, Ms. Saoud, and "potentially" Mr. McGuire. In an email to defense counsel, Mr. McGuire wrote that he "previously thought that Jencks would apply in this situation and have even said that to the Court," but he now believed that "neither Jencks nor 26.2 apply in this situation and that my initial assumption that they would apply was simply incorrect." Mr. McGuire asserted that because the trial date had been canceled, there was no "trial date to make an early [Jencks] provision for," and that in any event the Jencks Act did not apply because "none of the witnesses we'll call at this hearing would be trial witnesses so…we still wouldn't provide materials for these witnesses." Although Mr. McGuire acknowledged that Rule 26.2 "extends the Jencks Act to certain pre and post-trial hearings," he insisted that the evidentiary hearing on Mr. Abrego's motion to dismiss "does not fall into any of these statutorily enumerated 26.2 categories" and thus did not require the production of witness statements. In a wholesale reversal of his earlier representations to the Court and the defense that the government would produce Jencks, Rule 26.2, and *Giglio* material in advance of the hearing, Mr. McGuire now stated unequivocally that "we do not intend to provide any additional materials other than what the Judge ordered us to produce previously." The government added that even if

7

the Jencks Act or Rule 26.2 applied to the forthcoming evidentiary hearing, the Court had "already ordered the production of what he believed to be statements relevant to your motion in light of our privilege assertions," which obviated the need for any additional production of witness statements. As for the privilege log, Mr. McGuire said nothing at all about it.

## ARGUMENT

### I.  The Court Should Order the Government to Produce Prior Statements for All Witnesses Relating to Their Testimony

The Court should, once again, reject the government's attempt to stonewall. Emails, text messages, law enforcement reports, and any other documents relevant to the subject matter of government witnesses' testimony at the upcoming hearing should be produced to the defense. Not only because the government agreed to produce those materials, nor just because the Court appeared to rely on that agreement, but because they are necessary for a fair and complete adjudication of Mr. Abrego's vindictive prosecution motion. The Court should order the government to produce all documents that are potentially relevant to the testimony of Mr. VanWie, Ms. Saoud, and Mr. McGuire (should he testify at the hearing) as part of the discovery ordered in connection with Mr. Abrego's motion.

*First*, the government should be held to its assurances to the Court and the defense that it would produce (the equivalent of) Jencks Act and Rule 26.2 material for its testifying witnesses. At the October 31 conference, after the Court observed that documents collected from Mr. VanWie "look like documents that would all go to the defense," the government agreed to produce those and other documents to the defense in advance of the evidentiary hearing on Mr. Abrego's vindictive prosecution claim. *See* Ex. A at 10-13 (extensive discussion of the VanWie documents and the government's intention to produce them, and documents it pledged to collect from Ms. Saoud, in advance of the hearing). In an order entered after the conference, the Court directed

the government to inform the Court whether the VanWie documents had been produced to the defense or whether *in camera* review would be required, because "[b]ased on the Government's representations, it appears at least that some of those documents will be produced to the defense and will not be in dispute." (Dkt. 208 at 2).

The defense does not know what, if anything, the government communicated to the Court *ex parte* about the VanWie documents on November 14—the government told the defense nothing, and the government has produced no VanWie documents since then.[3] But given that the government made abundantly clear on the record that it would produce documents from Mr. VanWie that are "relevant to his testimony regarding what he did when the…criminal investigation was revi[v]ed" as "Jencks material," *see* Ex. A at 11-12, it stands to reason that the Court relied on that representation in determining what documents to disclose to the defense following *in camera* review. On the record available to the defense, it appears that the Court did not order disclosure of the VanWie documents that it believed "would all go to the defense," *id.* at 10, because of the government's representations that those documents would be disclosed to the defense separately as Jencks material, *id.* at 11.[4] The defense, too, relied on the government's

---

[3] According to the Court's November 3 order, the VanWie documents bear Bates numbers 000191 to 001060. (Dkt. 208 at 2). Those Bates numbers do not overlap with the Bates numbers of the documents the Court ordered disclosed to the defense on December 3. (*See* Dkt. 241). Therefore, as far as the defense is aware, the court-ordered production did not contain the VanWie documents.

[4] Against this backdrop, the Court should reject any argument that its separate, *in camera* privilege review already determined the scope of the required discovery for the upcoming hearing. For one thing, the Court conducted its review having received representations from the government that the VanWie documents, and other witness materials, would be produced before the hearing. For another, the government does not appear to have produced for *in camera* review the full universe of written communications of its hearing witnesses, so by definition that review cannot have been a complete and final determination of which documents in the government's possession were relevant. Nor can the government shield additional discovery based on blanket privilege assertions. There is no work-product exception for government material otherwise subject to disclosure as impeachment material. *See Goldberg v. United States*, 425 U.S. 94, 105-06 (1976) (rejecting government's argument that work-product doctrine requires exception to the Jencks Act, because

representations. When the Court issued its December 3 order, the defense did not move then for additional discovery, or reconsideration in part, based on the understanding that the government was going to produce Jencks and Rule 26.2 material before the hearing, as it had committed to the defense and represented to the Court.

It is clear that relevant, discoverable documents exist—some were produced to the Court— and the government should not be permitted to change positions now to prevent the defense from obtaining them. The government's about-face amounts to "playing fast and loose with the courts," *Reynolds v. C.I.R.*, 861 F.2d 469, 472 (6th Cir. 1988) (internal quotations omitted), and "changing positions 'to suit an exigency of the moment,'" *Mirando v. U.S. Dep't of Treasury*, 766 F.3d 540, 545 (6th Cir. 2014) (internal quotations omitted). Throughout the months-long process of litigating discovery on Mr. Abrego's motion to dismiss (in large part due to the government's efforts to delay production and to relitigate Mr. Abrego's motion and the Court's discovery orders), both the defense and the Court believed that the government would produce statements relating to its witnesses' testimony as Jencks material because it said it would do so. Just weeks from the twice-rescheduled hearing, the government now seeks to upend that process by going back on its word. Courts routinely recognize "the responsibility of federal prosecutors meticulously to fulfill their promises." *United States v. Hudson*, 609 F.2d 1326, 1328 (9th Cir. 1979); *cf. United States v. Warren*, 8 F.4th 444, 449 (6th Cir. 2021) ("[W]e hold the government strictly to its word."). The

_____

"the primary policy underlying the work-product doctrine [i.]e., protection of the privacy of an attorney's mental processes, is adequately safeguarded by the Jencks Act itself" (citations omitted)); *see United States v. N. Am. Reporting, Inc.*, 740 F.2d 50, 55 (D.C. Cir. 1984) ("[T]he work product doctrine does not bar the production of the notes of government attorneys that are otherwise producible under the Jencks Act."). And while Rule 26.2(c) does recognize that privileged material may be "excised" from witness statements, as the defense has previously explained, the government has no basis to rely on the attorney-client privilege in these criminal proceedings. (*See* Dkt. 275 at 19-20). Moreover, even if any privileges applied, by relying on affidavits from Mr. McGuire, and possibly his testimony, to explain the reasons for bringing this case, the government has waived any privileges as to this subject matter.

government's "interest…in a criminal prosecution is not that it shall win a case, but that justice shall be done," *Berger v. United States*, 295 U.S. 78, 88 (1935)—and it cannot now withhold witness material that it previously promised to produce to gain the upper hand. The Court should enforce the government's commitment to the Court and to the defense here to produce relevant material for all of its witnesses in advance of the hearing.

*Second*, the production of relevant materials for each of the government's hearing witnesses is necessary given the requirement of adversarial testing that the Sixth Circuit applies to the burden-shifting framework for a vindictive prosecution claim. In *Andrews*, the Sixth Circuit held that an "objective" standard of a "realistic likelihood of vindictiveness" applies to vindictive prosecution claims, which the government bears the burden of rebutting with "objective, on-the-record explanations" and "objective facts." 633 F.2d at 456-57. The Sixth Circuit instructed courts to "carefully" consider the government's explanations, which required "conduct[ing] an evidentiary hearing where the government's explanations can be formally presented and tested." *Id.* at 455, 457. The Sixth Circuit repeated these admonitions in *Adams*, 870 F.2d at 1146 ("[W]here there has been a *prima facie* showing of 'a realistic likelihood of vindictiveness,' it is incumbent upon the district court to 'conduct an evidentiary hearing where the government's explanations can be formally presented and tested.'" (quoting *Andrews*, 633 F.2d at 457)). In subsequent cases, the Sixth Circuit repeatedly emphasized the importance of the government offering "objective, on-the-record explanations" to rebut the presumption of vindictiveness. *See Bragan v. Poindexter*, 249 F.3d 476, 482 (6th Cir. 2001); *see also United States v. LaDeau*, 734 F.3d 561, 572 (6th Cir. 2013) ("We are not persuaded that the subjective rationales offered by the government in its affidavit are sufficiently 'objective' explanations for the government's conduct."). And most recently, in *United States v. Zakhari*, 85 F.4th 367 (6th Cir. 2023), the Sixth

Circuit held that a district court abused its discretion in "failing to require the government to substantiate its explanations" and "[b]y relying on unsupported assertions [in the government's brief] without permitting [the defendant] to test them." *Id.* at 381, 383.

Thus, it is settled law that to rebut the presumption of vindictiveness, the government must produce objective evidence that is subject to adversarial testing by the defense. In these cases, courts ordered not only evidentiary hearings, but also discovery into government records relating to the decision to prosecute. And that makes sense, because as Judge Kethledge explained in his concurrence in *Zakhari*, "[t]he prosecution is entitled to no deference on questions of fact" and "must come forward with evidence—which the district court, in the first instance, can find credible or not." *Id.* at 385 (Kethledge, J., concurring in part and dissenting in part).

At the hearing on January 28, the government intends to call Mr. VanWie, Ms. Saoud, and perhaps Mr. McGuire to testify as to the government's purportedly non-vindictive reasons for reopening the investigation into Mr. Abrego and charging him with a crime for "legitimate public safety motivations." (Dkt. 197 at 3). For the defense to be able to meaningfully test whether the reasons to be proffered by Mr. VanWie, Ms. Saoud, and Mr. McGuire for pursuing this case are in fact legitimate and genuine, the defense must have access to their prior statements in emails, text messages, and other similar documents. Without these materials, the defense may be hampered in its ability to "effectively" "cross-examine" these witnesses and risks being able to "make only the most perfunctory inquiries of the [g]overnment's witnesses." *United States v. Fatico*, 458 F. Supp. 388, 399 (E.D.N.Y. 1978) (Weinstein, J.). That, in turn, will jeopardize the Court's "ability to assess the credibility of…the witnesses," *id.*, and determine whether the government has in fact carried its burden to rebut the presumption of vindictiveness.[5] *See United States v. Nixon*, 418 U.S.

---

[5] As the defense explained in its supplemental brief on the government's motion to quash, it is impossible for the government to rebut the presumption of vindictiveness without the testimony

683, 709 (1974) ("We have elected to employ an adversary system of criminal justice in which the parties contest all issues before a court of law. The need to develop all relevant facts in the adversary system is both fundamental and comprehensive. The ends of criminal justice would be defeated if judgments were to be founded on a partial or speculative presentation of the facts."). And credibility is all the more important in this case, where the government has made certain claims in Mr. McGuire's affidavits, only for those claims to be discredited by underlying emails this Court ordered the government to produce. (*See* Dkt. 241 at 7 ("These documents show that McGuire did not act alone and to the extent McGuire had input on the decision to prosecute, he shared it with Singh and others. Specifically, the government's documents may contradict its prior representations that the decision to prosecute was made locally and that there were no outside influences." (citation omitted))).

For these reasons, the defense is entitled to documents from Mr. VanWie, Ms. Saoud, and Mr. McGuire (should he testify) that relate to the subject matter of their testimony. Regardless of whether the Jencks Act or Rule 26.2 compels disclosure, the Court can and should order the disclosure of these witness materials as part of its authority to order discovery on Mr. Abrego's claim of vindictive prosecution. *See United States v. Nobles*, 422 U.S. 225, 231 (1975) (reaffirming "the federal judiciary's inherent power to require the prosecution to produce the previously recorded statements of its witnesses so that the defense may get the full benefit of cross-examination and the truth-finding process may be enhanced"); *see also Arizona v. Manypenny*, 672 F.2d 761, 765 (9th Cir. 1982) (collecting cases reflecting court's authority to enter orders "not

---

of the Deputy Attorney General and his staff, given the leading role they had in deciding to pursue this prosecution. (*See* Dkt. 275 at 15-17).

expressly sanctioned by rule or statute in order to correct the legal process or avert its misfunction").

*Third*, the same due process and policy justifications that underlie the Jencks Act and Rule 26.2 favor the Court's ordering the discovery of these materials, pursuant to its supervisory authority, to ensure the fairness of the upcoming evidentiary hearing. The purpose of the Jencks Act and Rule 26.2 is to provide the defense with a fair opportunity to cross-examine witnesses by "requir[ing] disclosure of all statements for use in impeaching witnesses." *Goldberg v. United States*, 425 U.S. 94, 107 (1976). As reflected in *Jencks v. United States*, 353 U.S. 657 (1953), disclosure of a witness's prior statements is essential to the "cross-examining process of testing the credibility of a witness' trial testimony." *Id.* at 667; *see Fatico*, 458 F. Supp. at 399 ("It is well known to trial judges that the most effective cross-examination of prosecution witnesses in criminal cases is usually based upon such statements."). In holding that the government was required to disclose law enforcement witnesses' prior statements to the defense, the Supreme Court emphasized that because "the [g]overnment which prosecutes an accused also has the duty to see that justice is done, it is unconscionable to allow it to undertake prosecution and then invoke its governmental privileges to deprive the accused of anything which might be material to his defense." *Jencks*, 333 U.S. at 670-71 (quoting *United States v. Reynolds*, 345 U.S. 1, 12 (1953)). Thus, the Court required that the government disclose to the defense "relevant statements…in its possession of government witnesses touching the subject matter of their testimony at trial," *id.* at 672, a requirement that was subsequently codified in the Jencks Act, *see* 18 U.S.C. § 3500.

Because fairness to criminal defendants and the pursuit of truth are warranted beyond trials, Rule 26.2 subsequently extended the Jencks Act's protections to other pre- and post-trial hearings, such as suppression hearings and sentencings. *See* Fed. R. Crim. P. 26.2(g). Over time, that Rule

was serially expanded to apply to other "adversary type hearings which ultimately depend on accurate and reliable information." Fed. R. Crim. P. 26.2(g) advisory committee's note to 1993 amendment. In amending the Rule to cover additional hearings, the Committee recounted its reasons for expressly extending the Rule to suppression hearings in 1983. *Id.* The Committee explained that the "production of witness statements enhances the ability of the court to assess the witnesses' credibility and thus assists the court in making accurate factual determinations at suppression hearings." *Id.* As to suppression hearings in particular, the Committee stated that it would be "futile" to "wait[] until after a witness testifies at trial before requiring production of that witness's statement," because witnesses who testify at a suppression hearing "may not necessarily testify at the trial itself." *Id.* And one of the Committee's "central reasons" for extending the Rule to suppression hearings was "that by its nature, the results of a suppression hearing have a profound and ultimate impact on the issues presented at trial." *Id.* The Committee observed that these "reasons" were "equally compelling" for other adversary hearings and emphasized the "continuing need for information affecting the credibility of witnesses who present testimony," which "exists without regard to whether the witness is presenting testimony at a pretrial hearing, at a trial, or at a post-trial proceeding." *Id.*; *see United States v. Jones*, No. 98-CR-251, 1999 WL 35809719, at *5 (D.N.M. Apr. 23, 1999) (holding that defendant was entitled to Jencks material at evidentiary hearing on pre-trial release of frozen assets based on advisory committee notes to Rule 26.2).

Although evidentiary hearings on a claim of vindictive prosecution are not enumerated in Rule 26.2(g), that is hardly remarkable because it is rare that such a claim proceeds to this stage: as this Court previously observed, Rule 16 does not "envision" discovery on vindictive prosecution and thus does not cabin such discovery (*see* Dkt. 185 at 2), simply because "[n]obody on the [C]ommittee thought about this." Ex. A at 11. Regardless, the Committee's reasons for extending

Rule 26.2 to other hearings apply equally to an evidentiary hearing on a motion to dismiss for vindictive prosecution that no doubt "depend[s] on accurate and reliable information." Fed. R. Crim. P. 26.2(g) advisory committee's note to 1993 amendment. Production of witness statements to the defense for cross-examination will "enhance[]" the Court's ability to assess the credibility of the government's witnesses and thus "assist[]" the Court in determining whether the government has offered legitimate, non-vindictive reasons for this prosecution. *Id.* Like a suppression hearing, it would be "futile" to wait until trial before requiring the production of Mr. VanWie, Ms. Saoud, or Mr. McGuire's statements, as these witnesses will testify about the reasons for investigating and prosecuting this case and thus "may not necessarily testify at the trial." *Id.* Perhaps most critically, "the results" of the forthcoming hearing on Mr. Abrego's claim of vindictiveness have a "profound and ultimate impact on the issues presented at trial," because the hearing will determine whether this prosecution can go forward at all—or whether it must be dismissed as a "due process violation of the most basic sort." *Bordenkircher v. Hayes*, 434 U.S. 357, 363 (1978). As such, the absence of an evidentiary hearing on a claim of vindictive prosecution from Rule 26.2(g) is no reason to allow the government to withhold witness statements that, by the Rule's own rationale, should be disclosed to the defense.

*Finally*, in the alternative, the Court can take the government's stonewalling as further evidence of the stunningly vindictive nature of this prosecution. Later this month, the government will be put to its burden to rebut the presumption of vindictiveness with "objective, on-the-record explanations." (Dkt. 281 at 1-2 (quoting *Zakhari*, 85 F.4th at 379)). And the government's objective, on-the-record explanations are supposed to be subject to meaningful adversarial testing. Indeed, on remand in *Zakhari*, to rebut the presumption of vindictiveness, the government voluntarily produced statements from employees of the U.S. Attorney's Office ("USAO") for the

Western District of Kentucky and other documentary evidence well in advance of the evidentiary hearing, including:

> (1) written summaries of interviews of USAO employees conducted by a government investigator; (2) prosecution memoranda for the original and superseding indictments in this matter, as well as the prosecution memorandum for the indictment in Case 3:21-CR-20-RGJ; (3) e-mail correspondence among USAO employees, and/or between USAO employees and law enforcement, relating to its charging decisions; and (4) and Department of Justice training materials relating to charging decisions in child exploitation cases.

*United States v. Zakhari*, No. 19-CR-208 (W.D. Ky. Apr. 11, 2024), Dkt. 224 at 2-3.

The government does not appear to have engaged in any similarly searching investigation of its own motives here. Instead, time and again, it has expressed the strong preference to avoid any scrutiny into its motives at all. The government's knee-jerk instinct in this case to delay, relitigate, and withhold documents, even in the face of court orders, is telling. *Zakhari* shows the volume of discovery a government committed to rebutting the presumption might marshal in support of clearing its name. This case shows, instead, something akin to government recognition that further discovery will only dig the hole deeper—a government that simply is not serious about trying to meet its burden with objective, on-the record explanations subject to proper adversarial testing. If there were any communications or documents that helped the government prove its narrative that this case was not motivated by vindictiveness, the government would no doubt have produced them. The Court should draw the obvious inference that flows from the government's stonewalling: the presumption of vindictiveness is warranted and unrebutted, and this case must be dismissed.

## II.    The Court Should Order the Production of the Privilege Log

Nearly two months ago, the government agreed to provide a privilege log of the documents it produced to the Court for *in camera* review, including "a brief description of each document produced to the Court for *in camera* review and, where applicable, the privilege asserted." Ex. B

at 2. Since then, however, the defense has repeatedly asked the government when the privilege log will be produced. The defense has received no definite answer, other than vague promises that it is forthcoming on some unspecified date, or, more recently, silence.

The government has not attempted to explain the basis for its unjustifiable delay, and with the evidentiary hearing now two weeks away, Mr. Abrego requires the government's privilege log to determine how the government has understood its discovery obligations and whether to seek additional discovery (particularly in light of the government's refusal to produce witness materials), and to be able to prepare for the hearing, including to cross-examine witnesses. Without the government's privilege log, the defense has no information whatsoever about documents that were not disclosed or the nature of the government's privilege assertions. The only conclusion to be drawn from the government's delay is that documents and communications responsive to the five categories of discovery ordered by the Court, including from the Office of the Deputy Attorney General, were either not collected or not produced to the Court and logged.

Although privilege logs are required and thus far more common in civil cases, *see* Fed. R. Civ. P. 26(b)(5), where, as here, the government asserts privilege as a basis to withhold documents in criminal cases, courts have ordered the government to supply a privilege log based on the applicable civil rule. *See, e.g.*, *United States v. O'Keefe*, 252 F.R.D. 26, 29 (D.D.C. 2008) ("borrow[ing] a rule from the Federal Rules of Civil Procedure" and ordering the production of a privilege log in a criminal case); *United States v. Hackett*, No. 11-CR-51, 2011 WL 5323506, at *3 (N.D.W. Va. Sept. 30, 2011) (requiring government to produce privilege log), *report and recommendation adopted*, 2011 WL 5244695 (N.D.W. Va. Nov. 2, 2011). It makes good sense, therefore, that the government has already agreed to provide a log. The government should be held to its word and ordered to produce its privilege log no later than January 21, 2026.

18

## CONCLUSION

For the foregoing reasons, the Court should order the government to (1) produce documents related to the subject matter of government witnesses' anticipated testimony, consistent in scope with the obligations that would ordinarily apply under the Jencks Act and Rule 26.2, to enable the type of adversarial testing that the Sixth Circuit requires, and (2) produce a privilege log no later than January 21, 2026.

Dated: January 14, 2026                     Respectfully submitted,
      New York, New York

                                       /s/ Sean Hecker
                                   Sean Hecker*
Jenna M. Dabbs*
David Patton*
HECKER FINK LLP
350 Fifth Avenue, 63rd Floor
New York, NY 10118
Telephone: (212) 763-0883
Fax: (212) 564-0883
shecker@heckerfink.com
jdabbs@heckerfink.com
dpatton@heckerfink.com

\* admitted *pro hac vice*

Rascoe Dean (No. 034209)
SHERRARD ROE VOIGT & HARBISON PLLC
1600 West End Avenue, Suite 1750
Nashville, Tennessee 37203
Telephone: (615) 742-4200
Fax: (615) 742-4539
rdean@srvhlaw.com

*Counsel for Defendant Kilmar Armando Abrego Garcia*

## CERTIFICATE OF SERVICE

I hereby certify that on January 14, 2026, I electronically filed the foregoing document with the clerk of the court by using the CM/ECF system, which will send a notice of Electronic Filing to the following: Acting United States Attorney, Robert E. McGuire, 719 Church Street, Suite 3300, Nashville, Tennessee 37203; Assistant United States Attorney, Jason Harley, 210 Park Avenue, Suite 400, Oklahoma City, Oklahoma 73102; Associate Attorney General Stanley E. Woodward, Jr., 950 Pennsylvania Avenue NW, Washington, D.C. 20530.

/s/ Sean Hecker_____